The Honorable Ricardo S. Martinez
Noted on Motion Calendar:  1/25/2008

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>            Plaintiff,<br><br>  v.<br><br>IMMERSION CORPORATION, a Delaware corporation,<br><br>            Defendant. | No. CV07 936RSM<br><br>**IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT'S MOTION TO DISQUALIFY IRELL & MANELLA LLP FOR VIOLATION OF WASHINGTON'S RULE OF PROFESSIONAL CONDUCT 3.7** |

IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT'S
MOTION TO DISQUALIFY IRELL & MANELLA LLP FOR VIOLATION
OF WASHINGTON'S RULE OF PROFESSIONAL CONDUCT 3.7
(CV07 936RSM)

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## I. INTRODUCTION

Microsoft's Motion to Disqualify Irell & Manella LLP for Violation of Washington's Rule of Professional Conduct 3.7 (Microsoft's "Motion") is contradicted by the plain language of the very Rule on which Microsoft purports to rely. Conveniently, Microsoft does not even recite this rule anywhere in its Motion. It is inexplicable how Microsoft could file a motion alleging a violation of a rule that it does not even recite or apply. But Microsoft's motivation is clear: to manufacture a pretextual opportunity to take potshots at opposing counsel and advance its incorrect theories on the merits based on an incomplete and misleading record.

Microsoft's attempt to disqualify Immersion's longstanding counsel, Irell & Manella LLP, from participating in this case is predicated on the erroneous contention that a single Irell & Manella attorney, Richard Birnholz, is a "necessary witness." Microsoft's position is without merit. At the outset, Washington's Rule of Professional Conduct ("RPC" or "Rule") 3.7(b) expressly contradicts Microsoft's own premise—that the entire firm may be disqualified. Rule 3.7(b) provides exactly the opposite: "A lawyer <u>may</u> act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9" (emphasis added). Microsoft does not even attempt to explain how or why Irell & Manella possibly could be subject to disqualification under RPC 3.7(b). <u>Indeed, Microsoft does not even cite Rule 3.7(b), the controlling provision of law.</u>

Microsoft also ignores that RPC 3.7 only provides grounds for the disqualification of counsel *at trial*. *See* RPC 3.7 ("A lawyer <u>shall not act as advocate</u> **at a trial** in which the lawyer is likely to be a necessary witness unless . . .") (emphasis added). More fundamentally, Microsoft fails to apply, or even to acknowledge, the proper legal standard for determining whether an attorney such as Mr. Birnholz is a "necessary witness" under RPC 3.7. Because disqualification is such a serious remedy, courts have explained that the Rule requires a showing "that the attorney will give evidence material to the determination of the issues being litigated, that the evidence is unobtainable elsewhere, and that the testimony is or may be prejudicial to the testifying attorney's client." *Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co.,* 124

IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT'S
MOTION TO DISQUALIFY IRELL & MANELLA LLP FOR VIOLATION
OF WASHINGTON'S RULE OF PROFESSIONAL CONDUCT 3.7
(CV07 936RSM) - 1

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Wn.2d 789, 812, 881 P.2d 1020 (1994). Microsoft has not even attempted to make such a showing, and, indeed, it cannot do so. Mr. Birnholz was one of several attendees at several negotiation sessions and is hardly the only source of information as to what was said. This is not relevant in any event, as Immersion's contract with Sony is an integrated agreement.

Moving to disqualify counsel is a serious matter. Microsoft's stark failure to call to the Court's attention, much less to apply, the controlling provisions of the Rule on which it purports to rely confirms that Microsoft should never have filed its Motion.

## II. FACTUAL BACKGROUND

Microsoft's recitation of the facts misstates key provisions of the agreements at the center of this dispute. Microsoft also mischaracterizes the facts and evidence in order to provide the Court with an incomplete and inaccurate presentation of this matter. Therefore, Immersion feels constrained to respond to provide appropriate context.

