The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>           Plaintiff,<br><br> v.<br><br>IMMERSION CORPORATION, a Delaware corporation,<br><br>           Defendant. | No. CV07 936RSM<br><br>**IMMERSION CORPORATION'S OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION NOS. 3 AND 19**<br><br>**NOTE ON MOTION CALENDAR: February 15, 2008** |

IMMERSION'S OPPOSITION TO MICROSOFT'S MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION NOS. 3 AND 19
(CV07 936RSM)

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

I.  **<u>INTRODUCTION</u>**

After a long battle in Immersion's previous patent infringement lawsuit against Sony in the United States District Court for the Northern District of California, Immersion prevailed. Sony ultimately satisfied the district court's final judgment, which ordered Sony to pay approximately $97 million in damages, interest and costs, as well as court orders requiring Sony to pay Immersion an additional $30.6 million in compulsory license fees on the infringing products. Although Immersion won against Sony, Microsoft now is trying to grab a large portion of Immersion's recoveries. In particular, Microsoft contends that an agreement between Sony and Immersion effective March 1, 2007, triggered obligations to pay Microsoft under a "Sublicense Agreement" in the event that Immersion elected in its discretion to settle the Sony Lawsuit. In discovery in this case, Immersion has already produced its agreement with Sony, as well as the drafts and negotiations for that agreement. Because the final, written agreement contradicts Microsoft's claims, Microsoft overreaches by insisting on the production of documents relating to earlier mediations in the Immersion-Sony case and follow up, including with respect to unsuccessful court-ordered mediations that took place years ago. This is not appropriate discovery, and Microsoft's Motion to Compel Responses to Requests for Production Nos. 3 and 19 should be denied.

First, the Requests seek documents associated with Immersion's mediations with Sony that are privileged and not a proper subject of discovery. In the underlying Immersion-Sony case, Judge Wilken ordered the parties to participate in mediation pursuant to the Northern District of California's Local Rules. The parties did so, and also entered into an express confidentiality agreement with JAMS providing for strict confidentiality of all matters concerning the mediation and any subsequent discussions. Immersion participated in the court-ordered mediation with the full expectation that the proceedings would remain confidential and be off limits in any subsequent proceeding. Indeed, California law specifically provides that communications and writings associated with a mediation are not subject to discovery and "shall not be compelled" in any civil action where testimony can be compelled to be given. Cal. Evid.

IMMERSION'S OPPOSITION TO MICROSOFT'S MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION NOS. 3 AND 19
(CV07 936RSM) - 1

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Code § 1119(a), (b). Although Immersion is entitled to the full protection of California law, Washington and federal law similarly protect mediation-related documents from discovery in a later civil action.

Second, and putting aside the issues of privilege, in light of the strong policies embodied in Rule 408 and related case law, federal courts are sensitive to allowing discovery of communications relating to the potential settlement of pending litigation. Indeed, courts tend to require a heightened showing of relevance or a strong showing of a particularized need for the information before entertaining a request to breach the settlement privilege. Here, Microsoft cannot meet its burden – the documents relating to mediations in 2003 and 2004 and subsequent follow up have little or no relevance to the claims and defenses at issue. The focus of Microsoft's claims in this case is whether the 2007 agreement between Immersion and Sony triggered obligations to Microsoft under the Sublicense Agreement. That agreement is a written, integrated document which supersedes any previous communications. Documents relating not to that agreement, but to earlier, unsuccessful mediations years earlier, and to any other unfruitful discussion of settlement after the Immersion-Sony Lawsuit started in February 2002, do not bear on the actual agreement of the parties. Microsoft seems intent on focusing not on what actually occurred, but on anything that may have been discussed at any time in the past.

Nor may Microsoft justify its discovery requests on account of Immersion's Sixth Affirmative Defense, that the Sublicense Agreement, as Microsoft interprets that agreement, is contrary to public policy. Microsoft's position in this case reveals that, according to Microsoft, the Sublicense Agreement really was intended as an obstacle to resolving the lawsuit by imposing a substantial financial penalty on Immersion if it obtained any recovery from Sony, even if Immersion prevailed in the case and Sony satisfied the court's judgment. But the meaning of the Sublicense Agreement, and Microsoft's contentions as to what it requires, do not turn on anything having to do with Sony. The discovery that Microsoft seeks cannot shed light on Microsoft's own construction of the Sublicense Agreement or the fact that the Immersion-

IMMERSION'S OPPOSITION TO MICROSOFT'S MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION NOS. 3 AND 19
(CV07 936RSM) - 2

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Sony Lawsuit did not settle under the terms of the Sublicense Agreement but instead proceeded to final judgment.

