UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION,

　　　　　　Plaintiff,

　　v.

IMMERSION CORPORATION,

　　　　　　Defendant.

CASE NO. C07-936RSM

ORDER GRANTING MICROSOFT'S MOTION TO COMPEL

## I. INTRODUCTION

This matter comes before the Court on "Microsoft's Motion to Compel Responses to Requests for Production Nos. 3 and 19." (Dkt. #38). Plaintiff Microsoft Corporation ("Microsoft") seeks an order from the Court compelling Defendant Immersion Company ("Immersion") to produce all settlement-related documents, including mediation documents, from an underlying patent lawsuit between Immersion and the Sony Corporation ("Sony"). Specifically, Microsoft argues that: (1) the documents at-issue are highly relevant; (2) they are not protected by any privileges; and (3) even if any privileges applied, they have been waived by Immersion. Immersion maintains that the information Microsoft seeks is irrelevant, and in any event, privileged. Immersion further argues that no waiver of the privilege has occurred.

For the reasons set forth below, the Court GRANTS "Microsoft's Motion to Compel Responses to Requests for Production Nos. 3 and 19."

## II. DISCUSSION

ORDER
PAGE - 1

### A. Background[1]

On September 11, 2007, Microsoft issued its first set of Interrogatories and Requests for Production ("RFP") to Immersion. (Decl. of Mark-Dias, ¶ 8). Immersion timely responded on October 11, 2007. (*Id.* at ¶ 9). However, Immersion objected and ultimately did not respond to RFP Nos. 3 and 19. Microsoft's RFP No. 3 specifically provides:

> Produce all documents and communications relating to the mediation of the Sony Lawsuit with [Immersion], including documents prepared in anticipation of the mediation, submitted to the mediator or sent to Sony.

(*Id.*, Ex. 7).

Microsoft's RFP No. 19 provides:

> Produce all communications with Sony relating to attempts to settle, resolve or terminate the Sony Lawsuit with Sony, including any mediation, whether successful or not.

(*Id.*).

Immersion specifically responded, among other things, that the documents were not relevant, and that the production of such documents were protected by the mediation privilege. (*Id.*). The parties conducted a Rule 37 conference with respect to this dispute to no avail. (*Id.* at ¶ 10). Thus, Microsoft now brings the instant motion to compel.

### B. Relevance

At the outset, the Court must determine the relevance of the requested information at issue. Pursuant to Fed. R. Civ. P. 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Id*. To be relevant, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Information relevant to the subject matter of an action means information that might reasonably assist a party in evaluating a case, preparing for trial, or

---

[1] The Court has previously discussed the relevant facts that gave rise to this lawsuit in its "Order Denying Microsoft's Motion to Disqualify." (Dkt. #54). Accordingly, a detailed discussion of these facts is unnecessary here.

facilitating settlement. *See generally Hickman v. Taylor*, 329 U.S. 495, 506-07, 67 S.Ct. 385 (1947). Relevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978). District courts have a broad range of discretion to determine relevance. *Herbert v. Lando*, 441 U.S. 153, 177, 99 S.Ct. 1635 (1979).

Here, the Court finds that the information requested by Microsoft is highly relevant to Microsoft's breach of contract claim. As both parties are fully aware, they entered into a Sublicense Agreement ("SLA") wherein Immersion agreed to pay Microsoft certain amounts in the event that Immersion settled its remaining claims with Sony in an underlying patent litigation case. (Pl.'s Am. Compl., ¶ 9). Immersion and Sony eventually reached an agreement, but at the heart of the instant lawsuit is whether this agreement triggered Immersion's obligations to pay Microsoft under the SLA. Thus, settlement-related documents between Immersion and Sony in the underlying patent litigation are directly relevant to Microsoft's breach of contract claim, because such communications may potentially show whether Immersion intended to keep its agreement with Sony within or outside the scope of the SLA. Further, to the extent that Immersion argues that this case turns on whether it "elected in its discretion to 'settle the Sony Lawsuit'" (Dkt. #41 at 11), settlement-related documents are equally relevant to determine the veracity of this statement.