### A. The Immersion-Microsoft Settlement and Sublicense Agreements

Immersion is a world-leading developer of "haptics" technologies which allow users to interact with computers through the sense of touch. This case has its roots in a patent infringement lawsuit that Immersion filed against Microsoft and Sony in February 2002 in the Northern District of California. Immersion alleged that certain Sony PlayStation and Microsoft Xbox video game consoles, controllers, and games infringed two of its patents (the "Litigated Patents"). Immersion ultimately won against Sony but settled with Microsoft in 2003.

On July 25, 2003, Immersion and Microsoft entered into a Settlement Agreement and a License Agreement. Microsoft paid Immersion $19.9 million in exchange for full releases, a perpetual license to Immersion's patent portfolio, the dismissal with prejudice of Immersion's claims against Microsoft, and the right to assignment of any Immersion patent as to which Immersion failed to maintain its rights. Microsoft invested $6 million in Immersion, purchasing convertible preferred stock that Microsoft later sold in 2004 at a substantial profit. Immersion and Microsoft also entered into a separate Sublicense Agreement ("Sublicense Agreement" or "SLA"), for which Microsoft paid Immersion $100,000. Declaration of Jofrey M. McWilliam

IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT'S
MOTION TO DISQUALIFY IRELL & MANELLA LLP FOR VIOLATION
OF WASHINGTON'S RULE OF PROFESSIONAL CONDUCT 3.7
(CV07 936RSM) - 2

Byrnes & Keller LLP
38th Floor
1000 Second Avenue
Seattle, Washington 98104
(206) 622-2000

dated January 22, 2008 ("McWilliam Decl."), Ex. 1, ¶ 3. It is undisputed that Immersion's counsel at Irell & Manella LLP did not participate in the settlement negotiations with Microsoft.

The Immersion-Microsoft Sublicense Agreement is the agreement in dispute in this case. Under this agreement, Microsoft was granted, for a limited twenty-four month window, the right to sublicense Immersion's patents, including the Litigated Patents, to "Game Platform Vendors." *Id.*, Ex. 1, ¶ 2(a), (c), (j). The SLA stemmed from Microsoft's desire to get from Immersion something that might be of value to Sony. At the time, Microsoft was battling a fierce patent suit against InterTrust Technologies Corp. ("InterTrust"), which was acquired by a Sony-led investor group in January 2003. InterTrust was pursuing 11 lawsuits against Microsoft and alleged that 85 percent of Microsoft's product line infringed its patents on digital rights management. By summer 2003, InterTrust was badly beating Microsoft in what was being reported as "the biggest patent case ever." As a co-defendant with Sony, Microsoft obviously knew Sony was involved in litigation with Immersion. To get something that might be of value to Sony as sorely-needed bargaining leverage for the InterTrust case, Microsoft wanted the right to sublicense Immersion's patents to Sony.

The SLA contained reciprocal provisions relating to Microsoft's granting Sony a sublicense and the potential vitiation of that sublicense right in the event Immersion settled the district court action. If Microsoft granted Sony a sublicense under the Immersion patents, Immersion would be stripped of its lawsuit against Sony. On the other hand, if Immersion settled the "Sony Lawsuit" prior to Microsoft's granting Sony a sublicense, Microsoft's sublicense rights would disappear, and Microsoft would lose the bargaining chip it sought against Sony. Thus, Section 2 of the SLA spells out how Microsoft would pay Immersion if it granted a sublicense to Sony, and in turn how Immersion would pay Microsoft if it elected to settle the district court action before Microsoft's granting a sublicense. *Id.*, Ex. 1, ¶¶ 2(c), 2(e).