In short, Microsoft's motion should be denied. The pertinent discovery relating to the Immersion-Sony agreement has been provided.

## II.  FACTUAL BACKGROUND

### A.  Nature of the Case.

This case has its roots in a patent infringement lawsuit that Immersion filed against Microsoft and Sony in February 2002 in the Northern District of California. Immersion alleged that certain Sony PlayStation and Microsoft Xbox video game consoles, controllers, and games infringed two of Immersion's patents. In July 2003, Immersion and Microsoft settled. Sony and Immersion did not settle, and the case against Sony went to trial in 2004. Immersion won and obtained a judgment for $82 million in damages, and other court-ordered relief, which Sony satisfied in full. Declaration of Alan J. Heinrich dated February 11, 2008 ("Heinrich Decl."), Exs. 1 (Jury Verdict); 2 (Amended Judgment); 3 (Notice of Satisfaction of Amended Judgment).

This is a breach of contract case that Microsoft brought in June 2007. The main agreement in question here is a "Sublicense Agreement" between Immersion and Microsoft entered into as part of their settlement in 2003. Under the Sublicense Agreement, Microsoft was granted, for a limited two-year window, the right to sublicense Immersion's patents to Sony under certain conditions. Sublicense Agreement, ¶ 2(a), (c), (j). If Microsoft granted Sony such a sublicense, Microsoft would owe Immersion at least $100 million. *Id.*, ¶ 2(c). Ultimately, however, Microsoft did not grant Sony a sublicense, and hence did not owe Immersion the payments contemplated. The Sublicense Agreement also provided that if Immersion elected in its discretion to settle its district court action against Sony prior to Microsoft's granting Sony a sublicense, and hence deprived Microsoft of the ability to sublicense, Immersion would owe Microsoft certain specified amounts. *Id.*, ¶ 2(e), (k). The amount owed depended on how much Immersion received for the rights Immersion granted to Sony in the settlement. *Id.*

IMMERSION'S OPPOSITION TO MICROSOFT'S MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION NOS. 3 AND 19
(CV07 936RSM) - 3

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Microsoft now distorts and misreads the Sublicense Agreement in an attempt to seize a share of the judgment and other Court-ordered sums Immersion was awarded as a result of prevailing against Sony in the lawsuit. But Immersion owes Microsoft nothing. Immersion did not do anything that deprived Microsoft of its right to grant Sony a sublicense. Similarly, Immersion did not settle its district court action against Sony. Immersion prevailed against Sony, obtaining a final judgment against Sony in the amount of approximately $97.3 million in damages, interest and costs. Sony satisfied the judgment in full and also paid Immersion an additional $30.6 million in Court-ordered compulsory license payments. Upon Sony's satisfaction of the judgment, Sony and Immersion entered into an agreement to establish a new business relationship (the "2007 Sony Agreement"). This agreement could not trigger any obligations to Microsoft under the Sublicense Agreement. In addition to the Microsoft-Immersion negotiating history that confirms that the Sublicense Agreement did not contemplate payment to Microsoft if Immersion obtained a judgment against Sony, no provision of the 2007 Sony Agreement obligated Sony to satisfy the judgment or to take any action that would require its satisfaction.

**B.     Nature of This Discovery Dispute.**

In response to Microsoft's discovery requests, Immersion has produced, among many other documents, a substantial amount of information related to the 2007 Sony Agreement, Immersion's lawsuit against Sony, and the 2003 Sublicense Agreement and related agreements with Microsoft. *See, e.g.*, *id.*, Ex. 4, pp. 18-21, 24-31, 33-35, 36-37 (Responses to Requests Nos. 1-2, 4, 10-18, 21-24, 26). Although Microsoft's claims revolve around the 2007 Sony Agreement, Immersion did not simply produce that agreement itself. Rather, Immersion went further, and produced drafts of the agreement as well as communications between Immersion and Sony from November 2006 through March 2007, even though the negotiations resulting in the 2007 Sony Agreement took place in February 2007.