Immersion also argues that the SLA and its agreement with Sony are integrated documents that speak for themselves, and therefore any prior documents regarding any unsuccessful attempts to settle are irrelevant. While it is well established under Washington contract law that contracts are interpreted according to the objective manifestation of the parties, *see Hearst Communications, Inc. v. Seattle Times Co.*, 154 Wash. 2d 493, 503, 115 P.3d 262 (2005) (citation omitted), Washington courts have held that a trial court may examine extrinsic evidence "for the purpose of aiding in the interpretation of what is in an instrument." *Berg v. Hudesman*, 115 Wash. 2d 657, 669, 801 P.2d 222 (1990). As a result,

the negotiating history of the agreement between Immersion and Sony in the underlying patent litigation may potentially be relevant in interpreting the language of their final agreement.

Given the liberal rules regarding discovery, the Court will not preclude Microsoft from having access to information that is potentially germane to its case on relevancy grounds. Whether such information is subsequently admissible is a separate question that the Court will determine when the time arises. *See In re Potash Anitrust Litig.*, 161 F.R.D. 405, 409 (D. Minn. 1995) ("[O]ur analysis at [the discovery stage] is not driven by issues of admissibility, but by fairly minimalistic precepts of relevancy.").

**C. Mediation Privilege**

Having established that the documents at issue are relevant, the Court turns to whether Immersion is justified in precluding the production of these documents based on the mediation privilege. Initially, the Court addresses the respective parties' arguments regarding which specific mediation privilege applies to the instant motion. Immersion argues that the California mediation privilege, as codified by California Evidence Code § 1119, applies because California has the "most significant relationship" to the underlying events. (Dkt. #41 at 6). On the other hand, Microsoft argues that the Federal Rules of Evidence ("Fed. R. Evid.") govern the instant dispute. To support their argument, Microsoft contends that the underlying mediation between Immersion and Sony was ordered and conducted pursuant to a federal question case, and litigated in federal court. (Dkt. #44 at 5).

However, both parties' arguments in this regard are unpersuasive given the plain language of the Fed. R. Evid. 501. This rule provides in pertinent part:

> [I]n civil actions and proceedings, with respect to an element of a claim or defense as to which *State law supplies the rule of decision*, the *privilege* of a witness, person, government, State, or political subdivision thereof *shall be determined in accordance with State law.*

*Id.* (emphasis added).

In other words, a federal court is compelled to apply the state law privilege of the state that supplies the rule of the decision. Therefore where a federal court obtains subject matter jurisdiction by way of diversity of citizenship, privileges provided by state law shall apply. *See*

ORDER
PAGE - 4

*Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974 (9th Cir. 2007); *Home Indem. Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1328 (9th Cir. 1995); *see also Samuelson v. Susen*, 576 F.2d 546, 549 (3d Cir. 1978) (holding that Fed. R. Evid. 501 "requires a district court exercising diversity jurisdiction to apply the law of privilege which would be applied by the courts of the state in which it sits"). Federal common law generally applies only where subject matter jurisdiction is based on a federal question. *See, e.g. Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004) (applying federal law of privilege in suit brought under the United States Constitution); *see also United States v. Gertner*, 873 F.Supp. 729, 734 (D.C. Mass. 1995) (applying federal law of privilege in proceeding to enforce IRS subpoena).

In the instant case, the parties are properly before the Court based on diversity of citizenship.[2] Microsoft is asserting a breach of contract claim based on Immersion's alleged violation of the SLA entered into between the parties. The SLA explicitly provides that it "shall be construed and controlled by the laws of the State of Washington." (Decl. of Marks-Dias, Ex. 2, SLA ¶ 8(c)). Thus, Washington State law "supplies the rule of decision," and Washington State's law on privileges very clearly controls this discovery dispute.

**1. RCW 5.60.070**

Washington's mediation confidentiality statute, enacted in 1991 and codified by RCW 5.60.070, provides in pertinent part:

> If there is a court order to mediate, a written agreement between the parties to mediate, or if mediation is mandated under RCW 7.70.100 [Mandatory mediation of health care claims], then any communication made or materials submitted in, or in connection with, the mediation proceeding . . . are *privileged and confidential* and are not subject to disclosure in any judicial or administrative proceeding[.]

*Id.* (emphasis added).[3]

---

[2] Microsoft is a Washington corporation, Immersion is a Delaware corporation, and the amount in controversy exceeds $75,000. (Pl.'s Am. Compl., ¶¶ 1-3); 28 U.S.C. § 1332.