Specifically, Section 2(c) of the Sublicense Agreement provided that "in the event Microsoft grants Sony [] a Game Platform Sublicense," Microsoft would owe Immersion certain sums, depending on the timing of the sublicense grant. Section 2(e), in turn, provided:

IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT'S
MOTION TO DISQUALIFY IRELL & MANELLA LLP FOR VIOLATION
OF WASHINGTON'S RULE OF PROFESSIONAL CONDUCT 3.7
(CV07 936RSM) - 3

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

> **Payments to Microsoft in the Event Immersion Settles the Sony Lawsuit Prior to Microsoft Granting Sony a Game Console Platform Sublicense**. In the event Immersion elects in its discretion to settle the Sony Lawsuit prior to Microsoft's granting Sony the Game Console Platform Sublicense (and regardless of whether such Immersion settlement occurs during or after the twenty-four (24) month period following the Effective Date), then Immersion shall pay Microsoft an amount determined as follows . . .

The SLA defines the "Sony Lawsuit" as the district court action between Immersion and Sony. *Id.*, ¶ 1(k) ("[T]he action in the United States District Court for the Northern District of California entitled *Immersion Corporation v. Sony Computer Entertainment of America, Inc., Sony Computer Entertainment Inc., and Microsoft Corp.*, Northern District of California Case No. C02-00710 CW (WDB), as such action pertains to Sony."). The SLA does not define what it means for Immersion to elect in its discretion to settle the Sony Lawsuit, despite Microsoft's claim otherwise. Motion at 5:16. However, the negotiating history shows that the term "settle" does *not* encompass a final judgment and the satisfaction of court orders. *See infra* at 7.

### B. Immersion Wins the Sony Lawsuit

After the resolution of Immersion's claims against Microsoft in July 2003, Immersion continued to pursue its claims against Sony. Immersion's patent lawsuit against Sony was long and hard-fought, at substantial cost to Immersion. In September 2004, Immersion prevailed after a five-week jury trial when the jury found all of Immersion's asserted claims valid and infringed and awarded Immersion $82 million in damages. The district court then entered judgment on the jury's verdict in favor of Immersion and awarded pre-judgment interest and costs. *Id.*, Ex. 2. On April 7, 2005, the district court entered an Amended Judgment against Sony, which Sony appealed to the Federal Circuit. The district court further ordered Sony to pay compulsory license fees to Immersion as a condition of a stay of a permanent injunction.[1] *Id.*, Ex. 3.

During this time frame, Sony was releasing its new PlayStation 3 ("PS3") game console. The PS3 was not at issue in the Sony Lawsuit. Because of Immersion's victory in the lawsuit,

---

[1] Microsoft makes the unsupported assertion that the "[district] court believed that Sony had strong arguments on appeal." Motion at 4:2-3. Neither the district court order to which Microsoft cites nor anything else in the record suggests that the district court had any question relating to the judgment or other orders that the district court itself entered against Sony. Indeed, the district court repeatedly rejected Sony's post-trial motions and other attacks against the judgment.

IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT'S
MOTION TO DISQUALIFY IRELL & MANELLA LLP FOR VIOLATION
OF WASHINGTON'S RULE OF PROFESSIONAL CONDUCT 3.7
(CV07 936RSM) - 4

Byrnes & Keller LLP
38th Floor
1000 Second Avenue
Seattle, Washington 98104
(206) 622-2000

Sony removed the infringing haptic feature from the PS3.  In late February 2007, Immersion and Sony signed an agreement that established a new business relationship between the companies (the "Sony Agreement") that included rights for the PS3 and other products.  *Id.*, Ex. 4. Microsoft's breach of contract claim is predicated upon its mischaracterization of that agreement as reflecting Immersion's election to "settle the Sony Lawsuit prior to Microsoft's granting the Game Console Platform Sublicense" within the meaning of the Sublicense Agreement.  Motion at 4:17-22.  Not so—Immersion received all amounts the Court ordered Sony to pay.

      Microsoft also stretches the Sony Agreement to describe terms that are not there.  Indeed, Microsoft seems to have an allergic reaction to providing the Court with exact quotes, whether from the record or the applicable law.  For example, Microsoft loosely asserts, without support or quotations from the record, that the Sony Agreement included "terms that would resolve the Sony Lawsuit" and "pay the outstanding judgment."  Motion at 4:18-19.  The agreement contains no such provisions.  <u>Not a single provision of the Sony Agreement obligated Sony to satisfy the Amended Judgment or to take any action that would require its satisfaction, nor does Microsoft cite to any such provision</u>.  Motion at 4:22.  By its terms, the Sony Agreement specifically provides that it would not go into effect until after Sony satisfied and discharged the Amended Judgment in the Sony Lawsuit.  McWilliam Decl., Ex. 4, ¶ 1.9 ("Effective Date" definition). The Sony Agreement also contains an integration clause.  *Id.*, Ex. 4, ¶ 9.1 ("<u>Entire Agreement</u>: This Agreement and its Exhibits constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede all promises or understandings made prior to or contemporaneously herewith with respect to such subject matter.").  Microsoft also incorrectly asserts that the agreement "provide[d] mutual releases" and "provide[d] Sony with a license to Immersion's technology which was the subject of the litigation."  Motion at 4:20.  There are releases mentioned, but the Sony Agreement expressly *excluded* releases for the infringement at issue in the Sony Lawsuit.  McWilliam Decl., Ex. 4, ¶ 2.1(a).  Instead, the releases are for past conduct concerning certain products *not* at issue in the Sony Lawsuit.  *Id.*  The Sony Agreement also granted Sony a license for certain going-forward use of Immersion's patents.  *Id.*, Ex. 4,

IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT'S
MOTION TO DISQUALIFY IRELL & MANELLA LLP FOR VIOLATION
OF WASHINGTON'S RULE OF PROFESSIONAL CONDUCT 3.7
(CV07 936RSM) - 5

Byrnes & Keller LLP
38th Floor
1000 Second Avenue
Seattle, Washington 98104
(206) 622-2000

¶ 2.1(c), (d). For these releases and licenses, Sony agreed to make quarterly payments totaling $22.5 million. *Id.*, Ex. 4, ¶ 5.3.

On March 1, 2007, Sony withdrew its appeals, which the Federal Circuit dismissed on March 14, 2007. Again, the Sony Agreement did not obligate Sony to do so. The Federal Circuit's mandate issued, rendering the district court's Amended Judgment final and non-appealable. *Id.*, Ex. 5. On March 16, in satisfaction of the Amended Judgment, Sony paid Immersion $97.3 million from funds Sony had deposited in January 2006 in a litigation escrow account. The amount comprised $82 million in damages, $8,874,888 in prejudgment interest, $325,041 for the court's award of costs, and $6,003,742 in post-judgment interest which accrued by law under 28 U.S.C. § 1961. Immersion also received from Sony a check in the amount of $8,730.82 for an additional one day of post-judgment interest that was due as a result of the timing of Sony's payment from the escrow account. Pursuant to earlier court orders, Sony had previously paid Immersion another $30.6 million in quarterly compulsory license payments between February 2005 and February 2007.

Microsoft tries to make something of the fact that Immersion and Sony delivered instructions to the escrow agent for the release of funds to Immersion to satisfy the judgment. Motion at 6:14-16. Microsoft's assertion that there was an "oral agreement" to deliver instructions ignores that the delivery of escrow instructions to the escrow agent was required pursuant to a written "Litigation Escrow Agreement" that the parties had entered into back in *January 2006*. This agreement allowed Sony to withdraw funds it had previously deposited with the court's registry as security for the judgment and deposit those funds into a litigation escrow account at the bank of its choice. *See id.*, Ex. 6 (Order and Stipulation). The need for escrow instructions providing for the release of funds to Immersion to satisfy a final judgment was contemplated long ago.

### C. Microsoft's Breach of Contract Claim

Now that Immersion prevailed in its case after a hard fought litigation, Microsoft filed this lawsuit in an aggressive play for a share of the judgment and court-ordered amounts that

IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT'S
MOTION TO DISQUALIFY IRELL & MANELLA LLP FOR VIOLATION
OF WASHINGTON'S RULE OF PROFESSIONAL CONDUCT 3.7
(CV07 936RSM) - 6

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Sony paid to Immersion. Microsoft's allegation that the Sublicense Agreement entitles Microsoft to a portion of Immersion's recoveries is off base. Immersion did not "settle the Sony Lawsuit." Instead, Immersion **won** the Sony Lawsuit, as evidenced by the final judgment that Immersion obtained against Sony. That judgment has been satisfied and discharged by operation of law.

Moreover, Microsoft's entire case appears to be nothing more than an attempt to craft a new agreement with Immersion that it did not negotiate in 2003. In fact, Microsoft's case is predicated on an alleged contractual right that was rejected in the negotiations leading up to the SLA. Microsoft proposed an arrangement that would have allowed Microsoft to share in any recoveries from the Sony Lawsuit, such as from a verdict, as well as a settlement. However, Microsoft would have been obligated to provide Immersion with consulting and litigation support through the duration of Immersion's litigation against Sony. *See id.*, Ex. 7, at p. 14 (term sheet dated July 3, 2003, describing proposed "Consulting Agreement"). The parties ultimately rejected this provision in the final SLA, which does not provide Microsoft any right to share in the proceeds from a judgment. *Id.*, Ex. 8, at p. 12 (black-lined copy of July 3 term sheet).

Microsoft's Motion also takes potshots at Immersion to set up a theme that Immersion engaged in a bad faith attempt to "circumvent Immersion's obligations to Microsoft under the SLA." Motion at 7:7-9; *see also* Motion at 2:9-10, 7:13-15, 10:11-12, 10:17-19. Microsoft's allegations of bad faith have no place in this contract case and make no sense. Immersion was under no obligation to "settle the Sony Lawsuit" and trigger payment obligations to Microsoft. "'[I]n a business transaction both sides presumably try to get the best of the deal . . . no legal rule bounds the run of business interest. So one cannot characterize self-interest as bad faith.'" *Lasalle Nat'l Bank v. Metro. Life Ins. Co.,* 18 F.3d 1371, 1375 (7th Cir. 1994) (quoting *A/S Apothekernes Laboratorium v. I.M.C. Chemical*, 873 F.2d 155, 159 (7th Cir. 1989)).

Microsoft also levels the shrill and repetitious charge that Immersion somehow tried to "hide" the "true nature" of the Sony Agreement. Motion at 2:1-2, 6:6-10, 7:7, 9:22-23, 10:1-2, 10:11-12, 10:20-21. For example, Microsoft makes the strange claim that "key elements of

IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT'S
MOTION TO DISQUALIFY IRELL & MANELLA LLP FOR VIOLATION
OF WASHINGTON'S RULE OF PROFESSIONAL CONDUCT 3.7
(CV07 936RSM) - 7

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

consideration" for an alleged settlement were "hidden" in the definition of "Effective Date and the Recitals" sections of the Sony Agreement. Motion at 6:6-10. Microsoft does not explain how express written provisions of an integrated agreement can hide anything. Nothing was ever "hidden" from Microsoft, which has come to its own conclusion about the Sony Agreement. Immersion disagrees with Microsoft's position and submits that the Sublicense Agreement does not contemplate Microsoft's sharing in hard-earned payments from the satisfaction of a final judgment in the Sony Lawsuit. This is for the fact-finder to decide, and Microsoft's attempt to spin out its theory on an incomplete record in a baseless disqualification motion is inappropriate.

### III. MICROSOFT'S DISQUALIFICATION MOTION IS CONTRARY TO LAW

Professional conduct rules are "not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel." *Optyl Eyewear Fashion Int'l Corp. v. Styl Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (quoting ABA Model Code of Professional Responsibility, Canon 5, n. 31). Thus, "disqualification motions should be subjected to 'particularly strict judicial scrutiny.'" *Id.* (quoting *Rice v. Baron*, 456 F. Supp. 1361, 1370 (S.D.N.Y. 1978)). Microsoft's Motion cannot withstand <u>any</u> scrutiny.

Microsoft bases its Motion on an alleged violation of RPC 3.7—a rule Microsoft remarkably <u>does not quote</u> once in its Motion. Rule 3.7, which is identical to ABA Model Rule of Professional Conduct 3.7, provides as follows:[2]

>  (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
>   (1) the testimony relates to an uncontested issue;
>
>   (2) the testimony relates to the nature and value of legal services rendered in the case;
>
>   (3) disqualification of the lawyer would work substantial hardship on the client; or
>
>   (4) the lawyer has been called by the opposing party and the court rules that the lawyer may continue to act as an advocate.

---

[2] Attorneys in the Western District of Washington must abide by the "Washington Rules of Professional Conduct, as promulgated, amended, and interpreted by the Washington State Supreme Court . . . and the decisions of any court applicable thereto." W.D. Wash. Gen. R. 2(e).

IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT'S
MOTION TO DISQUALIFY IRELL & MANELLA LLP FOR VIOLATION
OF WASHINGTON'S RULE OF PROFESSIONAL CONDUCT 3.7
(CV07 936RSM) - 8

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Microsoft's conspicuous silence on the text of RPC 3.7 is easy to explain: RPC 3.7's plain language directly contradicts Microsoft's attempt to disqualify Irell & Manella.

### A. Microsoft's Request to Disqualify Irell & Manella LLP Is Frivolous

Microsoft seeks an order disqualifying the Irell & Manella LLP firm based on Microsoft's contention that one attorney at that firm participated in some of the negotiations relating to the Sony Agreement and might be a witness in the case. There is no basis for Microsoft's request, regardless of whether an attorney in the firm may be a witness. Microsoft's attempt to disqualify the entire firm of Irell & Manella flies in the face of the express text of RPC 3.7(b) itself.

Rule 3.7(b), added in 2006, provides that "A lawyer **may** act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9" (emphasis added). (Rules 1.7 and 1.9 concern conflicts that do not apply here.) The Comments further explain how an entire firm may not be disqualified:

> Paragraph (b) provides that a lawyer is not disqualified from serving as an advocate because a lawyer with whom the lawyer is associated in a firm is precluded from doing so by paragraph (a). If, however, the testifying lawyer would also be disqualified by Rule 1.7 or Rule 1.9 from representing the client in the matter, other lawyers in the firm will be precluded from representing the client by Rule 1.10 unless the client gives informed consent under the conditions stated in Rule 1.7.

RPC 3.7, cmt 7 (emphasis added). Microsoft does not even cite, much less apply, RPC 3.7(b), or the Comment, even though it clearly controls Microsoft's Motion.[3]

Even apart from Microsoft's inexplicable failure to cite (or even allude to) RPC 3.7(b), Microsoft's Motion is otherwise devoid of legal support for its request to disqualify Irell & Manella. The sole case Microsoft cites in support of its statement that "Irell & Manella's continued role as counsel is inappropriate" is *Korfmann v. Kemper Nat. Ins. Co.,* 258 A.D. 2d

---

[3] Microsoft does not suggest that there is any conflict between Immersion and Mr. Birnholz, and even if there were, any issue would be removed simply by obtaining Immersion's consent. RPC 3.7(b) & cmt 7.

IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT'S
MOTION TO DISQUALIFY IRELL & MANELLA LLP FOR VIOLATION
OF WASHINGTON'S RULE OF PROFESSIONAL CONDUCT 3.7
(CV07 936RSM) - 9

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

508, 685 N.Y.S. 2d 282 (1999). *Korfmann* was decided under a substantively different rule of the New York Code of Professional Responsibility and only addressed the disqualification of the testifying attorney himself, not the imputed disqualification of a law firm. The two Washington cases Microsoft cites similarly do not support Microsoft's Motion. *State v. Nation*, 110 Wn. App. 651 (2002), did not address the disqualification of a law firm. *State v. Schmitt,* 124 Wn. App. 662 (2004), <u>reversed</u> a trial court's disqualification of a law firm, despite being decided before RPC 3.7(b) codified the rule against imputed disqualification of a law firm.

### B. Rule 3.7 Applies to the Conduct of a Trial, Not Pre-Trial Proceedings

Microsoft's attempt to invoke Rule 3.7 fails for the further reason that Rule 3.7 does not apply to disqualify attorneys from participating in pre-trial proceedings, as Microsoft improperly seeks here. On its face, RPC 3.7 only applies to a lawyer who is acting "<u>as advocate at a trial</u>." Microsoft itself confirms that RPC 3.7 only applies at trial, stating that Rule 3.7 is "designed to minimize confusion among <u>jurors</u> about the attorney's role in the <u>courtroom</u>." Motion at 9:11-13 (emphasis added). *See also* WSBA Informal Op. No. 1003 (1986) (RPC 3.7 does not prohibit testifying attorney from "continuing to represent the client in matters separate and distinct from the court trial" and "providing legal research, legal opinions, court papers, settlement agreements, and other legal work to the trial attorney."). It is premature to make decisions about the attorneys, witnesses and evidence at trial for a case in its early stages.

### C. Irell & Manella LLP's Mr. Birnholz Is Not a Necessary Witness

Microsoft's attempt to invoke Rule 3.7 is also entirely without factual support, in addition to being legally untenable. Microsoft cannot establish that Irell & Manella's Richard Birnholz is a necessary witness or that there is any basis to preclude him from participating at trial as an attorney for Immersion. In applying RPC 3.7, Washington courts "have been reluctant to disqualify an attorney absent compelling circumstances." *Pub. Util. Dist. No. 1*, 124 Wn.2d at 812. To demonstrate "compelling circumstances" sufficient to warrant disqualification:

> a motion for disqualification must be supported by a showing that the attorney will give evidence material to the determination of the issues being litigated, that the evidence is unobtainable elsewhere, and that the testimony is or may be prejudicial to the testifying attorney's client.

IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT'S MOTION TO DISQUALIFY IRELL & MANELLA LLP FOR VIOLATION OF WASHINGTON'S RULE OF PROFESSIONAL CONDUCT 3.7 (CV07 936RSM) - 10

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Id.* (quoting *Cottonwood Estates, Inc. v. Paradise Builders, Inc.*, 128 Ariz. 99, 105, 624 P.2d 296 (1981). *Accord Bonneville v. Kitsap County*, 2006 WL 1705900, at *3 (W.D. Wash. 6/14/06).

Microsoft has not even acknowledged this controlling test, much less has Microsoft attempted to apply it here. None of the requirements is met. First, it cannot be said that Mr. Birnholz will "give evidence material to the determination of the issues being litigated." Mr. Birnholz's only involvement was as one of a number of attendees at some of the negotiation sessions that led to the Sony Agreement. Microsoft claims that Mr. Birnholz was the "architect" and a "key drafter" of the Sony Agreement, Motion at 2:4-5, 6:1-2, but like much else in Microsoft's Motion, these claims are not supported by the record cites on which Microsoft purports to rely. In any event, the Sony Agreement is an integrated contract that speaks for itself.

Second, Microsoft does not and cannot show that any evidence about the negotiation of the Sony Agreement, even if it were relevant, is "unobtainable" except from Mr. Birnholz. There were other attendees at these sessions who can be examined. The only information that might otherwise be unobtainable is Mr. Birnholz's mental impressions and opinions, but that is non-discoverable attorney work product. The interpretation of the Sony Agreement is not at issue in any event; it is the Sublicense Agreement between Immersion and Microsoft that is in dispute.

Third, Microsoft does not suggest that Mr. Birnholz's testimony would be prejudicial to Immersion. On the contrary, Microsoft recognizes that his testimony would be favorable to Immersion, stating: "Immersion will need to call Birnholz to testify to attempt to respond to the testimony of Jennifer Liu discussed above."[4] Motion at 10:21-22. In sum, there is no basis to invoke Rule 3.7. *See, e.g., Pub. Util. Dist. No. 1*, 124 Wn.2d at 811 (affirming refusal to

---

[4] Immersion has not yet had the opportunity to cross-examine Ms. Liu, whose testimony Microsoft attempts to summarize, with varying degrees of inaccuracy, in its Motion. Accordingly, Immersion will not address Ms. Liu's testimony at this time. We note that Microsoft provided the minimum notice for this Motion, such that Immersion's opposition is due the business day before Immersion is scheduled to cross-examine Ms. Liu. Immersion asked Microsoft to continue the noting date, but Microsoft's counsel, however, would not stipulate to this short continuance unless Immersion agreed that no Irell & Manella attorneys would examine Ms. Liu at her resumed deposition. McWilliam Decl., Ex. 9. Given the frivolous nature of Microsoft's attempt to disqualify Irell & Manella, which is flatly contradicted by RPC 3.7 itself, Immersion declined to accede to Microsoft's attempt to dictate which Immersion counsel should participate in Ms. Liu's deposition or any other discovery proceeding.

IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT'S
MOTION TO DISQUALIFY IRELL & MANELLA LLP FOR VIOLATION
OF WASHINGTON'S RULE OF PROFESSIONAL CONDUCT 3.7
(CV07 936RSM) - 11

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

disqualify attorney who was allegedly "integrally involved in drafting" the agreement in dispute).

## IV. CONCLUSION

Microsoft has failed even to <u>acknowledge</u>, much less apply, the applicable legal standards under RPC 3.7. A disqualification motion is a serious matter. The Court should not countenance the filing of such a Motion for an improper tactical purpose. Microsoft's reckless disregard for the applicable law speaks volumes about its credibility. Microsoft's Motion should be denied.

DATED this 22nd day of January, 2008.

        BYRNES & KELLER LLP

        By <u>/s/ Jofrey M. McWilliam</u>
         Bradley S. Keller, WSBA #10665
         Jofrey M. McWilliam, WSBA #28441
         1000 Second Avenue, Suite 3800
         Seattle, WA 98104-4082
         Telephone: (206) 622-2000
         Facsimile: (206) 622-2522
         bkeller@byrneskeller.com
         jmcwilliam@byrneskeller.com
       *Attorneys for Immersion Corporation*

IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT'S
MOTION TO DISQUALIFY IRELL & MANELLA LLP FOR VIOLATION
OF WASHINGTON'S RULE OF PROFESSIONAL CONDUCT 3.7
(CV07 936RSM) - 12

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 22nd day of January, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Paul J. Kundtz (pkundtz@riddellwilliams.com)
Blake Marks-Dias (bmarksdias@riddellwilliams.com)
Wendy E. Lyon (wlyon@riddellwilliams.com)
Riddell Williams P.S.
1001 Fourth Avenue Plaza, Suite 4500
Seattle, WA 98154-3600
*Attorneys for Plaintiff*

/s/ Jofrey M. McWilliam, WSBA #28441
Byrnes & Keller LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Telephone: (206) 622-2000
Facsimile: (206) 622-2522
jmcwilliam@byrneskeller.com

IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT'S MOTION TO DISQUALIFY IRELL & MANELLA LLP FOR VIOLATION OF WASHINGTON'S RULE OF PROFESSIONAL CONDUCT 3.7 (CV07 936RSM) - 13

Byrnes & Keller LLP
38th Floor
1000 Second Avenue
Seattle, Washington 98104
(206) 622-2000