Notwithstanding Immersion's production of a substantial amount of information relating to the 2007 Sony Agreement, Microsoft now seeks to compel any documents relating to the

IMMERSION'S OPPOSITION TO MICROSOFT'S MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION NOS. 3 AND 19
(CV07 936RSM) - 4

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

"settlement," including mediation documents, between Immersion and Sony that occurred since the filing of Immersion's prior patent infringement lawsuit against Microsoft and Sony in February 2002. The documents in question include materials relating to the parties' participation in unsuccessful, court-ordered mediations in San Jose and San Francisco, California, on February 4, 2003, October 31, 2003, and March 24, 2004. *See id.* Ex. 5 (Case Management Order); and Ex. 6. (Minute Order). These mediations were held at JAMS before Judge Edward Infante (Ret.), under the JAMS agreements on confidentiality and with full expectation of confidentiality and privilege. *See id.* Ex. 7 (JAMS Agreement).

### III. MICROSOFT IMPROPERLY SEEKS PRIVILEGED AND CONFIDENTIAL INFORMATION THAT DOES NOT BEAR ON THE CLAIMS IN DISPUTE

#### A. Documents Related to Immersion's Mediation with Sony Are Protected from Discovery Under the Mediation Privilege.

The first ground on which Microsoft's motion can and should be denied is privilege. California, Washington, and federal law all provide a mediation privilege. Cal. Evid. Code § 1115 et. seq.; R.C.W. 5.60.070; *see, e.g., Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1179-80 (C.D. Cal. 1998) (adopting federal mediation privilege after reasoning, among other things, "that every state in the Union, with the exception of Delaware, has adopted a mediation privilege of one type or another").

As an initial matter, that Immersion is entitled to the benefit of the mediation privilege under state law in this diversity action is a matter of state law, since state law supplies the rule of decision with respect to Microsoft's breach of contract claims. *See* Fed. R. Evid. 501; *Babasa v. LensCrafters, Inc.*, 498 F.3d 972 (9th Cir. 2007); *see, e.g.*, *Olam v. Congress Mortgage Co.*, 68 F. Supp. 2d 1110 (N.D. Cal. 1999) (Brazil, J.) (applying California mediation privilege to court-sponsored voluntary mediation in diversity action for breach of contract). Accordingly, Microsoft's heavy reliance on Federal Rule of Evidence 408 to undermine the assertion of the mediation privilege thus is mistaken.[1]

---

[1] Microsoft gets the federal law wrong in any event. Even in federal question cases, there is "a federal mediation privilege applicable to all communications made in conjunction with a formal mediation." *Folb*, 16 F. Supp. 2d at 1179-80.

IMMERSION'S OPPOSITION TO MICROSOFT'S MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION NOS. 3 AND 19
(CV07 936RSM) - 5

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Both Washington and California have enacted mediation confidentiality statutes which "provide explicitly that information disclosed in mediation proceedings is not subject to discovery." *Folb*, 16 F. Supp. 2d at 1179-80 (citing Cal. Evid. Code § 1119 (admissions made pursuant to a mediation are not subject to discovery), and Wash. Rev. Code. Ann. § 7.75.050 (all communications privileged)). To the extent there is a conflict between these rules, Washington's choice of law rules would favor application of the California mediation privilege: the Immersion-Sony mediations were (1) held in California, (2) pursuant to a JAMS agreement on confidentiality governed by California law, (3) under the Order and sponsorship of the United States District Court for the Northern District of California, (4) with the expectation that mediation communications would be privileged, and (5) because California's mediation privilege is consistent Washington's mediation privilege.[2] In a case involving similar facts, the Washington Court of Appeals applied the privilege statute of the state with the "most significant relationship" to the underlying events. *See State v. Donahue*, 105 Wn. App. 67, 71-72, 18 P.3d 608 (2001) (applying Restatement (Second) of Conflict of Laws § 139 to determine whether Oregon or Washington law applied to defendant's assertion of the physician-patient privilege, and concluding that it was reasonable that Oregon law controlled because the patient was "in a hospital in Oregon," "under the care of an Oregon doctor," and "[t]he blood was drawn in Oregon"); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 139(2) & cmt. d (providing conflict of law test for privileged communications).

California's mediation privilege in California Evidence Code § 1119 provides that all communications, negotiations, or settlement discussions among participants in the course of a mediation or a mediation consultation are to remain confidential. A "mediation consultation" means "a communication between a person and a mediator for the purpose of initiating, considering, or reconvening a mediation or retaining the mediator." Cal. Evid. Code § 1115 (c).

---

[2] R.C.W. 5.60.070 provides that "communications made or materials submitted in, or in conjunction with" a mediation conducted pursuant to court order or written agreement "are privileged and confidential and not subject to disclosure in any judicial proceeding" except by agreement of the parties or under certain limited circumstances not relevant here.

IMMERSION'S OPPOSITION TO MICROSOFT'S MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION NOS. 3 AND 19
(CV07 936RSM) - 6

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Section 1119 (a) and (b) direct that, except as otherwise permitted in these statutes, no "evidence of anything said or any admission made," or "writing . . . that is prepared," for "the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery," and disclosure of such evidence or writings "shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given." There is no "cause exception" under the California statute: material protected by the mediation privilege is not subject to discovery even if "good cause" exists for its disclosure. *Rojas v. Superior Court*, 33 Cal. 4th 407, 423, 93 P.3d 260 (2004).[3] The privilege "unqualifiedly" bars disclosure of "communications and writings associated with a mediation" absent an express statutory exception. *Id.* at 424 (quoting *Foxgate Homeowners' Ass'n. Inc. v. Bramalea Cal., Inc.*, 26 Cal. 4th 1, 14, 25 P.3d 1117 (2001) (citing Cal. Evid. Code § 1119). None of the statutory exceptions are relevant here.

Moreover, "[e]ven after mediation ends, communications and writings protected by the statutes are to remain confidential." *See Wimsatt v. Superior Court*, 152 Cal. App. 4th 137, 151-152, 61 Cal. Rptr. 3d 200 (2007) (citing Cal. Evid. Code § 1126). California Evidence Code § 1126 provides that "[a]nything said, any admission made, or any writing that is inadmissible, protected from disclosure, and confidential under this chapter before a mediation ends, shall remain inadmissible, protected from disclosure, and confidential to the same extent after the mediation ends." Documents relating to participation in court-ordered mediations thus are privileged from discovery.

Microsoft implicitly acknowledges the soundness of these arguments by arguing that Immersion somehow "waived" the right to invoke a mediation privilege. The only point Microsoft makes in this regard, however, is the incorrect assertion that Immersion impliedly

---

[3] "The [California] Supreme Court has repeatedly resisted attempts to narrow the scope of mediation confidentiality. The court has refused to judicially create exceptions to the statutory scheme. . . ." *Wimsatt*, 152 Cal. App. 4th at 152. "Rather, the Supreme Court has broadly applied the mediation confidentiality statutes and has severely curtailed courts' ability to formulate exceptions." *Id.* (collecting cases).

IMMERSION'S OPPOSITION TO MICROSOFT'S MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION NOS. 3 AND 19
(CV07 936RSM) - 7

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

waived its right to rely on the mediation privilege by asserting its Sixth Affirmative Defense that the Sublicense Agreement, as construed by Microsoft, is contrary to public policy.[4] Microsoft's argument is misguided. First, the mediation privilege cannot be impliedly waived; only an express waiver will eliminate the privilege. *In re Marriage of Kieturakis*, 138 Cal. App. 4th 56, 81, 81 Cal. Rptr. 3d 119 (2006) (citing Cal. Evid. Code § 1122).[5] Second, Immersion's public policy defense turns not on communications between Immersion and Sony, but on Microsoft's construction of the Sublicense Agreement. According to Microsoft's interpretation of the Sublicense Agreement provision, Immersion would owe Microsoft a share of any recovery from Sony, even recoveries from the satisfaction of a final judgment or orders of a United States District Court. Although Immersion strenuously disputes Microsoft's position, in making this contention, Microsoft is essentially acknowledging that the Sublicense Agreement's intended purpose and effect is to lock-up Sony in litigation with Immersion for as long as possible by imposing a stiff financial penalty on Immersion (at least $15 million), even if Sony and Immersion litigated the Sony Lawsuit to final judgment (as they ultimately did). Immersion disagrees of course, but the requested discovery for any communications between Immersion and Sony, including from years ago, does not illuminate the issues of whether Microsoft's position on the Sublicense Agreement is contrary to public policy.

### B. Microsoft Has Not Established That Communications Not Relating to the 2007 Sony Agreement Are Within the Permissible Scope of Discovery.

Microsoft's request for any communication with Sony on the subject of settlement, whether or not related to the 2007 Sony Agreement, also should be rejected for two additional reasons. First, the request is contrary to the policies underlying Federal Rule 408 and the broader privilege some federal courts have recognized to insulate confidential settlement-related

---

[4] *See, e.g.*, *Scott v. Cingular Wireless*, 160 Wn.2d 843, 161 P.3d 1000 (2007) ("An agreement that violates public policy may be void and unenforceable.") (quoting RESTATEMENT (SECOND) OF CONTRACTS § 178 (1981)); *Osumi v. Sutton*, 151 Cal. App. 4th 1355, 60 Cal. Rptr. 3d 693 (2007) ("It is, of course, the strong public policy of this state to encourage the voluntary settlement of litigation.").

[5] Notably, there is no "in issue" doctrine under the California statute, which creates an implied waiver where the holder of the privilege raises an issue involving the substance of the protected communications. *In re Marriage of Kieturakis*, 138 Cal. App. 4th at 81.

IMMERSION'S OPPOSITION TO MICROSOFT'S MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION NOS. 3 AND 19
(CV07 936RSM) - 8

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

communications from discovery in later proceedings involving third parties. Second, documents relating to the infrequent and unsuccessful communications between Immersion and Sony relating to resolving the Sony Lawsuit before judgment have no bearing on the events that actually took place – that the case did not settle, that Sony satisfied a final judgment, and that the parties entered into the 2007 agreement which stands on its own.

Numerous courts have held that communications made in furtherance of settlement negotiations are privileged and protected from third-party discovery under a federal settlement privilege. This privilege is derived from the strong public policy underlying Fed. R. Evid. 408 to protect the confidentiality of private settlement negotiations and encourage settlement as a means of dispute resolution, and applies to communications created in the context of such negotiations with an expectation of confidentiality. *See Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548, 554 (E.D. Cal. 1990), *see also, e.g., Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 983 (6th Cir. 2003) ("[A]ny communications made in furtherance of settlement are privileged."); *Allen County, Ohio v. Reilly Indus., Inc.*, 197 F.R.D. 352 (N.D. Ohio 2000) (settlement discussions with former co-defendant in the case not discoverable).

In *Cook*, for example, the Eastern District of California addressed the issue of whether the content of settlement negotiations is discoverable and declined to order production of such settlement discussions. As the court explained, "Rule 408 'evidences a strong public policy favoring the confidentiality of attempts to voluntarily resolve disputes.' Indeed, the Ninth Circuit has stated that one of the principles underlying Rule 408 is the 'promotion of public policy favoring the compromise and settlement of disputes.'" 132 F.R.D. at 554 (citing *United States v. Contra County Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982)). This is because the "ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system." *Goodyear*, 332 F.2d at 980. Effective settlement negotiations require the preservation of confidentiality. "Parties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination, under the ruse of

IMMERSION'S OPPOSITION TO MICROSOFT'S MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION NOS. 3 AND 19
(CV07 936RSM) - 9

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

'impeachment evidence,' by some future third party." *Id.* *See also* Wayne D. Brazil, *Protecting the Confidentiality of Settlement Negotiations*, 39 HASTINGS L.J. 955, 989-90 (1988) (collecting cases supporting a settlement privilege which reason that "if the law wants to encourage settlement by encouraging frank negotiations, it is important to create an environment in which counsel and parties can be fairly confident that what they say as they negotiate, and the terms of any agreements they might reach, will not be used against them later"). The same rationales should be applied here.

Even if the court declines to apply a settlement privilege, Microsoft must make a higher "particularized showing" that the requested settlement and mediation communications are likely to lead to admissible evidence before it can be discovered. *See, e.g.*, *Shipes v. BIC Corp.*, 154 F.R.D. 301, 309 (M.D. Ga. 1994) (party seeking to discover information related to settlement negotiations must "make a 'particularized showing' that settlement information is likely to lead to admissible evidence before it can be discovered"); *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, (D.N.J. 1994) (adopting position of district courts of the Second and Third Circuit that switches the burden of proof from the party in opposition to discovery of settlement negotiations to the party seeking the information to make a "particularized showing" of relevance and need, and refusing to compel discovery) (collecting cases). "This position encourages settlements and protects their confidentiality while still allowing discovery if the information is truly relevant." *Shipes*, 154 F.R.D. at 309.

Microsoft not only cannot make a particularized showing of need, Microsoft's request for this material does not pass muster under the ordinary standards of Rule 26. Microsoft's claim in this case is that Immersion breached the 2003 Sublicense Agreement because Immersion owes Microsoft certain amounts on account of the 2007 Sony Agreement. That agreement, and all drafts and correspondence relating to it, as well as documents reflecting Sony's payments to Immersion in satisfaction of court orders, already have been produced. The terms of the agreement are known and can be analyzed. The court pleadings reflecting Sony's satisfaction of judgment are of public record. Why is anything else pertinent? The previous mediations, and

IMMERSION'S OPPOSITION TO MICROSOFT'S MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION NOS. 3 AND 19
(CV07 936RSM) - 10

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

any follow-up communications with Sony, not only were unproductive, they have no bearing on post-judgment events or what actually occurred in 2007.

As mentioned above, Immersion has produced all non-privileged, non-work product protected documents relating to the negotiation of the 2007 Immersion-Sony Agreement and the 2003 Immersion-Microsoft Sublicense Agreement (and agreements entered into in connection therewith). With respect to the negotiation of the 2007 Sony Agreement, Immersion produced documents going as far back as November 2006, even though the negotiation of the 2007 Sony Agreement did not begin until February 2007. Immersion also has drawn the same line in discovery that Sony did when Sony responded to a subpoena Microsoft served in this case. Microsoft requested from Sony substantially the same information as that requested here, yet Sony similarly limited its production to documents relating directly to the 2007 agreement that was ultimately entered into between the parties.

Microsoft utterly fails to meet its burden to demonstrate that all settlement and mediation-related documents are relevant to its breach of contract claims. Microsoft makes only the bald and conclusory statement that "all settlement-related documents, including mediation documents, between Immersion and Sony in their previous patent litigation" are relevant because "Microsoft's breach of contract claim requires Microsoft to prove that Immersion and Sony settled the Sony lawsuit." Mot. at 1, 5-6 (arguing that Microsoft's claims "hinge on whether or not Immersion and Sony settled the Sony Lawsuit").[6] However, broad assertions or conclusory statements do not satisfy a party's burden to demonstrate relevance. *Doe v. Methacton School Dist.*, 164 F.R.D. 175, 176-77 (E.D. Pa. 1995). Microsoft offers absolutely no reason why unsuccessful mediations from 2003 and 2004, and other unsuccessful settlement attempts, can prove the "true nature" of the 2007 Sony Agreement. *See* Mot. at 6. The 2007 Agreement is an

---

[6] Microsoft greatly oversimplifies its case, apparently in an attempt to increase the scope of relevant discovery. Microsoft argues that "This case turns on whether or not Immersion settled its patent lawsuit with Sony." Mot. at 2. "If it did," Microsoft agues, "then Immersion owes Microsoft certain amounts pursuant to a written contract between Microsoft and Immersion." *Id.* The proper inquiry is much more focused – whether Immersion elected in its discretion "to settle the Sony Lawsuit," within the terms of the Sublicense Agreement.

IMMERSION'S OPPOSITION TO MICROSOFT'S MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION NOS. 3 AND 19
(CV07 936RSM) - 11

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

integrated document, and its terms are well known to Microsoft. Because many of the basic terms that Microsoft wants to be there simply are not, Microsoft is hoping to fish in another pond. While Immersion acknowledges the liberal nature of the discovery rules, this particular inquiry goes too far and impinges on well-recognized limitations on discovery.

IV. **CONCLUSION**

Microsoft has been provided with the pertinent documents relating to the 2007 Immersion-2007 Sony Agreement. Request Nos. 3 and 19 seeking mediation documents and other communications reflecting failed efforts to resolve the lawsuit exceed the permissible scope of discovery. Microsoft's Motion to compel should be denied.

DATED this 11th day of February, 2008.

                            BYRNES & KELLER LLP

                            By /s/ Jofrey M. McWilliam
                                Bradley S. Keller, WSBA #10665
                                Jofrey M. McWilliam, WSBA #28441
                                1000 Second Avenue, Suite 3800
                                Seattle, WA 98104-4082
                                Telephone: (206) 622-2000
                                Facsimile: (206) 622-2522
                                bkeller@byrneskeller.com
                                jmcwilliam@byrneskeller.com
                           *Attorneys for Immersion Corporation*

IMMERSION'S OPPOSITION TO MICROSOFT'S MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION NOS. 3 AND 19
(CV07 936RSM) - 12

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

# CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 11th day of February, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Paul J. Kundtz (pkundtz@riddellwilliams.com)
Blake Marks-Dias (bmarksdias@riddellwilliams.com)
Wendy E. Lyon (wlyon@riddellwilliams.com)
Riddell Williams P.S.
1001 Fourth Avenue Plaza, Suite 4500
Seattle, WA 98154-3600
*Attorneys for Plaintiff*

/s/ Jofrey M. McWilliam, WSBA #28441
Byrnes & Keller LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Telephone: (206) 622-2000
Facsimile: (206) 622-2522
jmcwilliam@byrneskeller.com

IMMERSION'S OPPOSITION TO MICROSOFT'S MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION NOS. 3 AND 19 (CV07 936RSM) - 13

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000