[3] The statute also contains a list of seven exceptions to the general exclusionary rule barring mediation evidence, none of which apply here. *See* RCW 5.60.070(1)(a)-(g).

ORDER
PAGE - 5

Because the widespread use of mediation is a relatively new phenomenon, Washington state case law interpreting Washington's mediation confidentiality statute is minimal at best. Nevertheless, Washington cases that discuss this statute consistently use the rationale behind Washington Evidence Rule ("ER") 408 in analyzing RCW 5.60.070. *See Hoglund v. Meeks*, 139 Wn.App. 854, 877, 170 P.3d 37 (2007) ("We hold, therefore, consistent with ER 408, that RCW 5.60.070 does not prohibit evidence of [a separate] mediation to prove [an] entitlement of attorney fees in [this] litigation, a purpose separate from the statutorily prohibited purpose of establishing liability in that underlying action."); *Ladiser v. Huff*, 2004 WL 1057852, at *4 (2004) (citing ER 408 to find that RCW 5.60.070 does not apply where settlement evidence "is offered not to prove the amount of the offer, but for another purpose, such as to prove lack of good faith").

Furthermore, ER 408 provides that "[e]vidence of (1) furnishing or offering to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible." *Id.* However, ER 408 expressly states that "[t]his rule . . . does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness [or] negating a contention of undue delay." Washington courts have also recognized that statements made in compromise negotiations may be admissible to prove a lack of good faith. *See Matteson v. Ziebarth*, 40 Wash. 2d 286, 294, 242 P.2d 1025 (1952).

In an analogous situation to the case at bar, a Washington court specifically rejected an argument that RCW 5.60.070 compelled exclusion of mediation evidence on the grounds that ER 408 permitted evidence of compromise and offers to compromise for purposes other than to establish liability. *See Sharbono v. Universal Underwriters Ins. Co.*, 139 Wn.App. 383, 418-19, 161 P.3d 406 (2007). In that case, a group of insureds brought a breach of contract

and bad faith action against their insurer for the insurer's handling of an underlying wrongful death claim brought by the insureds. *Id.* at 389. In the underlying proceeding, two unsuccessful mediation sessions occurred. *Id.* at 391. The insurer argued that RCW 5.60.070 barred the admissibility of such evidence, but the court disagreed, finding that such evidence was being offered for purposes other than liability. *Id.* at 419.

Similarly, the Court finds that Immersion is not entitled to the mediation privilege in this case under Washington state law because, consistent with ER 408, the information Microsoft seeks has no bearing on liability between Immersion and Sony in their underlying mediation sessions. Additionally, the information Microsoft seeks has no bearing on the validity of the amount that Immersion and Sony ultimately agreed upon to resolve their dispute. Rather, the information Microsoft seeks is very clearly being sought for another purpose: to determine whether the underlying agreement falls within the scope of the SLA which is central to its breach of contract claim. Moreover, as *Sharbono* has made evident, even communications made with respect to unsuccessful attempts to settle or mediate are within the purview of admissible evidence under ER 408.

In any event, it is well established under Washington state case law that "[t]he burden of showing that a privilege applies in any given situation rests entirely upon the party asserting the privilege." *Guillen v. Pierce County*, 144 Wn.2d 696, 716, 31 P.3d 628 (2001), *rev'd on other grounds*, 537 U.S. 129, 123 S.Ct. (2003). Here, Immersion relies heavily on the California mediation privilege to shield itself from producing the requested information at issue. As established above, the California mediation privilege very plainly does not apply. Thus, Immersion has not met its burden.

### 2. Waiver of Privilege

Because the Court has determined that the mediation privilege does not apply, it finds it unnecessary to address the parties' arguments with respect to whether Immersion waived the privilege.

### III. CONCLUSION

ORDER
PAGE - 7

Having reviewed Plaintiff's motion, Defendant's response, Plaintiff's reply, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and orders:

(1) "Microsoft's Motion to Compel Responses to Requests for Production Nos. 3 and 19" (Dkt. #38) is GRANTED. Immersion is directed to respond to Microsoft's Requests for Production Nos. 3 and 19 <u>no later than twenty-one (21) days from the date of this Order</u>.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this __24__ day of March, 2008.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE