HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICROSOFT CORPORATION, a
Washington corporation,

          Plaintiff,

    v.

IMMERSION CORPORATION, a
Delaware corporation,

          Defendant.

No. CV7-936RSM

**DECLARATION OF PAUL J.
KUNDTZ IN SUPPORT OF
MICROSOFT'S MOTION FOR
SUMMARY JUDGMENT TO
DISMISS IMMERSION'S
COUNTERCLAIM**

**NOTE ON MOTION CALENDAR:
MAY 9, 2008**

**ORAL ARGUMENT REQUESTED**

Paul J. Kundtz declares as follows:

    1.    I am one of the attorneys for Plaintiff Microsoft Corporation in the above-captioned action.  I am over the age of 18, competent to testify, and make this declaration based upon personal knowledge.

    2.    Attached as Exhibit A is a true and correct copy of the first page and Exhibit 10.37 of Immersion's Form 10-Q Quarterly Report for the Quarterly Period ended March 31, 2007.

    3.    Attached as Exhibit B is a true and correct copy of Richard Birnholz's letter to Microsoft's counsel dated June 22, 2007.

DECL. OF PAUL J. KUNDTZ IN SUPPORT OF MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT TO DISMISS IMMERSION'S
COUNTERCLAIM (No. CV7-936RSM) - 1
4830-8011-0082.02
041708/1502/20363.00411

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    4.    Attached as Exhibit C is a true and correct copy of Immersion Corporation's

2    Initial Disclosures dated October 25, 2007.

3    5.    Attached as Exhibit D is a true and correct copy of Immersion Corporation's

4    Responses to Microsoft Corporation's First Set of Interrogatories and Requests for

5    Production of Documents dated October 11, 2007.

6    6.    Attached as Exhibit E is a true and correct copy of Mr. Kundtz's letter to

7    Richard Birnholz dated October 16, 2007.

8    7.    Attached as Exhibit F is a true and correct copy of Alan Heinrich's letter to

9    Microsoft's counsel dated November 5, 2007.

10    I declare under penalty of perjury under the laws of the State of Washington that the

11    foregoing is true and correct.

12

13    EXECUTED on April _174_, 2008, at Seattle, Washington.

14

15    By _____

16    Paul J. Kundtz

17

18

19

20

21

22

23

24

25

26

DECL. OF PAUL J. KUNDTZ IN SUPPORT OF MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT TO DISMISS IMMERSION'S
COUNTERCLAIM (No. CV7-936RSM) - 2
4830-8011-0082.02
041708/1502/20363.00411

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

# CERTIFICATE OF SERVICE

The undersigned certifies that on the 17th day of April, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Richard M Birnholz**
rbirnholz@irell.com,lwakino@irell.com,ddrescher@irell.com,dkaplan@irell.com

**Morgan Chu**
mchu@irell.com

**Alan J Heinrich**
aheinrich@irell.com

**David R Kaplan**
dkaplan@irell.com

**Bradley S. Keller**
bkeller@byrneskeller.com,smacias@byrneskeller.com,kwolf@byrneskeller.com

**Paul Joseph Kundtz**
pkundtz@riddellwilliams.com,ebastien@microsoft.com,mfriedmann@riddellwilliams.com,Steve.Aeschbacher@microsoft.com

**Wendy E Lyon**
wlyon@riddellwilliams.com,mfriedmann@riddellwilliams.com

**Blake Edward Marks-Dias**
bmarksdias@riddellwilliams.com,dhammonds@riddellwilliams.com

**Jofrey M McWilliam**
jmcwilliam@byrneskeller.com,lyoshinaga@byrneskeller.com

Executed at Seattle, Washington this 17th day of April, 2008.

Holly Rohr Tran
Legal Secretary, Riddell Williams P.S.
1001 Fourth Avenue Plaza, Suite 4500
Seattle, WA 98154
Phone: (206) 624-3600
Fax: (206) 389-1708
email: hrohrtran@riddellwilliams.com

DECL. OF PAUL J. KUNDTZ IN SUPPORT OF MICROSOFT'S
MOTION FOR SUMMARY JUDGMENT TO DISMISS IMMERSION'S
COUNTERCLAIM (No. CV7-936RSM) - 3
4830-8011-0082.02
041708/1502/20363.00411

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

Table of Contents

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

# FORM 10-Q

(MARK ONE)

☑ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the quarterly period ended March 31, 2007

OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____.

Commission file number 000-27969

# IMMERSION CORPORATION
(Exact name of registrant as specified in its charter)

| Delaware | 94-3180138 |
|---|---|
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification No.)* |

**801 Fox Lane, San Jose, California 95131**

*(Address of principal executive offices)(Zip Code)*

**(408) 467-1900**

*(Registrant's telephone number, including area code)*

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.  Yes ☑  No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☐        Accelerated filer ☑        Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).

Yes ☐        No ☑

Number of shares of common stock outstanding at May 4, 2007: 25,997,715

# EXHIBIT A

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

## AGREEMENT

This Agreement is entered into and made effective as of the Effective Date (as defined below) by and between, on the one hand, Sony Computer Entertainment America Inc. ("SCEA," a Delaware corporation) and Sony Computer Entertainment Inc. ("SCEI," a Japanese corporation), and on the other hand, Immersion Corporation ("Immersion," a Delaware corporation). Each of the foregoing entities shall be referred to herein as a "Party."

<u>Recitals</u>

A. SCEA, SCEI, and Immersion were parties to a lawsuit, *Immersion Corporation v. Sony Computer Entertainment America, Inc. et al.*, Case No. C-02-0710 CW (WDB), in the United States District Court for the Northern District of California (the "Lawsuit"), which has concluded.

B. On April 7, 2005, the court entered a final amended judgment (the "Amended Judgment") in the Lawsuit in Immersion's favor against SCEA and SCEI jointly and severally in the amount of $82,000,000 in damages, plus pre-judgment interest at the prime rate in the amount of $8,874,888, costs, and interest which accrues by law.

C. The court entered a permanent injunction in a separate order dated March 24, 2005 (the "Permanent Injunction Order"), which it stayed pending SCEA's and SCEI's appeal to the Federal Circuit, and awarded a compulsory license fee for the duration of the stay. SCEA and SCEI filed an appeal, which has been dismissed as of the Effective Date.

D. With the pending appeals having been dismissed and the Amended Judgment now final and satisfied as of the Effective Date, the Parties desire by this Agreement to establish a new business relationship relating to matters separate from those adjudicated in the Lawsuit under which they will each grant to the other certain rights as defined herein.

NOW, THEREFORE, in consideration of the foregoing premises of the terms and conditions of this Agreement, the parties agree as follows:

## 1. Definitions

1.1 "Adult Product" means: (i) [****] content, access to which may be lawfully provided solely to users who certify that they are at least 18 years of age; and (ii) media (e.g. videos, CDs and DVDs) containing the content described in (i), but only to the extent that the rights to create the content or media described in (i) and (ii) above have been licensed prior to the Effective Date under the Immersion Patents to another party on an exclusive basis.

1.2 "Affiliate" means, with respect to a Party, an Entity controlling, controlled by or under common control with such Party. For purposes of this Agreement, "control" means the direct or indirect ownership of over fifty percent (50%) of the outstanding voting securities of an Entity, or the right to receive over fifty percent (50%) of the profits or earnings of an Entity, or

1

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

the right to make policy decisions of an Entity, including the right to choose the board of directors. In no case shall Sony Ericsson Mobile Communications AB or any Entity it controls be considered a Sony Entity for purposes of this Agreement.

1.3 "Amended Judgment" shall have the meaning set forth in Recital B.

1.4 "Automotive Product" means any hardware product, software product, or combination of hardware and software that provides Haptic Capability to the extent used in an automobile, truck, bus, train, or other transportation vehicle. Hardware or software whose primary function is not the delivery of one of the foregoing functions is not an Automotive Product. Automotive Products are not Adult Products, Consumer Products, Foundry Products, Medical Products, Industrial Products, Mobility Products or Gambling Products, and are not in the Gaming Field of Use.

1.5 "Capture Period" means the period commencing on the Effective Date and ending on a date ten (10) years after the Effective Date.

1.6 "Change of Control" means: (a) the direct or indirect acquisition (except for transactions described in clause (b) of this paragraph below), whether in one or a series of transactions by any Entity of (i) ownership, beneficial or otherwise, of issued and outstanding shares of capital stock of a Party, the result of which acquisition is that such Entity possesses 50% or more of the combined voting power of all then-issued and outstanding capital stock of such Party, or (ii) the power to elect, appoint, or cause the election or appointment of at least a majority of the members of the board of directors (or such other governing body that exercises a similar level of control over such Entity in the event a Party or any successor Entity is not a corporation); or (b) a merger, consolidation or other reorganization or recapitalization of a Party with an Entity or a direct or indirect subsidiary of such Entity, provided that the result of such merger, consolidation or other reorganization or recapitalization, whether in one or a series of related transactions, is that the holders of the outstanding voting stock of such Party immediately prior to such consummation do not possess, whether directly or indirectly, immediately after the consummation of such transaction, in excess of 50% of the combined voting power of all then-issued and outstanding stock of the merged, consolidated, reorganized or recapitalized Entity, its direct or indirect parent, or the surviving Entity of such transaction.

1.7 "Console" means a proprietary consumer computer entertainment platform manufactured and marketed for the purpose of running Game software licensed and written for that computer entertainment platform. The PS2 is an example of a Console.

1.8 "Consumer Products" means any tangible consumer electronics products designed and distributed primarily for non-commercial, personal use by end-user consumers, such as televisions, personal computers and consumer audio equipment, and that are not Adult Products, Foundry Products, Medical Products, Automotive Products, Industrial Products, Mobility Products or Gambling Products, and are not in the Gaming Field of Use.

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

1.9 "<u>Effective Date</u>" means the later of the dates on which the Amended Judgment has been satisfied and discharged and the Permanent Injunction has been dissolved.

1.10 "<u>Entity</u>" means a corporation, association, partnership, business trust, joint venture, or proprietorship that can exercise independent legal standing.

1.11 "<u>Excluded Products</u>" means, collectively, Adult Products, Foundry Products, Medical Products, Automotive Products, Industrial Products, Mobility Products and Gambling Products.

1.12 "<u>First Party Haptic Game Device</u>" means a Haptic Game Device (i) marketed and distributed by a Sony Entity to operate on or function in conjunction with a Console of a Sony Entity and (ii) marketed and distributed under a brand or mark owned by a Sony Entity.

1.13 "<u>Foundry Product</u>" means a product which is designed by or for a third party without substantial input from a Party or its Affiliate, and manufactured, reproduced, sold, leased, licensed or otherwise transferred from a Party or its Affiliate to that third party (or to customers of, or as directed by, that third party) on essentially an exclusive basis. Foundry Products are not Adult Products, Consumer Products, Medical Products, Automotive Products, Industrial Products, Mobility Products or Gambling Products, and are not in the Gaming Field of Use.

1.14 "<u>Gambling Products</u>" means casino and bartop amusement gaming products that are gambling applications. Gambling Products are not Automotive Products, Adult Products, Foundry Products, Medical Products, Consumer Products, Industrial Products, or Mobility Products, and are not in the Gaming Field of Use.

1.15 "<u>Game</u>" means the content application software that is designed, marketed and distributed to operate on a Console. "GranTurismo" is an example of a Game.

1.16 "<u>Game Developer</u>" means an Entity that develops or publishes PlayStation Games that are not Adult Products. Under this Agreement, an Entity is a Game Developer only to the extent that it develops or publishes the foregoing games and not for any other purpose or activity.

1.17 "<u>Games-in-Suit</u>" means those 47 specific games identified in the jury verdict form in the Lawsuit, and not any later versions of those games.

1.18 "<u>Gaming Field of Use</u>" means the market for gaming products for personal computers, Consoles, handheld video games, and arcade products, and does not include the market for Excluded Products or Consumer Products. The Gaming Field of Use includes Consoles, Games, and Haptic Game Devices.

1.19 "<u>Haptic Capability</u>" means [****].

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

1.20 "Haptic Game Device" means a controller, peripheral device or other user input device, such as a joystick, wheel, touchpad, gamepad, haptic control knob, or mouse, that can provide Haptic Capability when used to play a Game on a Console.

1.21 "Immersion Patents" means, collectively, the Non-Litigated Patents and the Patents-in-Suit.

1.22 "Industrial Product" means any hardware product, software product, or combination of hardware and software that provides Haptic Capability to the extent used in an industrial application, such as a haptic control knob or a touchscreen that provides tactile feedback to the user. Hardware or software whose primary function is not the delivery of one of the foregoing functions is not an Industrial Product. Products, including hardware and software, that the Sony Entities use solely internally in their business, or provide to third parties to use solely for development of Licensed Products, or the tools for development of Licensed Products, pursuant to the rights granted in Section 2.1(c) below, are not Industrial Products. Industrial Products are not Adult Products, Consumer Products, Foundry Products, Medical Products, Automotive Products, Mobility Products or Gambling Products, and are not in the Gaming Field of Use.

1.23 "ISLLC" means Internet Services LLC.

1.24 "Lawsuit" shall have the meaning set forth in Recital A.

1.25 "Licensed Products" shall be as defined in Section 2.1(c) below.

1.26 "Litigated PlayStation Products" means the following products, to the extent they were the subject of the Lawsuit: (i) the Games-in-Suit, (ii) the PS1 and PS2, and (iii) First Party Haptic Game Devices marketed and distributed by the Sony Entities to operate on the PS1 or PS2 under a brand or mark owned by a Sony Entity.

1.27 "Medical Product" means any hardware product, software product, or combination of hardware and software that provides Haptic Capability to the extent used in the course of medical treatment of patients, the training of medical personnel for medical procedures, or the simulation of any medical procedure. Hardware or software whose primary function is not the delivery of one of the foregoing functions is not a Medical Product. Medical Products are not Adult Products, Consumer Products, Foundry Products, Industrial Products, Automotive Products, Mobility Products or Gambling Products, and are not in the Gaming Field of Use.

1.28 "Mobility Product" means any hardware or software product for use in handheld mobility applications whose primary purpose is to provide communication through transmission of voice or text between one or more end users and that uses a combination of (a) electromagnetic transmission or other form of transmission and/or (b) conventional or internet switching or internet routing to permit communication to or from mobile users (such as cell phones). Mobility Products are not Adult Products, Consumer Products, Foundry Products,

4

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

Medical Products, Automotive Products, Industrial Products or Gambling Products, and are not in the Gaming Field of Use.

1.29 "Non-Litigated Patents" means all patents, other than the Patents-in-Suit, that have issued as of the Effective Date, or that may issue during the Capture Period, and all patent applications filed or that claim a priority date (including continuations-in-part) prior to the Effective Date or during the Capture Period, in any country in the world, which are owned or licensable by Immersion or its Affiliates, and with respect to which Immersion or its Affiliates have the right to grant the licenses and covenants of the scope granted herein to the Sony Entities without payment of royalties or other consideration to a third party. Non-Litigated Patents shall not include any patents of a surviving Entity following a Change of Control of Immersion, but shall include patents of Immersion or its Affiliates that qualified as Non-Litigated Patents before consummation of such Change of Control of Immersion and that are held by such surviving Entity after consummation of such Change of Control.

1.30 "Non-Litigated PlayStation Products" means (i) Games other than the Games-in-Suit that are designed and marketed by a Sony Entity or a third party to operate on the PS1 or PS2 and marketed and distributed under a brand or mark owned by a Sony Entity or such third party, (ii) First Party Haptic Game Devices, which were not the subject of the Lawsuit, marketed and distributed by the Sony Entities to operate on the PS1 or PS2 under a brand or mark owned by a Sony Entity, (iii) First Party Haptic Game Devices marketed and distributed by the Sony Entities to operate on the PS3 under a brand or mark owned by a Sony Entity, (iv) the PS3, (v) PS3 Games, (vi) the PSP and (vii) PSP Games. Non-Litigated PlayStation Products specifically do not include Adult Products.

1.31 "Online Communities" means

(i) any products and services, other than Excluded Products and Consumer Products, provided through online communities designed and marketed by a Sony Entity under a brand or mark owned by a Sony Entity, and

(ii) any hardware or software (by way of example only, servers), except Excluded Products and devices (other than First Party Haptic Game Devices that are marketed and distributed by a Sony Entity to operate on or in conjunction with a Console under a brand or mark owned by a Sony Entity) containing the physical means that create tactile sensations that can be felt by the user, used to support, maintain, or provide such products and services described in (i) above through those online communities.

1.32 "Online Communities for PSP/PS3" means

(i) any products and services, other than Excluded Products and Consumer Products, provided through online communities designed and marketed by a Sony Entity under a brand or mark owned by a Sony Entity and accessed through a PS3 or PSP, and

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

(ii) any hardware or software (by way of example only, servers), except Excluded Products and devices (other than First Party Haptic Game Devices that are marketed and distributed by a Sony Entity to operate on or in conjunction with a PlayStation Console under a brand or mark owned by a Sony Entity) containing the physical means that create tactile sensations that can be felt by the user, used to support, maintain, or provide such products and services described in (i) above through those online communities. The PlayStation Network is an example of Online Communities for PSP/PS3.

1.33 "Patents-in-Suit" means U.S. Pat. Nos. 6,424,333 and 6,275,213.

1.34 "PlayStation Consoles" means the PS1, PS2, PS3 and PSP.

1.35 "PlayStation Games" means PS3 Games, PSP Games, Games-in-Suit and Games other than the Games-in-Suit that are designed and marketed by a Sony Entity or a third party to operate on the PS1 or PS2 and marketed and distributed under a brand or mark owned by a Sony Entity or such third party.

1.36 "Preexisting Products" means any finished products or services of the Sony Entities or Game Developers that are released under Section 2.1(a) and were first commercially distributed to end users prior to the Effective Date, to the extent not covered by the license under section 2.1(c). Component parts that are not incorporated in a finished product are not Preexisting Products.

1.37 "PS1" means all versions of the computer game Console marketed and distributed by the Sony Entities under any of the marks "PlayStation," "playstation 1," "PS," "PS one," or "PS1," or any other marks substantially similar to the foregoing, that natively runs Games specifically designed for the original "PlayStation" computer entertainment platform as first released in each respective country. PS1 does not include PSP, PS2 or PS3 or any other gaming platform.

1.38 "PS2" means all versions of the computer game Console marketed and distributed by the Sony Entities under any of the marks "PlayStation 2," "playstation 2," "PSX," or "PS2," or any other marks substantially similar to the foregoing, that natively runs Games specifically designed for the original "PlayStation 2" computer entertainment platform as first released in each respective country. PS2 does not include PSP, PS1 or PS3 or any other gaming platform.

1.39 "PS3" means all versions of the computer game Console marketed and distributed by the Sony Entities under any of the marks "PLAYSTATION 3," "playstation 3," or "PS3," or any other marks substantially similar to the foregoing, that natively runs Games specifically designed for the original "PLAYSTATION 3" computer entertainment platform as first released in each respective country. PS3 does not include PSP, PS1 or PS2 or any other gaming platform.

1.40 "PS3 Games" means Games that (i) are marketed and distributed by a Sony Entity or a Game Developer to operate on the PS3, (ii) are marketed and distributed under a brand or mark owned by a Sony Entity or such Game Developer, and (iii) are not an Adult Product.

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

1.41 "PSP" means all versions of the computer game Console marketed and distributed by the Sony Entities under any of the marks "PlayStation Portable," "playstation portable," or "PSP," or any other marks substantially similar to the foregoing, that natively runs Games specifically designed for the original "PlayStation Portable" computer entertainment platform as first released in each respective country. PSP does not include PS1, PS2 or PS3 or any other gaming platform and does not have Haptic Capability.

1.42 "PSP Games" means Games that (i) are marketed and distributed by a Sony Entity or a Game Developer to operate on the PSP, (ii) are marketed and distributed under a brand or mark owned by a Sony Entity or such Game Developer, and (iii) are not an Adult Product.

1.43 "Royalty Bearing Product" shall be as defined in Section 5.4(b).

1.44 "Sony Entities" means Sony Corporation, SCEA, SCEI, and each of their Affiliates. "Sony Entity" means any of those Entities.

1.45 "Sony Patents" means all patents that have issued as of the Effective Date, or that may issue during the Capture Period, and all patent applications filed or that claim a priority date (including continuations-in-part) prior to the Effective Date or during the Capture Period, in any country in the world, which are owned or licensable by the Sony Entities, and with respect to which the Sony Entities have the right to grant the covenant not to sue of the scope granted herein to Immersion and its Affiliates, without payment of royalties or other consideration to a third party. Sony Patents shall not include any patents of a surviving Entity following a Change of Control of a Sony Entity (except in the case of an acquisition by another Sony Entity), but shall include patents of the Sony Entities that qualified as a Sony Patent before consummation of such Change of Control of the relevant Sony Entity and that are held by such surviving Entity after consummation of such Change of Control.

1.46 "Term" means the period commencing on the Effective Date and ending on the date that the last of the Non-Litigated Patents expires.

1.47 "Third Party Haptic Game Device" means a Haptic Game Device that is marketed and distributed by a third party to operate on or function in conjunction with a Console under a brand or mark owned by such third party.

## 2. Immersion Obligations

2.1 Licenses and Release.

(a) Release Prior to the Effective Date. Excepting the Litigated PlayStation Products, subject to the terms of this Agreement as of the Effective Date, Immersion, on behalf of itself and its Affiliates, hereby irrevocably releases and discharges the Sony Entities, Game Developers, OEMs, resellers, distributors and customers, from any and all claims, counterclaims, demands, liabilities, suits, debts, and causes of action, whether known or unknown, for alleged direct or indirect infringement of any of the Immersion Patents with respect to any products and

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

services other than Adult Products that had been made, or were made, used, imported, exported, leased, licensed, offered for sale, sold or otherwise transferred or disposed of by or for Sony Entities, or by or for Game Developers (but only as to the products set forth in Section 1.16 above ("Game Developer" definition)), before the Effective Date.

(b) <u>Covenant Not to Sue on Certain Released Products</u>. Subject to the terms of this Agreement, Immersion, on behalf of itself and its Affiliates, hereby covenants not to sue on or assert against Game Developers and the Sony Entities, their OEMs, resellers, distributors and customers, any and all claims, counterclaims, demands, liabilities, suits, debts, and causes of action for alleged direct or indirect infringement of any of the Immersion Patents with respect to units of Preexisting Products shipped or provided after the Effective Date.

(c) <u>License to the Sony Entities</u>. Subject to the terms of this Agreement, Immersion, on behalf of itself and its Affiliates, hereby grants to the Sony Entities a worldwide, non-transferable, non-exclusive, license under the Immersion Patents

(i) to use, develop, have developed, manufacture and have manufactured, and

(ii) to sell, offer for sale, lease, import, or distribute, either itself or through third parties, in all cases for acts taken after the Effective Date, the Litigated PlayStation Products, Non-Litigated PlayStation Products, and Online Communities for PSP/PS3 (collectively, the "<u>Licensed Products</u>").

(d) <u>License to Sony Entities Regarding Third Party Haptic Game Devices</u>. Subject to the terms of this Agreement, Immersion, on behalf of itself and its Affiliates, hereby grants to the Sony Entities a worldwide, non-transferable, non-exclusive, license under the Immersion Patents to use, develop, manufacture, sell, offer for sale, lease, import, and distribute, either themselves or through third parties, after the Effective Date, (i) the PlayStation Consoles and (ii) First Party Haptic Game Devices and PlayStation Games, to the extent the foregoing products also operate in conjunction with Third Party Haptic Game Devices designed, marketed, and distributed to operate on or in conjunction with a PlayStation Console. The foregoing license does not extend to Non-PlayStation Console Haptic Game Devices (i.e., Haptic Game Devices that are designed, marketed, or distributed to operate on or in conjunction with any Console or device other than the PlayStation Consoles) operating in conjunction with any PlayStation Games or First Party Haptic Game Devices. The foregoing license also does not extend to Haptic Game Devices operating in conjunction with Games, First Party Haptic Game Devices or Third Party Haptic Game Devices that are designed, marketed, or distributed to operate on or in conjunction with any Console or device other than the PlayStation Consoles.

(e) <u>License to Game Developers</u>. Subject to the terms of this Agreement, Immersion, on behalf of itself and its Affiliates, hereby grants to Game Developers (but only as to the products set forth in Section 1.16 above ("Game Developer" definition)) a worldwide, non-transferable, non-exclusive, license under the Immersion Patents to use, develop, manufacture, sell, offer for sale, lease, import, and distribute, either themselves or through third parties, after the Effective Date, PlayStation Games, including operation of such PlayStation Games in

8

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

conjunction with Haptic Game Devices designed, marketed, and distributed to operate on or in conjunction with a PlayStation Console. The foregoing license does not extend to Non-PlayStation Haptic Game Devices (i.e., Haptic Game Devices that are designed, marketed or distributed to operate in conjunction with Games that are designed, marketed, and distributed to operate on or in conjunction with any Console or device other than the PlayStation Consoles) operating in conjunction with PlayStation Games.

(f) Backward Compatibility Through Emulation of a PlayStation Console. Subject to the terms of this Agreement, Immersion, on behalf of itself and its Affiliates, hereby grants to the Sony Entities a worldwide, non-transferable, non-exclusive, license under the Immersion Patents to include in future Consoles (that is, other than PlayStation Consoles) software, firmware or hardware to the extent it enables such future Console to execute by emulation PlayStation Games, including operation of those Games in conjunction with Haptic Game Devices that are designed, marketed, and distributed to operate on or in conjunction with a PlayStation Console. The foregoing license does not include any rights with respect to Games that are not PlayStation Games, or any rights with respect to their use or operation in conjunction with any Haptic Game Devices.

(g) Reservation of Rights. None of the foregoing licenses or covenants set forth in this Section 2.1 grant any third party, including without limitation any consumer end user, any rights with respect to any Third Party Haptic Game Device that is used, developed, manufactured, sold, offered for sale, leased, imported or distributed without license from Immersion and that is operated or used with any other product or service.

(h) Effect of Termination as a Sony Entity. Although the releases, discharges, licenses and covenants not to sue set forth in this Section 2.1 terminate with respect to a particular Entity when that Entity ceases to be a Sony Entity, the releases, discharges, licenses and covenants not to sue in this Section 2.1 shall remain effective with respect to that Entity's aforementioned activities before the date on which such Entity ceased to be a Sony Entity, and that Entity will continue to be bound by the provisions of Section 9.5 (Confidentiality).

(i) Waiver of Section 1542. In granting the releases contained in this Section 2.1, Immersion and its Affiliates and their respective officers, directors, employees, attorneys, and agents waive whatever rights they might otherwise have under section 1542 of the California Civil Code, which provides that, "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him, must have materially affected his settlement with the debtor."

2.2 No Rights With Respect to Excluded Products. Except to the extent encompassed by the release set forth in Section 2.1(a) above, no rights of any kind, including but not limited to any license (express or implied), release or covenant not to sue, are granted under this Agreement for Excluded Products or Consumer Products.

9

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

### 3. Retention of Rights by Immersion

Except as expressly provided in this Agreement, Immersion retains all right, title and interest in and to the Immersion Patents and reserves all rights not expressly granted herein. Nothing in this Agreement shall be construed as granting by implication, estoppel, or otherwise any licenses, rights or releases under patents or other intellectual property rights of Immersion or its Affiliates other than as expressly granted herein. For the avoidance of doubt, and without limiting the foregoing, nothing in this Agreement is intended to, or does, restrict or otherwise abridge Immersion's right or ability to enforce any of its intellectual property against any third party that manufactures, uses, sells, offers for sale, imports, exports, leases, licenses, distributes or otherwise transfers or disposes of any product or service that is not the subject of a license from Immersion, including without limitation any unlicensed Haptic Game Device or the combination of a Licensed Product with another product or service to form a combination not expressly licensed under this Agreement, and Immersion grants no license, right, release or covenant not to sue to any such third party under this Agreement.

### 4. [****] Option for Additional License

[****]

4.2 <u>Option to Obtain a License With Respect to the Gaming Field of Use</u>. Immersion, on behalf of itself and its Affiliates, grants to the Sony Entities an option to obtain from Immersion, on the terms and conditions set forth in this Section 4.2 and Section 5.3 below, a worldwide, non-transferable, royalty bearing, non-exclusive license to the Sony Entities and Game Developers under the Immersion Patents to (1) use, develop, have developed, manufacture, have manufactured and (2) sell, offer for sale, lease, import, or distribute, either themselves or through third parties, in all cases for acts taken after the date of exercise, (i) any product or service in the Gaming Field of Use that provides tactile sensations to the user or the commands, functions or operations that provide tactile sensations to the user and (ii) any Online Community (but with respect to Game Developers, only as to the products set forth in Section 1.16 above ("Game Developer" definition)), in each case that is marketed and distributed by a Sony Entity under a brand or mark owned by a Sony Entity. To exercise the option of this Section 4.2, a Sony Entity shall give Immersion written notice of such exercise, referencing this Section 4.2, and Immersion shall be paid the exercise fee required in Section 5.3 below. The license set forth in the option of this Section 4.2 shall not become effective until Immersion and the Sony Entity exercising the option on behalf of the Sony Entities have executed a written agreement embodying the additional terms and conditions of the license and the exercise fee set forth in Section 5.3 below has been paid. The Parties shall negotiate and execute such written agreement without undue delay.

4.3 <u>Expiration of Options and Disputes Related to Options</u>.

(a) <u>Notice of Belief of Infringement</u>. If Immersion believes in good faith that [****] then Immersion shall notify the relevant Sony Entities in writing [****] The notified Sony Entities shall have a period of thirty (30) days after receipt of

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

such notice to analyze Immersion's claims. Thereafter during an additional thirty (30) day period, representatives of Immersion and the notified Sony Entities shall meet to discuss in good faith [****] the representatives shall also work in good faith to reach agreement within such thirty (30) day period [****] If at the end of the thirty (30) day discussion period, [****] then the parties will submit such dispute to binding arbitration to be conducted in accordance with the procedures set forth in Section 4.3(a) below and the following steps:

[****]

(b) Further Notices of Belief of Infringing Products. In the event that the Sony Entities exercise the option set forth in Section 4.2, and Immersion thereafter believes in good faith that products or services of the Sony Entities fall within the license granted by the exercised option but Immersion and the relevant Sony Entities [****] then the procedures set forth in Section 4.3(a) above shall be followed [****]

(c) Dispute Resolution Procedure. In the event of a dispute with respect to which arbitration is required in accordance with the provisions of Section 4.3(a), the parties shall submit such dispute to binding arbitration in San Francisco, CA, in accordance with: (i) the Federal Arbitration Act; (ii) then current commercial arbitration rules and regulations of the American Arbitration Association (the "AAA"), and; (iii) the terms and conditions of this Agreement. The terms of this Agreement shall control in the event of any inconsistency between it and the AAA rules. The arbitration shall be conducted in the English language. The parties shall mutually agree upon an arbitrator with substantial experience in patent law, and in the event that they cannot agree to an arbitrator within ten (10) days of filing of the dispute with the AAA, the AAA shall select an appropriate arbitrator with substantial experience in patent law. The decision of the arbitrator on any dispute submitted to arbitration shall follow applicable substantive law and be in writing setting forth the findings of fact and law and the reasons supporting the decision. Such decision shall be final and binding upon the parties. Judgment upon any arbitration award may be entered in any court having competent jurisdiction. After a demand for arbitration is made, each party may conduct eight (8) depositions and may further request discovery through up to thirty (30) document requests, up to twenty-five (25) written interrogatories, and up to fifty (50) requests for admissions. The arbitrator may, on application by either party, authorize additional discovery in the arbitrator's discretion in order to avoid injustice.

(d) No Other Obligations [****] The Parties shall have no obligation [****] other than those expressly set forth in Sections 4.3 (a) and 4.3(b). Without limiting the generality of the previous sentence, the Parties shall have [****] except to the limited extent set forth in Section 4.3(a) above with respect to an initial determination of whether [****]

4.4 Distribution of Products Not Having Haptic Capability. The Parties agree that the sale or distribution by the Sony Entities of products in the Gaming Field of Use that provide tactile sensations to users only by virtue of being used with a Third Party Haptic Game Device or

11

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

other third party device will not require the Sony Entities to exercise the option in Section 4.2 to cover such products or the use thereof with any Third Party Haptic Game Device or such other third party device.

### 5. Payments By and Obligations of the Sony Entities

5.1 Covenants of the Sony Entities. The Sony Entities covenant as follows:

(a) That none of the Sony Entities will sue Immersion or any of its Affiliates on any Sony Patent related to Haptic Capability based on the manufacture, use, sale, offer for sale, lease, importation, or distribution by Immersion or any of its Affiliates of any product or service, except for any Immersion Foundry Product. The foregoing covenant will terminate with respect to a particular Entity when such Entity ceases to be an Affiliate of Immersion, or when Immersion becomes the subject of a Change of Control; provided, however, the covenant shall remain effective with respect to that Entity's or Immersion's (as applicable) aforementioned activities before the date on which such Entity ceased to be an Affiliate of Immersion or Immersion underwent the Change of Control, and such Entity will continue to be bound by the provisions of Section 9.5 (Confidentiality). In addition, the covenant set forth in this Section 5.1(a) will terminate in the event that Immersion sues a Sony Entity for patent infringement on an Adult Product, Consumer Product, Foundry Product, Medical Product, Automotive Product, Industrial Product, Mobility Product or Gambling Product, but only with respect to products or services within the market for the type of product or service (i.e., Adult Product, Consumer Product, Foundry Product, Medical Product, Automotive Product, Mobility Product or Gambling Product) that was the subject of Immersion's claims. In any event the Sony Entities shall be free to assert any defenses with respect to the patents sued upon or arbitrated, including but not limited to defenses of invalidity and unenforceability of such patents. Except to the extent encompassed by the covenant set forth in this Section 5.1(a), no rights of any kind, including but not limited to any license (express or implied), release or covenant not to sue, are granted to Sony Patents under this Agreement.

(b) That none of the Sony Entities will take any action to assist, encourage, participate in, or otherwise aid ISLLC in any lawsuit against Immersion except, and only to the extent, as may be required by law.

5.2 Covenant of Good Faith and Fair Dealing and Freedom of Control for Sony Entities. The Parties acknowledge that Immersion, as part of its business licenses its intellectual property, including to third parties who manufacture, sell or otherwise distribute devices with Haptic Capability. The Parties also acknowledge that the Sony Entities must have freedom of control over their Gaming Field of Use business, including control over their Consoles, Haptic Game Devices and Games and which peripherals they choose to license for use with their Consoles. Subject to and in the context of the foregoing acknowledgements, the Sony Entities will exercise their freedom of control and their licensing of peripherals under a covenant of good faith and fair dealing. Notwithstanding the foregoing, the Sony Entities shall in no way be prohibited from taking steps to enforce any patents or other intellectual property rights of the Sony Entities against third parties. Furthermore, nothing in this Agreement shall be construed to

12

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

require any of the Sony Entities to include Haptic Capability in any Console, Haptic Game Device or Game, nor to license or allow any particular Entity to create products, whether licensed by Immersion or not, compatible with any Console. This Section 5.2 is not intended and does not of itself constitute a grant, express or implied, to the Sony Entities of any license or other rights under Immersion's intellectual property.

5.3 <u>Payment for Covenants and Licenses</u>. As partial consideration for the covenants and licenses set forth in Sections 2.1(b), 2.1(c), 2.1(d), 2.1(e), and 2.1(f) above, SCEA and SCEI agree to pay to Immersion on the last day of each calendar quarter for twelve (12) calendar quarters beginning on March 31, 2007 and ending on December 31, 2009, the sum of One Million Eight Hundred Seventy-Five Thousand dollars (US$1,875,000) per quarter (for a total of Twenty-two Million Five Hundred Thousand dollars (US$22,500,000)) by wire transfer to the following account:

| | |
|---|---|
| Name of Bank: | Wells Fargo Bank, N.A. |
| ABA #: | #121000248 |
| Account: | #[****] |
| Attention: | Immersion Corp. [****] |

[****]

5.4 <u>Payment for Licenses in Section 4.2</u>. In the event that the Sony Entities exercise the option set forth in Section 4.2 above, Immersion shall be paid the following:

(a) <u>Exercise Fee</u>. Within thirty (30) days of the issuance of written notice to Immersion by a Sony Entity electing to exercise the option of Section 4.2, Immersion shall be paid a non-refundable, one-time exercise fee [****] in order to exercise rights under Section 4.2. [****]

(b) <u>Royalties</u>. In addition to the exercise fee, the Sony Entities shall pay to Immersion royalties in the amount of [****] for each unit of a device that contains the physical means, including but not limited to actuators, magnets, coils, audio or chemical means, that create tactile sensations that can be felt by the user and is covered by at least one Immersion Patent in the country or area where such unit is manufactured, sold, used or distributed by or on behalf of a Sony Entity to a distributor, dealer, sales channel, customer, end user, or other third party (a "<u>Royalty-Bearing Product</u>"). In the event of a distribution of one or more Royalty-Bearing Products together in a bundle, the Sony Entities shall owe Immersion a royalty for each such Royalty Bearing Product in the bundle, regardless whether the products making up the bundle are separately priced or separately offered apart from the bundle, but only for the Royalty Bearing Products in the bundle. For example, if a Sony Entity distributes a Console, Game, and Haptic Game Device together in a bundle, whether for a single price or otherwise, the Sony Entities shall only owe Immersion one [****]

13

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

royalty, on the Haptic Game Device, and shall not owe a royalty for the Console or Game in the bundle. A royalty shall accrue to Immersion upon the distribution of each unit of a Royalty Bearing Product by or on behalf of a Sony Entity to a distributor, dealer, sales channel, customer, end user, or other third party, regardless of when, or if, a Sony Entity gets paid for such unit. No royalty shall be due upon the resale or further distribution of a unit of a Royalty Bearing Product for which a royalty has been paid to Immersion hereunder.

5.5 Payment of Royalties, Reports, and Audit

(a) Reporting and Payment of Royalties. Within forty-five (45) days after the close of each calendar quarter, any Sony Entity that is distributing Royalty Bearing Product shall issue a written report to Immersion detailing (i) the total number of each type of Royalty Bearing Products, including the Sony Entity's SKU or similar number for each type of product, that were distributed during such quarter and for which a royalty is due to Immersion hereunder and (ii) a computation of the royalties due hereunder with respect to the foregoing. Payment of all such royalties shall be made in full no later than the time such report is due.

(b) Interest on Overdue Royalties. Immersion shall be paid prorated interest charges on overdue royalty payments hereunder at the rate of the lesser of (i) one percent (1%) per month or (ii) the highest rate allowed by applicable law.

(c) Records and Audit. Each Sony Entity that is distributing Royalty Bearing Product shall keep true and accurate records and books of account containing all data reasonably required for the computation and verification of royalties to be paid as provided herein. Such records and books shall be retained by such Sony Entities for a period of at least three (3) years after the reporting period to which they relate, and shall be made available for inspection and copying during business hours by an independent auditor chosen by Immersion and approved by the Sony Entity to be audited (which approval will not be unreasonably withheld), no more than once per calendar year, upon at least twenty (20) days advance written notice. Any and all non-public information related to the Sony Entities or their business revealed in the course of such audit shall be kept confidential, and shall not be disclosed by the auditor to anyone other than employees or professional advisors of Immersion who have a reasonable need to know in connection with such audit or used for any purpose other than to the extent reasonably necessary to determine the correctness of royalty payments made hereunder or to enforce rights under this Agreement. In the event such an audit reveals an underpayment by any Sony Entity, such Sony Entity will promptly remit any underpayment to Immersion but in any event no later than thirty (30) days after the date of the notice from Immersion or the auditor, reasonably describing the basis of the belief that Immersion has been underpaid, including any other relevant data used in the calculation. Immersion shall pay for the reasonable expenses and costs of any such audit, provided however, that should it be determined that the amount of royalties due Immersion hereunder has been under-reported or underpaid by more than five percent (5%) for any applicable reporting period, then the Sony Entities shall reimburse Immersion for the full reasonable cost of such audit.

14

EXHIBIT 10.37

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

## 6. Indemnity

6.1 Indemnity. [****] will defend and indemnify and hold [****] harmless from any damages, liabilities, judgments, losses, costs and expenses (including court costs, reasonable attorneys' fees and license fees) suffered or incurred [****] after the Effective Date with respect to any claim asserted against [****] provided that (i) [****] notify [****] promptly in writing of such claim, (ii) it has been adjudicated that [****] has the right to bring such claim against [****], (iii) [****] allow [****] to have control, in consultation with [****] named in the suit, over the defense and settlement of the claim (except that if such settlement would require [****] to pay any amount, whether because of operation of the limitation of liability set forth in Section 6.2 below or otherwise, the written approval of [****] must be received) and do not enter into any kind of settlement or agreement with respect to such claim without the advance written consent of [****], and (iv) [****] provide [****] with the authority, information and assistance that [****] deems reasonably necessary for the settlement of the claim. [****]

[****]

## 7. Representations and Warranties

7.1 Mutual Representations and Warranties. Each Party represents and warrants, solely to and for the benefit of the others, that:

(a) it has the full right, power and authority to enter into this Agreement and perform its obligations hereunder and to grant its respective licenses and covenants as set forth herein;

(b) its performance of this Agreement shall not conflict with or result in a breach or violation of any of the terms or provisions or constitute a default under any other agreement by which it is bound or to which its assets are subject; and

(c) when executed and delivered, this Agreement shall constitute a legal, valid and binding obligation enforceable against it in accordance with its terms.

7.2 Disclaimers. EXCEPT AS EXPRESSLY PROVIDED IN SECTION 7.1 ABOVE, THE IMMERSION PATENTS ARE PROVIDED "AS IS" AND WITHOUT WARRANTY OF ANY KIND. EACH PARTY DISCLAIMS ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. Without limiting the generality of the preceding sentence, Immersion makes no express or implied warranty (a) as to the validity, enforceability or scope of any Immersion Patent, or the applicability of any such patent to any product, or (b) that any product or service made, used, sold, offered for sale, imported or distributed under any license or covenant in this Agreement is or will be free from infringement of any rights of third parties. Nothing in this Agreement shall be construed: (i) to require Immersion or its Affiliates to file any patent

15

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

application; (ii) as a warranty that Immersion or its Affiliates will be successful in securing the grant of any patent or any reissue or extensions thereof, and (iii) to require Immersion or any of its Affiliates to pay any maintenance fees or to take any other steps to maintain Immersion's or its Affiliates' patent rights.

## 8. Limitation of Liabilities

NEITHER PARTY WILL BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES RELATING TO THIS AGREEMENT, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, EXCEPT TO THE EXTENT ANY OF THE FOREGOING CONSTITUTE THE MEASURE OF DAMAGES FOR INFRINGEMENT OF A PARTY'S INTELLECTUAL PROPERTY RIGHTS UNDER APPLICABLE LAW.

## 9. General

9.1 Entire Agreement. This Agreement and its Exhibits constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede all promises or understandings made prior to or contemporaneously herewith with respect to such subject matter.

9.2 Severability. In the event that any provision of this Agreement is deemed invalid, unenforceable or void by a final, non-appealable judgment of a court of competent jurisdiction in a proceeding initiated by a third party, the remainder of this Agreement shall be interpreted to the extent possible to effect the overall intention of the Parties at the Effective Date.

9.3 Multiple Counterparts. This Agreement may be executed in counterparts, including by exchange of facsimile signatures or electronic PDF files, each of which shall be deemed an original, but both of which together shall constitute one and the same instrument.

9.4 Modification. This Agreement may not be amended, modified or altered in any way, except in a writing identified as such and signed by all Parties hereto.

9.5 Confidentiality. From and after the Effective Date, the terms and conditions, but not the existence, of this Agreement shall be treated as confidential by the Parties, and neither Party shall disclose the terms or conditions of this Agreement without the prior written consent of the other Party, except that a Party may make any of the following disclosures without prior written consent of the other Party:

(a) to any governmental or regulatory body including any stock exchanges having jurisdiction and/or regulatory obligations specifically requiring such disclosure;

(b) in response to a valid subpoena or as otherwise may be required by law;

(c) for the purposes of disclosure in connection with the Securities Exchange Act of 1934, as amended, the Securities Act of 1933, as amended, and any other reports filed with the

16

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

Securities and Exchange Commission, or any other filings, reports or disclosures that may be required under applicable laws or regulations; provided that before such disclosure the Party making the disclosure shall use its commercially reasonable efforts to redact portions of this Agreement to the extent permitted by applicable law and regulations. To the extent one Party makes a disclosure of terms of this Agreement in accordance with this clause (c), the other Party shall be free to disclose the same terms of this Agreement in its own filings, reports or disclosures that may be required under applicable laws or regulations;

(d) to a Party's accountants, legal counsel, tax advisors, auditors and other financial and legal advisors;

(e) as required during the course of litigation and subject to protective order; provided, however, that any production under a protective order would be protected under an "Attorney Eyes Only" or higher confidentiality designation;

(f) in confidence, in connection with a proposed merger, acquisition or similar transaction; and

(g) in confidence by the Sony Entities, to their Game Developers, but only with respect to the terms and conditions applicable to such Game Developers' rights hereunder.

9.6 <u>Publicity</u>. The Parties shall issue, at approximately 1:30 p.m. Pacific Time on March 1, 2007, the mutually agreed joint press release attached hereto as Exhibit A. Neither Party will issue any other press release or any other announcement regarding this Agreement or the relationship contemplated herein unless both Parties consent in advance to any proposed release in writing. Nor will either Party disclose any term of this Agreement for purposes of promotion, or offer for sale, of any product or service of a Party to a third party. The Parties shall direct their representatives not to make any disclosures of the terms of this Agreement except as permitted herein.

9.7 <u>Notices</u>. Any notices given hereunder shall be in writing, will reference this Agreement and will be deemed given when: (i) when sent by confirmed facsimile; (ii) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (iii) one (1) day after written verification of receipt from a commercial overnight carrier. All communications will be sent to the addresses set forth below or such other addresses as may be designated by a Party by giving written notice to the other Party pursuant to this Section 9.7:

**Notices to Immersion:**

Immersion Corporation
801 Fox Lane
San Jose, CA 95131
Attention: General Counsel
Fax: (408) 467-1901

17

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

**Notices to the Sony Entities:**

Sony Computer Entertainment America Inc.
919 East Hillsdale Blvd., 2nd Floor
Foster City, CA 94404
Attention: SCE Group General Counsel
Fax: (650) 655-8042

**With a copy to:**

Sony Corporation
Intellectual Property Division
IP Alliance & Licensing Department
1-7-1 Konan, Minato-ku
Tokyo 108-0075
Japan
Attention: General Manager
Fax: 81-3-6748-3544

9.8 Non-Waiver. The waiver of any breach of any provision of this Agreement shall not be deemed to be a waiver of any other breach of the same or any other provision of this Agreement.

9.9 Non-Agency. Nothing contained in this Agreement or the performance thereof is intended to or shall be construed to create any relationship of agency, partnership or joint venture between or among the Parties.

9.10 Enforcing Patents. Nothing in this Agreement shall be construed as an agreement by Immersion to bring actions or suits against third parties for infringement of the Immersion Patents, or conferring any right to the Sony Entities to bring actions or suits against third parties for infringement of the Immersion Patents.

9.11 Assignment. Neither Party may assign this Agreement without the prior written consent of the other Party, which the other Party may grant or deny in its sole discretion, except that either Party may assign this Agreement without the other Party's written consent in connection with a Change of Control of such Party. The assigning Party shall give the other Party written notice of such assignment within thirty (30) days after consummation of such Change of Control. Any attempted or purported assignment or delegation by a Party in violation of this Section 9.11 shall be null and void. Subject to the foregoing, this Agreement shall be binding upon, and shall inure to the benefit of, the Parties and their respective successors and permitted assigns. Notwithstanding anything to the contrary in this Agreement, in the event of any permitted assignment by a Party pursuant to this Section 9.11, in no event will the assignee be deemed to have released any claims other than the claims of the assigning Party (i.e. Sony Entity or Immersion) which are expressly released by the assigning Party hereunder. If either

18

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

Party is acquired by a third party, in no event will that third party be deemed to have released any claims that it possessed prior to the acquisition that are independent of or unrelated to the acquired Party and that are the subject of this Agreement. Nothing in this provision shall restrict or prevent Immersion or its Affiliates from transferring, assigning or licensing any of the Immersion Patents without prior written notice or consent of the Sony Entities, but subject to the benefits granted hereunder.

9.12 Governing Law and Venue. This Agreement will be governed by and construed in accordance with applicable federal law and the internal laws of the State of California without regard to or application of choice of law rules or principles. Each Party consents to exclusive jurisdiction and venue in the federal courts sitting in San Francisco County, California, unless no federal subject matter jurisdiction exists, in which case each Party consents to exclusive jurisdiction and venue in the Superior Court of San Francisco County, California. Each Party waives all defenses of lack of personal jurisdiction and forum non-conveniens with respect to the preceding named courts.

9.13 Cumulation. All rights and remedies enumerated in this Agreement will be cumulative and none will exclude any other right or remedy permitted herein or by law.

9.14 Representation by Counsel. Each of the Parties acknowledges that it has been represented by counsel in connection with the negotiation, drafting and execution of this Agreement. The language used in this Agreement shall be deemed to be language chosen by all Parties to express their mutual intent, and no rule of strict construction against any Party shall be applied to any term or provision hereof.

9.15 Captions. The captions to the sections or subsections of this Agreement are solely for the convenience of the Parties, are not a part of this Agreement, and shall not be used for the interpretation of, or determination of the validity of, this Agreement or any provision hereof. Where the singular is used in this Agreement, the same shall be construed as meaning the plural where the context so admits or requires and the converse shall hold as applicable.

9.16 Duration. This Agreement shall expire on the last day of the Term.

9.17 Termination of Licenses and Covenants Not to Sue.

(a) By Immersion Upon Certain Occurrences. The licenses and covenants set forth in Sections 2.1(b), 2.1(c), 2.1(d), 2.1(e), and 2.1(f) may be terminated by Immersion upon twenty (20) days written notice to the Sony Entities in the event of the occurrence of any of the following:

(i) If any of the Sony Entities or a third party acting on behalf of the Sony Entities, challenges or disputes the validity or enforceability of any of the Immersion Patents in any judicial or administrative proceeding, other than an arbitration as expressly set forth in Section 5.1(a); notwithstanding the foregoing, in the event that Immersion or an Affiliate of Immersion or a third party acting on any of their behalf initiates a patent infringement lawsuit

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

against any of the Sony Entities (and there is no then-current pending action by the Sony Entities against Immersion or its Affiliates), the foregoing covenant shall not apply with respect to the patent(s) asserted by Immersion in such lawsuit;

(ii) If any Sony Entity breaches any of the covenants set forth in Section 5.1 above; or

(iii) If the Sony Entities fail to make any of the payments required under Section 5.3 above when due, and do not cure such failure within the ten (10) day period after receipt of written notice from Immersion.

For the avoidance of doubt, the termination of the licenses set forth in Sections 2.1(b), 2.1(c), 2.1(d), 2.1(e), and 2.1(f) shall occur automatically and without further notice upon the expiration of the ten (10) day notice period, unless, in the case of clause (iii) only, the Sony Entities have cured the failure to make timely payment within such ten (10) day period.

(b) By Immersion for Failure to Pay Royalties. In the event that the Sony Entities exercise the option set forth in Section 4.2 above, the licenses set forth in Section 4.2 may be terminated by Immersion upon twenty (20) days written notice to the Sony Entities in the event that the Sony Entities fail to make any applicable royalty payments in accordance with Sections 5.3 and 5.4 above. For the avoidance of doubt, the termination of such licenses shall occur automatically and without further notice upon the expiration of the twenty (20) day notice period, unless the Sony Entities have cured such failure within such twenty (20) day period.

(c) By the Sony Entities. The covenants set forth in Section 5.1 above may be terminated by the Sony Entities upon ten (10) days written notice to Immersion in the event that Immersion breaches any of the covenants set forth in Section 2 above. For the avoidance of doubt, the termination of the covenants set forth in Section 5.1 shall occur automatically and without further notice upon the expiration of the ten (10) day notice period.

(d) Effect of Termination. Termination of the licenses and covenants not to sue by either Immersion or the Sony Entities in accordance with this Section 9.17 shall not operate to terminate the remaining provisions of this Agreement, which shall remain in full force and effect throughout the Term. In addition, no such termination shall affect Immersion's right to retain or to collect all payments made or owing from the Sony Entities to Immersion under this Agreement. Termination shall not operate to revoke the licenses and covenants for products shipped prior to such termination.

9.18 No Refund. In order to promote a smooth commercial relationship between the parties and to minimize the risk of future litigation as between the Parties, the amount paid by the Sony Entities to Immersion under this Agreement or otherwise provided to Immersion will not be diminished, and the Sony Entities shall not be entitled to any credit or refund, in whole or in part, of any amounts paid hereunder. The Sony Entities agree that they will not bring any action or make any demands, for any reason, for Immersion to refund, credit or return, in whole or in part, any sums paid or otherwise provided to Immersion [****].

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

9.19 <u>Recitals and Exhibits</u>. The recitals and exhibits are hereby incorporated into this Agreement by this reference.

9.20 <u>No Admissibility</u>. In the event a Party asserts a claim for patent infringement against another Party, in any such proceeding (whether a lawsuit, arbitration or otherwise) the royalty rate set forth in Section 5.4(b) above shall not be admissible for any purpose, nor offered into evidence or otherwise referred to by any Party. In the event a Party asserts a claim for patent infringement against another Party, in any such proceeding (whether a lawsuit, arbitration or otherwise) neither party shall argue the fact that the term "Haptic Capability" is used in this Agreement or the way in which such term is used in this Agreement as evidence against the other Party with respect to the scope of any patent or with respect to any theory of damages or secondary liability.

9.21 <u>Survival of Rights in Event of Transfer of Patents</u>. In the event that Immersion transfers one or more of the Immersion Patents, such transfer shall be made subject to the license rights granted to the Sony Entities and Game Developers hereunder with respect to such transferred patents.

*[remainder of this page intentionally left blank]*

21

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be executed through its duly authorized representative below.

**Sony Computer Entertainment America, Inc.**          **Immersion Corporation**

By: _____          By: _____
Printed Name: _____          Printed Name: _____
Title: _____          Title: _____

**Sony Computer Entertainment, Inc.**

By: _____
Printed Name: _____
Title: _____

22

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

**Exhibit A**
**Joint Press Release**

Contacts:
A&R Edelman
Alexandra Skillman
+1 650.762.2842
askillman@ar-edelman.com
Sony Computer Entertainment America
Dave Karraker
+1-650-655-6044
Sony Computer Entertainment Inc.
Corporate Communications
+81-3-6438-8686

Immersion and Sony Computer Entertainment Conclude
Litigation and Enter into Business Agreement

**SAN JOSE and FOSTER CITY, Calif., March 1, 2007 (BUSINESS WIRE)** — Immersion Corporation, (Nasdaq: IMMR), a leading developer and licensor of touch feedback technology, and Sony Computer Entertainment (SCE) today announced the companies have agreed to conclude their patent litigation at the U.S. Court of Appeals for the Federal Circuit and have entered into a new business agreement to explore the inclusion of Immersion technology in PlayStation format products.

"We are pleased to have put this litigation behind us," said Immersion CEO Victor Viegas. "Our new business agreement with Sony Computer Entertainment is specifically intended to enable advanced vibration capability for the benefit of the PlayStation gaming community. We are happy to provide our technology in this regard and hope to make technical proposals very soon with respect to use of our technology in the PlayStation products."

Immersion will receive the amount of the judgment entered by the District Court, which includes damages, pre-judgment interest, costs, and interest, in addition to retaining compulsory license fees ordered by the District Court which were already paid. Terms of the business agreement between the parties provide SCE with certain new rights with respect to Immersion's patent portfolio. Additional financial terms are not being disclosed. The conclusion of this litigation and the agreement will have no material impact on Sony's consolidated earnings forecast announced on January 30, 2007.

"We look forward to exploring with Immersion exciting new ways to bring the largest and best range of gameplay experiences to our customers," said Kazuo Hirai, President and Group Chief Operating Officer, Sony Computer Entertainment Inc. "We are very excited about our new partnership with Immersion and the potential for new and innovative products incorporating their technologies."

EXHIBIT 10.37

CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

**About Immersion (www.immersion.com)**

Founded in 1993, Immersion Corporation is a recognized leader in developing, licensing, and marketing digital touch technology and products. Using Immersion's advanced touch feedback technology, electronic user interfaces can be made more productive, compelling, entertaining, or safer. Immersion's technology is deployed across automotive, entertainment, industrial controls, medical training, mobility, and three-dimensional simulation markets. Immersion's patent portfolio includes over 600 issued or pending patents in the U.S. and other countries.

**About SCEA**

Sony Computer Entertainment America Inc. continues to redefine the entertainment lifestyle with its PlayStation® and PS one™ game console, the PlayStation®2 and PLAYSTATION®3 computer entertainment systems and the PSP® (PlayStation®Portable) system.

Recognized as the undisputed industry leader, Sony Computer Entertainment America Inc. markets the PlayStation family of products and develops, publishes, markets and distributes software for the PS one game console, the PlayStation 2 and PLAYSTATION 3 computer entertainment systems and the PSP system for the North American market. Based in Foster City, Calif. Sony Computer Entertainment America Inc. serves as headquarters for all North American operations and is a wholly owned subsidiary of Sony Computer Entertainment Inc.

**About SCEI**

Recognized as the global leader and company responsible for the progression of consumer-based computer entertainment, Sony Computer Entertainment Inc. (SCEI) manufacturers, distributes and markets the PlayStation® game console, the PlayStation®2 computer entertainment system, the PSP® (PlayStation®Portable) handheld entertainment system and the upcoming, much-anticipated PLAYSTATION®3 (PS3™) system. PlayStation has revolutionized home entertainment by introducing advanced 3D graphic processing, and PlayStation 2 further enhances the PlayStation legacy as the core of home networked entertainment. PSP is a new handheld entertainment system that allows users to enjoy 3D games, with high-quality full-motion video, and high-fidelity stereo audio. PS3 is an advanced computer system, incorporating the state-of-the-art Cell processor with super computer like power. SCEI, along with its subsidiary divisions Sony Computer Entertainment America Inc., Sony Computer Entertainment Europe Ltd., and Sony Computer Entertainment Korea Inc. develops, publishes, markets and distributes software, and manages the third party licensing programs for these platforms in the respective markets worldwide. Headquartered in Tokyo, Japan, Sony Computer Entertainment Inc. is an independent business unit of the Sony Group.

*Immersion and the Immersion logo are trademarks of Immersion Corporation.*

*"PlayStation" and "PLAYSTATION" are registered trademarks of Sony Computer Entertainment, Inc.*

*All other trademarks are the property of their respective owners.*

###

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

1800 AVENUE OF THE STARS, SUITE 900

LOS ANGELES, CALIFORNIA 90067-4276

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5700

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7052
rbirnholz@irell.com

June 22, 2007

## VIA E-MAIL & FACSIMILE

Paul J. Kundtz, Esq.
Riddell Williams, P.S.
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154

  Re: <u>Microsoft v. Immersion</u>

Dear Mr. Kundtz:

  Our firm represents Immersion Corporation. We write to notify you that Microsoft and your firm have breached the confidentiality agreement entered into between Immersion and Microsoft and its counsel.

  As you know, on June 18, 2007, Microsoft filed a Complaint against Immersion in the United States District Court for the Western District of Washington alleging a claim for breach of contract. That Complaint contains allegations relating to a confidential written agreement entered into between Immersion and Sony Computer Entertainment. To allow Microsoft an opportunity to review this document, Microsoft and Immersion entered into a confidentiality agreement, which Ken Lustig signed on May 11, 2007. Pursuant to that agreement, on May 14, 2007, Laura Peter of Immersion forwarded the document to Microsoft.

  To our surprise, Microsoft has disregarded the confidentiality agreement by publicly referencing confidential material. In particular, paragraph 21 of your Complaint states financial figures for potential option payment fees and royalties. These details were not publicly disclosed, and were specifically redacted from the version contained in Immersion's SEC filings. The confidentiality agreement between Immersion and Microsoft does allow Microsoft to use the agreement in connection with potential litigation, but only "subject to an appropriate confidentiality agreement or court order that may be negotiated or otherwise entered." Before filing the Complaint, you did not make any effort to obtain such an order or agreement, nor take any precautions to safeguard confidential material. You also easily could have avoided any issue by not including the confidential details in the publicly filed documents, but you did not do that either.



**EXHIBIT _B_**

1712120

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Paul J. Kundtz, Esq.
June 22, 2007
Page 2

Although the Complaint unfortunately has been publicly distributed, please take corrective steps immediately. Immersion reserves all rights and remedies with regard to this matter and the breach of confidentiality.

Very truly yours,

Richard M. Birnholz

RMB:lkw

The Honorable Ricardo S. Martinez

RECEIVED
RIDDELL WILLIAMS P.S.

OCT 2 5 2007
AM   4:25 ☐3  PM
7|8|9|10|11|12|1|2|3|4|5|6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation, | ) )  ) |
| Plaintiff, | ) No. CV07 936RSM ) |
| v. | ) **IMMERSION CORPORATION'S** ) **INITIAL DISCLOSURES** ) |
| IMMERSION CORPORATION, a Delaware corporation, | ) ) ) |
| Defendant. | ) ) |

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Immersion

Corporation hereby makes the following initial disclosures. These disclosures are based on

Immersion's reasonable inquiries to date, and Immersion reserves the right to amend,

supplement, or otherwise modify these disclosures as it discovers additional information through

discovery or otherwise.

Immersion's initial disclosures are made without in any way waiving: (1) the right to

object to such information on the grounds of competency, privilege, the work product doctrine,

undue burden, relevancy and materiality, hearsay, or any other proper ground; (2) the right to

object to the use of any such information, for any purpose, in whole or in part, in any subsequent

proceeding in this action or any other action; and (3) the right to object on any and all grounds, at

# EXHIBIT C

IMMERSION CORPORATION'S INITIAL DISCLOSURES
(CV07 936RSM) - 1

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

ORIGINAL

1  any time, to any discovery request or proceeding involving or relating to the subject matter of

2  these disclosures.

3  **1.**     <u>**Witnesses**</u>

4        Pursuant to Fed. R. Civ. P. 26(a)(1)(A), Immersion presently identifies the following

5  individuals set forth below to the extent currently known to Immersion.  Immersion expressly

6  reserves the right to identify, call as witnesses or rely on additional or different individuals if,

7  during the course of discovery and investigation relating to this case, Immersion learns that such

8  individuals have discoverable information that Immersion may use to support its claims or

9  defenses.

10           1.      Victor Viegas
11                   Immersion Corporation
                     801 Fox Lane
12                   San Jose, California 95131
                     (408) 467-1900
13                   <u>Subject</u>:  Immersion; its business; Immersion's dealings and negotiations
                     with Microsoft; Agreements between Immersion and Microsoft; the
14                   Parties' conduct under the Agreements; Immersion's patent infringement
                     litigation against Sony Computer Entertainment; and Immersion's
15                   business agreement with Sony.
16
                 2.  Patrick Reutens
17                   c/o Irell & Manella LLP
                     1800 Avenue of the Stars, Suite 900
18                   Los Angeles, California 90067
                     (310) 277-1010
19                   <u>Subject</u>:  Immersion's dealings with Microsoft; Agreements between
                     Immersion and Microsoft; the Parties' conduct under the Agreements; and
20                   Immersion's patent infringement litigation against Sony Computer
                     Entertainment.
21
                 3.  Laura Peter
22                   Immersion Corporation
23                   801 Fox Lane
                     San Jose, California 95131
24                   (408) 467-1900
                     <u>Subject</u>:  Agreements between Immersion and Microsoft; the Parties'
25                   conduct under the Agreements; Immersion's patent infringement litigation
                     against Sony Computer Entertainment; and Immersion's business
26                   agreement with Sony.

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE. WASHINGTON 98104
(206) 622-2000

1

2

3

4
    4.    Shoichi Endo
            Immersion Corporation
            801 Fox Lane
            San Jose, California 95131
            (408) 467-1900
            Subject:  Immersion's business agreement with Sony.

5

6

7
    5.    Barry Spector
             c/o Microsoft Corporation
             Subject:  Microsoft's dealings and negotiations with Immersion;
             Agreements between Immersion and Microsoft; the Parties' conduct under
             the Agreements.

8

9

10

11
    6.    Ken Lustig
             c/o Microsoft Corporation
             Subject:  Microsoft's dealings and negotiations with Immersion;
             Agreements between Immersion and Microsoft; the Parties' conduct under
             the Agreements.

12

13

14

15
    7.    Steve McGrath
             c/o Microsoft Corporation
             Subject:  Microsoft's dealings and negotiations with Immersion;
             Agreements between Immersion and Microsoft; the Parties' conduct under
             the Agreements.

16

17

18
    8.    Dan Christen
             c/o Microsoft Corporation
             Subject:  Microsoft's dealings and negotiations with Immersion;
             Agreements between Immersion and Microsoft; the Parties' conduct under
             the Agreements.

19

20

21
    9.    Neil Meyers
             c/o Microsoft Corporation
             Subject:  Microsoft's dealings and negotiations with Immersion;
             Agreements between Immersion and Microsoft; the Parties' conduct under
             the Agreements.

22

23

24

25
    10.    Stacy Quan
             c/o Microsoft Corporation
             Subject:  Microsoft's dealings and negotiations with Immersion;
             Agreements between Immersion and Microsoft; the Parties' conduct under
             the Agreements.

26

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

11. Marc Brown
c/o Microsoft Corporation
Subject: Microsoft's dealings and negotiations with Immersion;
Agreements between Immersion and Microsoft; the Parties' conduct under
the Agreements.

12. William H. Gates III
c/o Microsoft Corporation
Subject: Agreements between Immersion and Microsoft.

13. Peter E. Berger
c/o Microsoft Corporation
Subject: Microsoft's dealings and negotiations with Immersion;
Agreements between Immersion and Microsoft.

14. Martin F. Smith
formerly of Preston Gates & Ellis LLP
Subject: Microsoft's dealings and negotiations with Immersion;
Agreements between Immersion and Microsoft.

15. Jennifer Liu
Sony Computer Entertainment America, Inc.
Foster City, CA 94404
Subject: Immersion's patent infringement litigation against Sony
Computer Entertainment; Immersion's business agreement with Sony.

16. Shinji Ina
Sony Corporation
1-7-1 Konan Minato-ku
Tokyo, 108-0075 Japan
Subject: Immersion's patent infringement litigation against Sony
Computer Entertainment; Immersion's business agreement with Sony.

2.  **Documents**

Pursuant to Fed. R. Civ. P. 26(a)(1)(B), and based upon presently available information,

Immersion may use relevant documents from the following categories "to support its claims or

defenses." Immersion expressly reserves the right to identify and use documents from additional

categories if, during the course of discovery and investigation relating to this case, Immersion

learns that such additional categories contain relevant documents. Immersion also reserves the

right to respond to and/or rebut the contentions and allegations Microsoft may make.

IMMERSION CORPORATION'S INITIAL DISCLOSURES
(CV07 936RSM) - 4

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1.  Agreements between Immersion and Microsoft, including the Sublicense Agreement, the License Agreement, and the Settlement Agreement and Mutual Releases.

2.  Documents, communications and negotiations concerning the Agreements identified in category 1.

3.  Correspondence between Immersion and Microsoft.

4.  Documents concerning Microsoft's practices of encouraging and maintaining litigation against its competitors.

5.  Documents relating to Immersion's and Microsoft's performance under the Agreements.

6.  Documents evidencing Immersion's damages caused by Microsoft's conduct.

7.  Pleadings and papers filed in the litigation between Immersion and Sony in the U.S. District Court for the Northern District of California and the United States Court of Appeals for the Federal Circuit, including Immersion's Amended Judgment against Sony.

8.  Immersion's business agreement with Sony.

9.  Documents evidencing Sony's satisfaction of the Judgment in favor of Immersion and other payment obligations to Immersion.

Many of the documents in the categories identified above are already in Microsoft's possession, custody or control. Immersion will produce other relevant and non-privileged documents in its own possession, custody or control, to the extent reasonably available, in response to appropriate document requests, subject to its objections. Immersion also has conducted, and expects to conduct, discovery of Microsoft and intends to rely on documents Microsoft may produce and other information that may be obtained in discovery.

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1    3.    **Damages**

2        Immersion intends to seek money damages on its counterclaims in an amount to be

3    determined.  Immersion is not yet in a position to compute its damages in this action.  Immersion

4    intends to seek all relief and recover all remedies available under the applicable laws.

5    4.    **Insurance**

6        Immersion is not currently aware of any applicable insurance agreements pursuant to

7    Fed. R. Civ. P. 26(a)(1)(D).

8        DATED this 25th day of October, 2007.

9                    BYRNES & KELLER LLP

10

11

12    By_____
                Bradley S. Keller, WSBA #10665
13                Jeffrey M. McWilliam, WSBA #28441
                1000 Second Avenue, Suite 3800
14                Seattle, WA  98104-4082
                Telephone:  (206) 622-2000
15                Facsimile:  (206) 622-2522
                bkeller@byrneskeller.com
16                jmcwilliam@byrneskeller.com

17                Morgan Chu *(pro hac vice)*
18                Richard M. Birnholz *(pro hac vice)*
                Alan Heinrich *(pro hac vice)*
19                IRELL & MANELLA LLP
                1800 Avenue of the Stars, Suite 900
20                Los Angeles, California 90067-4276
                Telephone:  (310) 277-1010
21                Facsimile:  (310) 203-7199
                mchu@irell.com
22                rbirnholz@irell.com
                aheinrich@irell.com
23

24                *Attorneys for Immersion Corporation*

25

26

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE. WASHINGTON 98104
(206) 622-2000

# CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 25th day of October, 2007, I caused to be served the foregoing document via hand delivery to:

Paul J. Kundtz (pkundtz@riddellwilliams.com)
Blake Marks-Dias (bmarksdias@riddellwilliams.com)
Wendy E. Lyon (wlyon@riddellwilliams.com)
Riddell Williams P.S.
1001 Fourth Avenue Plaza, Suite 4500
Seattle, WA 98154-3600
*Attorneys for Plaintiff*

Joffrey M. McWilliam, WSBA # 28441
Byrnes & Keller LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Telephone: (206) 622-2000
Facsimile: (206) 622-2522
bkeller@byrneskeller.com

IMMERSION CORPORATION'S INITIAL DISCLOSURES
(CV07 936RSM) - 7

**RECEIVED**

**OCT 1 1 2007**

RIDDELL WILLIAMS P.S.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation, <br><br> Plaintiff, <br><br> v. <br><br> IMMERSION CORPORATION, a Delaware corporation, <br><br> Defendant. | No. CV07 936RSM <br><br> **IMMERSION CORPORATION'S RESPONSES TO MICROSOFT CORPORATION'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS** |

Pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, and the Local

Rules for the Western District of Washington, Defendant Immersion Corporation ("Immersion")

hereby responds and objects to Plaintiff Microsoft Corporation's ("Microsoft") First Set of

Interrogatories and Requests for Production of Documents to Defendant Immersion Corporation

(the "Interrogatories and Requests for Production") as follows:

### PRELIMINARY STATEMENT

The following Responses, while based on diligent investigation by Immersion and its

counsel, are necessarily supported only by those facts and writings, presently and specifically

known and readily available. Immersion has not completed its investigation of the facts related

to the subject matter of this action, discovery, or its preparation for trial. Immersion therefore

makes these Responses without prejudice to its right to produce at any stage of these

**EXHIBIT D**

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  proceedings, including at trial, evidence of any facts or information that Immersion may later

2  recall or discover.  Immersion further reserves the right to change, amend or supplement any or

3  all of the matters contained in these Responses with facts or information that it learns were

4  omitted by inadvertence, mistake, excusable neglect, and as additional facts are ascertained and

5  contentions are made in this litigation.

6        These Responses also are made solely for the purposes of this action, and are subject to

7  all objections as to competence, authenticity, relevance, materiality, privilege, and admissibility.

8  All such objections and grounds are expressly reserved and may be interposed at the time of trial.

9        Immersion's Response to each individual Interrogatory and Request for Production is

10  submitted without prejudice to, and without in any way waiving, the general objections listed

11  below but not expressly set forth in that Response.  The assertion of any objection to an

12  Interrogatory or Request for Production in any Response below is neither intended as, nor shall

13  in any way be deemed, a waiver of Immersion's right to assert that or any other objection at a

14  later date.  Moreover, no incidental or implied admissions are intended by the Responses below.

15  The fact that Immersion has answered or objected to all or part of a Interrogatory or Request for

16  Production should not be construed or taken as an admission that Immersion accepts or admits

17  the existence of any purported facts set forth or assumed by such Interrogatory or Request for

18  Production or that Immersion has waived or intended to waive any part of any objection to the

19  Interrogatory or Request for Production.  The statement that responsive documents will be

20  produced in response to a particular Request for Production is not intended to mean and does not

21  mean that any such documents were in fact created or exist.

22        Immersion notes that as of the date of this pleading, no Protective Order has yet been

23  entered by the Court.  Immersion will produce confidential documents, if any, only upon the

24  entry of an appropriate Protective Order.

25

26

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE. WASHINGTON 98104
(206) 622-2000

# GENERAL OBJECTIONS

1.     Immersion objects to the Interrogatories and Requests for Production, including the definitions and instructions contained therein, to the extent that they call for information or production of documents protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges or immunities. Immersion further objects to the Interrogatories and Requests for Production on the grounds and to the extent that they purport to seek or call for the production of information constituting, recording, or reflecting the work product of Immersion's attorneys, including their thoughts, opinions, or mental impressions in connection with the preparation, prosecution, avoidance or defense of any claim by or against Immersion. Immersion also objects to the Interrogatories and Requests for Production on the grounds and to the extent that they seek information protected by the right of privacy contained in the United States Constitution, or other applicable statutory or case law. Nothing contained in these Responses is intended as, nor shall in any way be deemed, a waiver of the attorney-client privilege, work product doctrine, the right of privacy or any other applicable privilege.

2.     Immersion objects to the Interrogatories and Requests for Production on the ground and to the extent they call for information or the production of documents that Immersion may not disclose or produce without the consent of third parties.

3.     Immersion objects to the Interrogatories and Requests for Production, including the definitions and instructions contained therein, to the extent that they call for information or the production of documents that are not relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

4.     Immersion objects to the Interrogatories and Requests for Production, including the definitions and instructions contained therein, to the extent that they purport to impose obligations beyond those required by the Federal Rules of Civil Procedure or the Local Rules for the Western District of Washington. Immersion will comply with the requirements of the Federal Rules of Civil Procedure and the Local Rules for the Western District of Washington in

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1    responding to the Interrogatories and Requests for Production.

2       5.    Immersion objects to the Interrogatories and Requests for Production, including

3    the definitions and instructions contained therein, to the extent that they purport to require

4    Immersion to search for information or produce documents and files that are not within its

5    possession, custody or control. Immersion will use reasonable diligence to locate information

6    under its control, and documents in facilities under its control based upon an examination of

7    those files reasonably expected to yield responsive documents.

8       6.    Immersion objects to the Interrogatories and Requests for Production, including

9    the definitions and instructions contained therein, to the extent that they purport to require

10    Immersion to undertake an unduly burdensome and oppressive search to obtain information or of

11    its documents and files.

12       7.    Immersion objects to the definition of "document" contained in paragraph 1 of the

13    "Definitions" section of the Interrogatories and Requests for Production on the ground that it is

14    vague and ambiguous and purports to impose obligations beyond those required by the Federal

15    Rules of Civil Procedure or the Local Rules for the Western District of Washington.

16       8.    Immersion objects to the definition of "communication" contained in paragraph 2

17    of the "Definitions" section of the Interrogatories and Requests for Production on the ground that

18    it is vague and ambiguous and purports to impose obligations beyond those required by the

19    Federal Rules of Civil Procedure or the Local Rules for the Western District of Washington.

20       9.    Immersion objects to the definitions of "you," "yours," and "Defendant"

21    contained in Paragraph 3 of the "Definitions" section of the Interrogatories and Requests for

22    Production as vague and ambiguous, and to the extent that they purport to impose discovery

23    obligations on persons and entities other than the parties to this action.

24       10.    Immersion objects to the definition of "Sony" contained in Paragraph 4 of the

25    "Definitions" section of the Interrogatories and Requests for Production as vague and

26    ambiguous.

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  11.  Immersion objects to the definition of "Microsoft" contained in Paragraph 5 of the

2  "Definitions" section of the Interrogatories and Requests for Production as vague and

3  ambiguous.

4  12.  Immersion objects to the definition of "Immersion/Sony Agreement" contained in

5  paragraph 6 of the "Definitions" section of the Interrogatories and Requests for Production on

6  the ground that it is vague and ambiguous.

7  13.  Immersion objects to the Interrogatories to the extent that the total number,

8  including subparts, exceeds that permitted.

9  14.  Each and all of the foregoing General Objections are hereby expressly

10  incorporated into each and all of the following specific responses.  For particular emphasis, one

11  or more of these General Objections may be reiterated in a specific response.  The absence of

12  any reiteration in a given specific response is neither intended as, nor shall be construed as, a

13  limitation or waiver of any General Objection made herein.  Moreover, the inclusion of a specific

14  objection to a specific response is neither intended as, nor shall be construed as, a limitation or

15  waiver of any General Objection or any other specific objection made herein.

16  15.  Immersion states that any agreement to produce relevant responsive documents in

17  response to any particular request set forth below does not mean, and shall not be construed as an

18  admission, that any such documents were created or otherwise exist.

19  16.  Immersion states that with respect to any request set forth below in which

20  Immersion has listed only objections without a specific statement herein that certain documents

21  will be produced, Immersion is standing on its objections and is not producing any documents in

22  response to such request.  Immersion is willing to meet and confer to the extent requested

23  pursuant to the local rules of the Western District of Washington.

24  **SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES**

25  **INTERROGATORY NO. 1:**

26  Identify the date(s) on which you and Sony signed the Immersion/Sony Agreement.

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

# RESPONSE TO INTERROGATORY NO. 1:

Immersion incorporates its general objections set forth above as if fully set forth herein. Immersion specifically objects to this interrogatory to the extent that it calls for information that is not within Immersion's possession, custody or control. Immersion further specifically objects to this interrogatory on the ground that the term "Immersion/Sony Agreement" is vague and ambiguous.

Subject to and without waiving the foregoing and the general objections, Immersion states that Immersion's Victor Viegas signed the document entitled "Agreement" on February 28, 2007. Immersion further states that to the best of Immersion's knowledge and belief, Sony Computer Entertainment America Inc.'s Kazuo Hirai and Sony Computer Entertainment Inc.'s Ken Kutaragi are believed to have signed the document at or about the same time, except that the date for any person in Japan was March 1, 2007 due to Japan's location in a time zone across the International Date Line.

In accordance with the Federal Rules of Civil Procedure, the local rules of the Western District of Washington and any applicable scheduling orders in this case, Immersion reserves the right to supplement this response as Immersion's investigation and discovery in this case proceeds and as Immersion obtains additional information.

# INTERROGATORY NO. 2:

Describe how Sony satisfied the Amended Judgment, including date, manner (e.g. via wire transfer, check, etc.) and amount of the payment(s) made.

# RESPONSE TO INTERROGATORY NO. 2:

Immersion incorporates its general objections set forth above as if fully set forth herein. Immersion further specifically objects to this interrogatory to the extent that it calls for information that is not within Immersion's possession, custody or control.

Subject to and without waiving the foregoing and the general objections, Immersion states that Sony satisfied the amounts due in the Amended Judgment as follows:  via a wire

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 6

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1 transfer on March 16, 2007 from the funds Sony deposited in January 2006 in a litigation escrow
2 account at JPMorgan Chase Bank to an Immersion account at Wells Fargo in the amount of
3 $97,268,426; by delivering a check from Sony Computer Entertainment America Inc. dated
4 March 20, 2007 made payable to Immersion Corporation in the amount of $8,730.82 for an
5 additional day of post-judgment interest; and by making court-ordered compulsory license
6 payments of $7,075,629.71 on February 15, 2005, $3,653,574.31 on May 16, 2006,
7 $3,422,794.92 on August 16, 2005, $2,266,444.54 on November 14, 2005, $5,117,384.47 on
8 February 14, 2006, $1,273.099.44 on May 15, 2006, $1,347,192.19 on August 15, 2006,
9 $2,261,865.14 on November 15, 2006, and $4,186,779.66 on February 14, 2007.

10    In accordance with the Federal Rules of Civil Procedure, the local rules of the Western
11 District of Washington and any applicable scheduling orders in this case, Immersion reserves the
12 right to supplement this response as Immersion's investigation and discovery in this case
13 proceeds and as Immersion obtains additional information.

14 **INTERROGATORY NO. 3:**

15    Identify all of your meetings with Sony (either in person, by telephone, or in any other
16 manner) in which you discussed the Immersion/Sony Agreement; its language, terms and
17 conditions; the language, terms and conditions which were considered for inclusion in it
18 (regardless of whether or not they were included); or payment of the Amended Judgment,
19 dissolution of the Permanent Injunction, or dismissal of the appeals of the Sony Lawsuit. For
20 each meeting, identify the dates of the meetings, the participants, the length of the meeting and
21 the subjects discussed.

22 **RESPONSE TO INTERROGATORY NO. 3:**

23    Immersion incorporates its general objections set forth above as if fully set forth herein.
24 Immersion specifically objects to this interrogatory on the ground and to the extent that it calls
25 for information not relevant to matters raised by the pleadings in the present action nor
26 reasonably calculated to lead to the discovery of admissible evidence. Immersion further

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 7

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  specifically objects to this interrogatory as overbroad and unduly burdensome. Immersion

2  further specifically objects to this request to the extent it calls for documents protected by the

3  attorney-client privilege, the work-product doctrine, or other applicable privileges or immunities.

4  Immersion further specifically objects to this interrogatory on the ground that the term

5  "Immersion/Sony Agreement," and the word "meetings" in the context of this interrogatory, is

6  vague and ambiguous. Immersion further specifically objects to this interrogatory on the ground

7  that the definition of "or" contained in Paragraph 9 of the Definitions section of the

8  Interrogatories renders this interrogatory vague and ambiguous. For example, it is unclear

9  whether Microsoft seeks an identification of meetings (if any) where all of the identified subject

10  areas were discussed, or instead an identification of meetings where any of the identified subject

11  areas were discussed. Immersion further specifically objects to this interrogatory on the ground

12  that it is compound and consists of multiple subparts which properly should be counted as

13  separate interrogatories.

14        Subject to and without waiving the foregoing and the general objections, Immersion

15  states that there were in-person meetings of various lengths between February 20-28, 2007,

16  regarding the Immersion-Sony Agreement. Participants included Vic Viegas, Laura Peter,

17  Shoichi Endo, Jennifer Liu, Shinja Ina, Yoko Iguchi, Shiho Igarashi, and outside counsel for

18  Immersion and Sony.

19        In accordance with the Federal Rules of Civil Procedure, the local rules of the Western

20  District of Washington and any applicable scheduling orders in this case, Immersion reserves the

21  right to supplement this response as Immersion's investigation and discovery in this case

22  proceeds and as Immersion obtains additional information.

23  **INTERROGATORY NO. 4**:

24        Identify any oral agreements between you and Sony pertaining to the dismissal of the

25  Sony appeals, the payment of the Amended Judgment, the drafting and filing the satisfaction of

26  judgment in the Sony Lawsuit, the dismissal of the Permanent Injunction, the drafting and filing

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 8

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  the stipulation dissolving the Permanent Injunction, the Immersion/Sony Agreement, or the

2  conclusion or termination of the Sony Lawsuit. Identify the date(s) on which the oral agreement

3  was reached, the subject matter and terms of the oral agreement and the participants involved in

4  reaching the agreement.

5  **RESPONSE TO INTERROGATORY NO. 4**:

6      Immersion incorporates its general objections set forth above as if fully set forth herein.

7  Immersion specifically objects to this interrogatory as seeking legal conclusions. Immersion

8  further specifically objects to this interrogatory on the ground and to the extent that it calls for

9  information not relevant to matters raised by the pleadings in the present action nor reasonably

10  calculated to lead to the discovery of admissible evidence. Immersion further specifically

11  objects to this request to the extent it calls for documents protected by the attorney-client

12  privilege, the work-product doctrine, or other applicable privileges or immunities. Immersion

13  further specifically objects to this interrogatory on the ground that the term "Immersion/Sony

14  Agreement" is vague and ambiguous. Immersion further specifically objects to this interrogatory

15  on the ground that it is compound and consists of multiple subparts which properly should be

16  counted as separate interrogatories.

17      Subject to and without waiving the foregoing and the general objections, Immersion is

18  not aware of any oral agreements between Immersion and Sony responsive to this Interrogatory.

19      In accordance with the Federal Rules of Civil Procedure, the local rules of the Western

20  District of Washington and any applicable scheduling orders in this case, Immersion reserves the

21  right to supplement this response as Immersion's investigation and discovery in this case

22  proceeds and as Immersion obtains additional information.

23  **INTERROGATORY NO. 5**:

24      Identify all persons with knowledge relating to the factual allegations and legal claims in

25  the Amended Complaint filed in this lawsuit and all subsequent amended complaints, and all

26  responses and defenses that you have asserted to those allegations.

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## RESPONSE TO INTERROGATORY NO. 5:

Immersion incorporates its general objections set forth above as if fully set forth herein. Immersion specifically objects to this Interrogatory on the ground that it is unduly burdensome, overbroad, harassing and oppressive. Immersion further specifically objects to this interrogatory to the extent that it calls for information that is not within Immersion's possession, custody or control. Immersion further specifically objects to this interrogatory to the extent it calls for information already in Microsoft's possession, custody or control. Immersion further specifically objects to this request on the ground and to the extent that it seeks information about parties who are not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence. Immersion further objects on the grounds that the phrase "all persons with knowledge relating to the factual allegations and legal claims ..." is overbroad and vague and ambiguous. Immersion further specifically objects to this interrogatory to the extent that it purports to impose obligations beyond those required by the Federal Rules of Civil Procedure or the Local Rules for the Western District of Washington. Immersion further specifically objects to this interrogatory as premature. For example, the interrogatory seeks information that Immersion is not required to disclose at this stage of the litigation and discovery on which a response depends, including expert discovery, is ongoing. Immersion further specifically objects to this request to the extent it calls for documents protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges or immunities.

Subject to and without waiving the foregoing and the general objections, Immersion identifies, to the best of Immersion's knowledge and belief, the following persons who may be knowledgeable with respect to at least some of the allegations set forth in the pleadings in this matter: Victor Viegas, Laura Peter, Patrick Reutens, Shoichi Endo, Barry Spector, Ken Lustig, Steve McGrath, Dan Christen, Neil Meyers, Stacy Quan, Marc Brown, William H. Gates III, Peter Berger, Martin Smith, Jennifer Liu, Shinji Ina, Yoko Iguchi, and other attorneys for Immersion, Microsoft, and Sony Computer Entertainment.

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  In accordance with the Federal Rules of Civil Procedure, the local rules of the Western

2  District of Washington and any applicable scheduling orders in this case, Immersion reserves the

3  right to supplement this response as Immersion's investigation and discovery in this case

4  proceeds and as Immersion obtains additional information.

5  **INTERROGATORY NO. 6**:

6  State with particularity the factual basis for your allegation in ¶ 64 of your Answer,

7  Affirmative Defenses and Counterclaims ("Answer") that "Microsoft's public disclosure of

8  confidential terms of the Sony Agreement in the Original Complaint has harmed Immersion by,

9  among other things, damaging Immersion's business relationship with current and prospective

10 licensees." In your Answer, Identify all persons or entities who read or otherwise learned of the

11 allegedly confidential information contained in the Original Complaint, what they did what that

12 allegedly confidential information, and how it has harmed Immersion.

13 **RESPONSE TO INTERROGATORY NO. 6**:

14 Immersion incorporates its general objections set forth above as if fully set forth herein.

15 Immersion specifically objects to this interrogatory as a contention interrogatory and hence

16 premature. Immersion further specifically objects to this interrogatory to the extent that it calls

17 for information that is not within Immersion's possession, custody or control. Immersion further

18 specifically objects to this request to the extent it calls for documents protected by the attorney-

19 client privilege, the work-product doctrine, or other applicable privileges or immunities.

20 Immersion further specifically objects to the extent that this interrogatory seeks information

21 protected by the right of privacy. Immersion further specifically objects to this interrogatory on

22 the ground that the term "business relationships" is vague and ambiguous. Immersion further

23 specifically objects to this interrogatory as premature. For example, the interrogatory seeks

24 information that Immersion is not required to disclose at this stage of the litigation and discovery

25 on which a response depends, including expert discovery, is ongoing.

26

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1      Subject to and without waiving the foregoing and the General Objections, Immersion

2 states that Microsoft disclosed certain terms from the Agreement with Sony that were not

3 publicly disclosed previously, including a specific confidential royalty rate. Immersion has a

4 long established patent licensing practice. Those with whom Immersion is negotiating, or may

5 negotiate with in the future, are not provided with the details of Immersion's agreements with

6 others. Immersion states on information and belief that Microsoft's disclosure of confidential

7 information in the Agreement with Sony has harmed Immersion's negotiations with one or more

8 prospective licensees.

9      In accordance with the Federal Rules of Civil Procedure, the local rules of the Western

10 District of Washington and any applicable scheduling orders in this case, Immersion reserves the

11 right to supplement this response as Immersion's investigation and discovery in this case

12 proceeds and as Immersion obtains additional information.

13 **INTERROGATORY NO. 7:**

14      Excluding Immersion, Microsoft and their counsel, identify all persons or entities who

15 have received or seen the unredacted version of the Sony Agreement, or who otherwise have

16 learned of the redacted provisions.

17 **RESPONSE TO INTERROGATORY NO. 7:**

18      Immersion incorporates its general objections set forth above as if fully set forth herein.

19 Immersion specifically objects to this interrogatory to the extent that it calls for information that

20 is not within Immersion's possession, custody or control. Immersion further specifically objects

21 to this interrogatory to the extent that evidence of Microsoft's public disclosure of the unredacted

22 version of the Immersion-Sony Agreement is in the possession, custody or control of Microsoft

23 and has not yet been produced to Immersion. Immersion further specifically objects to this

24 interrogatory as overbroad and unduly burdensome. Immersion further specifically objects to

25 this interrogatory to the extent that it purports to impose obligations beyond those required by the

26 Federal Rules of Civil Procedure or the Local Rules for the Western District of Washington.

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 12

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  Immersion further specifically objects to this request to the extent it calls for documents

2  protected by the attorney-client privilege, the work-product doctrine, or other applicable

3  privileges or immunities.  Immersion further specifically objects to this interrogatory as

4  premature.  For example, the interrogatory seeks information that Immersion is not required to

5  disclose at this stage of the litigation and discovery on which a response depends, including

6  expert discovery, is ongoing.

7        Subject to and without waiving the foregoing and the General Objections, Immersion

8  states that the only persons to whom the unredacted Immersion-Sony Agreement has been

9  provided are Immersion and its counsel, persons at Sony and its counsel, and to Microsoft and its

10  counsel under an express written confidentiality agreement between Immersion and Microsoft.

11  As a result of Microsoft's public disclosure of previously redacted provisions of that agreement

12  between Immersion and Sony, this confidential information was made publicly available via the

13  Court's PACER system and also via the internet.  Immersion believes that numerous individuals

14  received this information, including at least representatives of the media, the public at large,

15  investors in Immersion or Microsoft, participants on electronic message boards such as

16  www.investorvillage.com, and actual or prospective licensees.  By way of example only, Todd

17  Bishop of the Seattle Post-Intelligencer published an article on June 18, 2007 at seattlepi.com

18  regarding this action (http://blog.seattlepi.nwsource.com/microsoft/archives/116859.asp).  Mr.

19  Bishop quoted the confidential financial information from the Immersion-Sony Agreement, and

20  also posted Microsoft's original complaint which contained the improper disclosure.  Mr. Bishop

21  published another article on June 19, 2007 in which he again posted a link to a pdf file

22  containing Microsoft's Original Complaint.  This article may be viewed at:

23  http://blog.seattlepi.nwsource.com/microsoft/archives/116868.asp?source=rss.  The confidential

24  information, and references to Mr. Bishop's articles, also were published elsewhere on the

25  Internet.  By way of example only, see http://www.davis.ca/en/blog/Video-Game-

26  Law/2007/06/19/Immersion-Sued-By-Microsoft-For-Breach-Of-Contract;

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 13

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1    http://microsoft.blognewschannel.com/archives/2007/06/21/;

2    http://error47.gametrailers.com/gamepad/?action=viewblog&id=108411; and

3    http://news.digitaltrends.com/news/story/13322/microsoft_starts_rumble_with_immersion.

4         Immersion's investigation into the direct and indirect recipients of its confidential

5    information continues.

6         In accordance with the Federal Rules of Civil Procedure, the local rules of the Western

7    District of Washington and any applicable scheduling orders in this case, Immersion reserves the

8    right to supplement this response as Immersion's investigation and discovery in this case

9    proceeds and as Immersion obtains additional information.

10   **INTERROGATORY NO. 8:**

11        Describe with particularity the factual basis for each of Affirmative Defenses 3, 4, 5, 6, 7,

12   8 and 9 contained in your Answer.

13   **RESPONSE TO INTERROGATORY NO. 8:**

14        Immersion incorporates its general objections set forth above as if fully set forth herein.

15   Immersion further specifically objects to this interrogatory as a contention interrogatory and

16   hence premature. Immersion further objects to this interrogatory to the extent that it seeks legal

17   conclusions or expert testimony that will be provided at a later stage of these proceedings.

18   Immersion has not yet completed its analysis in this case. Immersion might rely on documents

19   and information that Microsoft must, but has not yet, produced. Immersion further specifically

20   objects to this interrogatory to the extent it seeks information already in Microsoft's possession,

21   custody or control. Immersion further specifically objects to this interrogatory on the ground

22   that it is compound and consists of multiple subparts which properly should be counted as

23   separate interrogatories. In fact, this compound interrogatory purports to request information

24   regarding seven separate affirmative defenses and hence constitutes at least seven separate

25   interrogatories.

26

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 14

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE. WASHINGTON 98104
(206) 622-2000

1  Subject to and without waiving the foregoing and the general objections, Immersion

2  states as follows:

3  The facts on which Immersion will rely in support of one or more of its third through

4  ninth affirmative defenses include, but are not limited to, the following:

5  Immersion filed suit for patent infringement against Microsoft and Sony in February

6  2002. On or about July 25, 2003, Immersion and Microsoft entered into a Settlement Agreement

7  that settled Immersion's claims against Microsoft. Also on July 25, 2003, Immersion and

8  Microsoft entered into a Sublicense Agreement that granted Microsoft, for a limited time, certain

9  sublicense rights under the terms set forth in the Sublicense Agreement, including certain rights

10  to sublicense Immersion's patents to Sony, in consideration of a payment of $100,000 by

11  Microsoft to Immersion. Under the terms of the Sublicense Agreement, Microsoft's sublicense

12  rights expired in July of 2005.

13  The purported basis for Microsoft's claim against Immersion in the present action is

14  section 2.e of the Sublicense Agreement. Immersion is informed and believes that Microsoft

15  drafted section 2.e to interfere with any potential settlement between Immersion and Sony of the

16  "Sony Lawsuit," which is specifically defined in the Sublicense Agreement as "the action in the

17  United States District Court for the Northern District of California entitled Immersion

18  Corporation v. Sony Computer Entertainment of America Inc., Sony Computer Entertainment

19  Inc., and Microsoft Corporation, Northern District of California Case No. C02-00710 CW

20  (WDB), as such action pertains to Sony." As drafted by Microsoft, during the time before

21  Microsoft granted a sublicense under the Sublicense Agreement, section 2.e would impose a

22  significant monetary penalty on Immersion in the event that Immersion elected in its discretion

23  to settle the "Sony Lawsuit," thereby preventing any possibility of a settlement of the "Sony

24  Lawsuit" as a practical matter. Immersion is further informed and believes that Microsoft

25  intended to use its sublicense rights under the Sublicense Agreement to gain an unfair and

26  improper competitive advantage from Immersion's patent infringement claims against Sony,

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  Microsoft's competitor in the video game market, and advance Microsoft's interests in other,

2  unrelated pending litigation involving Sony.

3      Meanwhile, Immersion continued to pursue its claims against Sony.  On September 21,

4  2004, after a month-long jury trial, the jury returned its verdict in favor of Immersion. The jury

5  found all of the asserted claims of Immersion's patents-in-suit valid and infringed. The jury

6  awarded Immersion damages in the amount of $82.0 million. On March 24, 2005, the United

7  States District Court for the Northern District of California entered judgment in Immersion's

8  favor and awarded Immersion $82.0 million in damages, as well as pre-judgment interest and

9  certain court costs.  The district court further ordered Sony to pay compulsory license fees during

10  the pendency of appeal.  On April 7, 2005, the district court entered an Amended Judgment to

11  clarify that the Judgment in favor of Immersion and against Sony also encompassed Sony's

12  counterclaims for declaratory relief on invalidity and unenforceability, as well as non-

13  infringement. In March 2007, Sony withdrew and moved the Federal Circuit to dismiss its

14  appeals from the district court's April 7, 2005 Amended Judgment.  On March 14, 2007 the

15  Federal Circuit dismissed Sony's appeal from the Amended Judgment, which accordingly

16  became final and non-appealable.  In accordance with the Amended Judgment, Immersion

17  received funds totaling approximately $97.3 million, as well as an additional $32.4 million of

18  compulsory license fees and interest thereon previously paid to Immersion by Sony pursuant to

19  previous orders of the district court.  On March 19, 2007, Immersion lodged with the district

20  court a Notice of Satisfaction of Judgment, indicating that Sony had satisfied and discharged the

21  final judgment that the district court had entered.

22      Microsoft's claim against Immersion in the present action constitutes an unconscionable

23  attempt by Microsoft to seize a share of the sums that Immersion received as a result of

24  prevailing against Sony in the "Sony Lawsuit" at substantial cost to Immersion.  Microsoft's

25  apparent interpretation of the Sublicense Agreement as providing Microsoft with an unlimited,

26  perpetual right to a share in Immersion's judgment and other court-awarded recovery from Sony

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1    renders the Sublicense Agreement unconscionable and would result in Microsoft's unjust

2    enrichment. Moreover, after Microsoft's sublicense rights under the Sublicense Agreement

3    expired, the underlying purpose of section 2.e of the Sublicense Agreement to protect

4    Microsoft's sublicense rights likewise terminated. Microsoft is therefore not entitled to the

5    windfall it seeks in this lawsuit, purportedly under section 2.e of the Sublicense Agreement.

6         In addition, as interpreted by Microsoft, the Sublicense Agreement is also unenforceable

7    as a champertous agreement. Similarly, to the extent that monies paid by Microsoft to

8    Immersion under the Sublicense Agreement were intended by Microsoft to maintain or assist

9    Immersion in prosecuting the "Sony Lawsuit" against Sony, the Sublicense Agreement is

10    unenforceable under the doctrine of maintenance. The doctrines of champerty and maintenance

11    forbid speculation in lawsuits, as well as the intermeddling in, and manipulation of, the lawsuits

12    of others. Microsoft evidently interprets the Sublicense Agreement as a vehicle for Microsoft's

13    speculation in, and intermeddling in and manipulation of, Immersion's lawsuit against Sony,

14    thereby rendering the Sublicense Agreement void and unenforceable. Furthermore, on

15    information and belief, Microsoft has a pattern and practice of leveraging and intermeddling in

16    third parties' lawsuits against Microsoft's competitors to serve Microsoft's own interests.

17    Microsoft's intermeddling in and misuse of third parties' litigation against Microsoft's

18    competitors is an example of how Microsoft comes to this Court with unclean hands.

19         The Sublicense Agreement and section 2.e of that Agreement, as interpreted by

20    Microsoft, is also void as against public policy in favor of the settlement of lawsuits and

21    unenforceable. The purpose and effect of section 2.e, as interpreted by Microsoft, was to prevent

22    any settlement of the Sony Lawsuit.

23         In accordance with the Federal Rules of Civil Procedure, the local rules of the Western

24    District of Washington and any applicable scheduling orders in this case, Immersion reserves the

25    right to supplement this response as Immersion's investigation and discovery in this case

26    proceeds and as Immersion obtains additional information.

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 17

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE. WASHINGTON 98104
(206) 622-2000

## SPECIFIC RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION

## REQUEST FOR PRODUCTION NO. 1:

Produce all agreements between you and Microsoft including, but not limited to the Sublicense Agreement, License Agreement, and Settlement Agreement dated July 25, 2003, and Patent License Agreement dated July 19, 1999, including all versions and drafts of those agreements and documents describing these agreements.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Immersion incorporates its general objections set forth above as if fully set forth herein. Immersion specifically objects to this request on the ground and to the extent that it calls for documents that are not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence. Immersion further specifically objects to this request on the grounds that it is overbroad and vague and ambiguous. For example, the term "describing" is vague and ambiguous as used in this request, and the meanings of the terms "License Agreement," "Settlement Agreement dated July 25, 2003," and "Patent License Agreement dated July 19, 1999" are unclear. Immersion further specifically objects to this request on the grounds that this request seeks information that is in the possession of or reasonably available to Microsoft. Immersion further specifically objects to this request in that it calls for documents not within Immersion's possession, custody or control. Immersion further specifically objects to this request to the extent it calls for documents protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges or immunities.

Subject to and without waiving the foregoing and the general objections, Immersion responds that it will produce agreements between Immersion and Microsoft, if any, that may be located after a reasonable search.

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  **REQUEST FOR PRODUCTION NO. 2**:

2       Produce all documents relating to settlement, resolution or termination of the Sony

3  Lawsuit with Microsoft, or relating to the Sublicense Agreement, License Agreement, and

4  Settlement Agreement dated July 25, 2003, and Patent License Agreement dated July 19, 1999.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2**:

6       Immersion incorporates its general objections set forth above as if fully set forth herein.

7  Immersion specifically objects to this request on the ground and to the extent that it calls for

8  documents that are not relevant to the subject matter of this action, nor reasonably calculated to

9  lead to the discovery of admissible evidence.  Immersion further specifically objects to this

10 request on the grounds that this request seeks information that is in the possession of or

11 reasonably available to Microsoft.  Immersion further specifically objects to this request on the

12 grounds that it is overbroad and vague and ambiguous.  For example, the meanings of the terms

13 "License Agreement," "Settlement Agreement dated July 25, 2003," and "Patent License

14 Agreement dated July 19, 1999" are unclear.  Immersion further specifically objects to this

15 request on the ground that the phrase "settlement, resolution or termination of the Sony Lawsuit

16 with Microsoft" is incomprehensible in light of the definition of the "Sony Lawsuit" in the

17 Sublicense Agreement.  Immersion further specifically objects to this request to the extent it calls

18 for documents protected by the attorney-client privilege, the work-product doctrine, or other

19 applicable privileges or immunities.  Immersion further specifically objects to this request on the

20 ground that it is duplicative of Request No. 1.

21       Subject to and without waiving the foregoing and the general objections, Immersion

22 responds that it will produce relevant, non-privileged, non-work product protected documents

23 relating to Immersion's settlement of its claims against Microsoft in July 2005, if any, that may

24 be located after a reasonable search.

25

26

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**REQUEST FOR PRODUCTION NO. 3:**

Produce all documents and communications relating to the mediation of the Sony Lawsuit with Microsoft, including documents prepared in anticipation of the mediation, submitted to the mediator or sent to Sony.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Immersion incorporates its general objections set forth above as if fully set forth herein. Immersion specifically objects to this request on the ground and to the extent that it calls for documents that are not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence. Immersion further specifically objects to this request as overbroad and unduly burdensome. Immersion further specifically objects to this request as vague and ambiguous. Specifically, the phrase "in anticipation" is vague and ambiguous as used in this request. Immersion further specifically objects to this request on the grounds that this request seeks information that is in the possession of or reasonably available to Microsoft. Immersion further specifically objects to this request in that it calls for documents not within Immersion's possession, custody or control. Immersion further specifically objects to this request to the extent it calls for documents protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges or immunities. Immersion further specifically objects to this request on the ground that it seeks to invade the mediation privilege. Immersion further specifically objects to this request on the ground that the phrase "mediation of the Sony Lawsuit with Microsoft" is incomprehensible in light of the definition of the "Sony Lawsuit" in the Sublicense Agreement.

**REQUEST FOR PRODUCTION NO. 4:**

Produce all communications between you and Microsoft relating to Sony, the Sony Lawsuit, or the Sublicense Agreement, which were created between February 2002 and June 2007 (excluding all documents filed with the court in the Sony Lawsuit, written discovery

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  requests and responses, and correspondence between litigation counsel addressing only the

2  scheduling of litigation activities or transmitting litigation related documents).

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 4**:

4       Immersion incorporates its general objections set forth above as if fully set forth herein.

5  Immersion specifically objects to this request on the ground and to the extent that it calls for

6  documents that are not relevant to the subject matter of this action, nor reasonably calculated to

7  lead to the discovery of admissible evidence. Immersion further specifically objects to this

8  request on the grounds that it is vague, ambiguous, and incomprehensible. For example, the

9  sentence contains an unmatched parenthesis. Immersion further specifically objects to this

10 request on the grounds that this request seeks information that is in the possession of or

11 reasonably available to Microsoft. Immersion further specifically objects to this request to the

12 extent it calls for documents protected by the attorney-client privilege, the work-product

13 doctrine, or other applicable privileges or immunities.

14      Subject to and without waiving the foregoing and the general objections, Immersion

15 responds that it will produce relevant non-privileged, non-work product protected documents

16 responsive to this request, if any, that may be located after a reasonable search.

17 **REQUEST FOR PRODUCTION NO. 5**:

18      Produce all documents relating to your attempts to finance or fund Immersion during the

19 pendency of the Sony Lawsuit, including but not limited to any attempts to obtain a loan, an

20 investor or a business partner for Immersion, or to sell securities of Immersion, or to finance the

21 Sony Lawsuit against Sony.

22 **RESPONSE TO REQUEST FOR PRODUCTION NO. 5**:

23      Immersion incorporates its general objections set forth above as if fully set forth herein.

24 Immersion specifically objects to this request on the ground and to the extent that it calls for

25 documents that are not relevant to the subject matter of this action, nor reasonably calculated to

26 lead to the discovery of admissible evidence. Immersion further specifically objects to this

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1    request on the grounds that it is unduly burdensome, harassing, oppressive, and overbroad.

2    Immersion further specifically objects to this request to the extent that it purports to impose

3    obligations beyond those required by the Federal Rules of Civil Procedure or the Local Rules for

4    the Northern District of California. Immersion further specifically objects to this request to the

5    extent it calls for documents that Immersion is contractually precluded from producing under

6    previously executed confidentiality agreements. Immersion further specifically objects to this

7    request in that it calls for documents not within Immersion's possession, custody or control.

8    Immersion further specifically objects to this request to the extent it calls for documents

9    protected by the attorney-client privilege, the work-product doctrine, or other applicable

10    privileges or immunities.

11       Subject to and without waiving the foregoing and the general objections, Immersion

12    responds that it will produce non-privileged, non-work product protected documents sufficient to

13    identify funding Immersion received during the pendency of the Sony Lawsuit, if any, that may

14    be located after a reasonable search.

15    **REQUEST FOR PRODUCTION NO. 6**:

16       Produce all documents relating to the value of the patent portfolio that you licensed to

17    Microsoft in July 2003.

18    **RESPONSE TO REQUEST FOR PRODUCTION NO. 6**:

19       Immersion incorporates its general objections set forth above as if fully set forth herein.

20    Immersion specifically objects to this request on the ground and to the extent that it calls for

21    documents that are not relevant to the subject matter of this action, nor reasonably calculated to

22    lead to the discovery of admissible evidence. Immersion further specifically objects to this

23    request as overbroad and unduly burdensome. Immersion further specifically objects to this

24    request on the grounds that it is vague and ambiguous. For example, the term "value" is vague

25    and ambiguous as used in this request. Immersion further specifically objects to this request on

26    the grounds that this request seeks information that is in the possession of or reasonably available

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  to Microsoft. Immersion further specifically objects on the ground that this request is vague and

2  ambiguous as to time period. Immersion further specifically objects to this request to the extent

3  it calls for documents protected by the attorney-client privilege, the work-product doctrine, or

4  other applicable privileges or immunities.

5  **REQUEST FOR PRODUCTION NO. 7**:

6  Produce all documents relating to how money received from Microsoft (pursuant to the

7  Sublicense Agreement, License Agreement, Patent License Agreement, Settlement Agreement

8  and Stock Purchase Agreement) was deposited, accounted, allocated, budgeted and spent by you.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7**:

10  Immersion incorporates its general objections set forth above as if fully set forth herein.

11  Immersion specifically objects to this request on the ground and to the extent that it calls for

12  documents that are not relevant to the subject matter of this action, nor reasonably calculated to

13  lead to the discovery of admissible evidence. Immersion further specifically objects to this

14  request on the grounds that it is unduly burdensome, harassing, oppressive, and overbroad.

15  Immersion further specifically objects to this request on the grounds that it is vague, ambiguous,

16  and incomprehensible. For example, the meanings of the terms "License Agreement," "Patent

17  License Agreement," "Settlement Agreement and Stock Purchase Agreement" are unclear.

18  Immersion further specifically objects to this request to the extent it calls for documents

19  protected by the attorney-client privilege, the work-product doctrine, or other applicable

20  privileges or immunities.

21  **REQUEST FOR PRODUCTION NO. 8**:

22  Produce all communications with Sony relating to settlement of the Sony Lawsuit

23  with Microsoft.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 8**:

25  Immersion incorporates its general objections set forth above as if fully set forth herein.

26  Immersion specifically objects to this request on the ground and to the extent that it calls for

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 23

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1   documents that are not relevant to the subject matter of this action, nor reasonably calculated to

2   lead to the discovery of admissible evidence.  Immersion further specifically objects to this

3   request in that it calls for documents not within Immersion's possession, custody or control.

4   Immersion further specifically objects to this request to the extent it calls for documents

5   protected by the attorney-client privilege, the work-product doctrine, or other applicable

6   privileges or immunities.  Immersion further specifically objects to this request on the ground

7   that the phrase "settlement of the Sony Lawsuit with Microsoft" is incomprehensible in light of

8   the definition of the "Sony Lawsuit" in the Sublicense Agreement.

9   **REQUEST FOR PRODUCTION NO. 9**:

10          Produce all communications with any person or entity other than Microsoft or Sony

11  relating to the Sony Lawsuit after June 2003.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 9**:

13          Immersion incorporates its general objections set forth above as if fully set forth herein.

14  Immersion specifically objects to this request on the ground and to the extent that it calls for

15  documents that are not relevant to the subject matter of this action, nor reasonably calculated to

16  lead to the discovery of admissible evidence.  Immersion further specifically objects to this

17  request as overbroad and unduly burdensome.  Immersion further specifically objects to this

18  request in that it calls for documents not within Immersion's possession, custody or control.

19  Immersion further specifically objects to this request to the extent it calls for documents

20  protected by the attorney-client privilege, the work-product doctrine, or other applicable

21  privileges or immunities.

22  **REQUEST FOR PRODUCTION NO. 10**:

23          Produce the Immersion/Sony Agreement, including all versions and drafts.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10**:

25          Immersion incorporates its general objections set forth above as if fully set forth herein.

26  Immersion specifically objects to this request on the ground and to the extent that it calls for

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1 documents that are not relevant to the subject matter of this action, nor reasonably calculated to

2 lead to the discovery of admissible evidence. Immersion further specifically objects to this

3 request on the ground that the term "Immersion/Sony Agreement" is vague and ambiguous.

4 Immersion specifically objects to this request on the ground and to the extent that it seeks

5 information that is in the possession of Microsoft. Immersion further specifically objects to this

6 request in that it calls for documents not within Immersion's possession, custody or control.

7 Immersion further specifically objects to this request to the extent it calls for documents

8 protected by the attorney-client privilege, the work-product doctrine, or other applicable

9 privileges or immunities.

10     Subject to and without waiving the foregoing and the general objections, Immersion

11 responds that it has already produced the "Agreement" between Immersion and Sony Computer

12 Entertainment.

13 **REQUEST FOR PRODUCTION NO. 11**:

14     Produce all communications between you and Sony relating to the Immersion/Sony

15 Agreement; its language, terms and conditions; or language, terms and conditions proposed or

16 considered for inclusion in it.

17 **RESPONSE TO REQUEST FOR PRODUCTION NO. 11**:

18     Immersion incorporates its general objections set forth above as if fully set forth herein.

19 Immersion specifically objects to this request on the ground and to the extent that it calls for

20 documents that are not relevant to the subject matter of this action, nor reasonably calculated to

21 lead to the discovery of admissible evidence. Immersion further specifically objects to this

22 request on the ground that the term "Immersion/Sony Agreement" is vague and ambiguous.

23 Immersion further specifically objects to this request as overbroad and unduly burdensome.

24 Immersion further specifically objects to this request to the extent it calls for documents

25 protected by the attorney-client privilege, the work-product doctrine, or other applicable

26 privileges or immunities.

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1    Subject to and without waiving the foregoing and the general objections, Immersion

2    responds that it will produce relevant non-privileged, non-work product protected

3    communications with Sony responsive to this request, if any, that may be located after a

4    reasonable search.

5    **REQUEST FOR PRODUCTION NO. 12:**

6         Produce all other documents relating to the Immersion/Sony Agreement; its language,

7    terms and conditions; or language, terms and conditions proposed or considered for inclusion

8    in it.

9    **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

10        Immersion incorporates its general objections set forth above as if fully set forth herein.

11   Immersion specifically objects to this request on the ground and to the extent that it calls for

12   documents that are not relevant to the subject matter of this action, nor reasonably calculated to

13   lead to the discovery of admissible evidence.  Immersion further specifically objects to this

14   request in that it calls for documents not within Immersion's possession, custody or control.

15   Immersion further specifically objects to this request on the ground that the term

16   "Immersion/Sony Agreement" is vague and ambiguous.  Immersion further specifically objects

17   to this request to the extent it calls for documents protected by the attorney-client privilege, the

18   work-product doctrine, or other applicable privileges or immunities.  Immersion further

19   specifically objects to this request as overbroad and unduly burdensome.

20        Subject to and without waiving the foregoing and the general objections, Immersion

21   responds that it will produce relevant non-privileged, non-work product protected

22   communications with Sony responsive to this request, if any, that may be located after a

23   reasonable search.

24   **REQUEST FOR PRODUCTION NO. 13:**

25        Produce all documents relating to the satisfaction and payment of the Amended

26   Judgment, including all communications with the Courts and Sony regarding that subject.

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 26

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13**:

Immersion incorporates its general objections set forth above as if fully set forth herein. Immersion specifically objects to this request on the ground and to the extent that it calls for documents that are not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence. Immersion further specifically objects to this request to the extent that it calls for public documents equally available to Microsoft. Immersion further specifically objects to this request in that it calls for documents not within Immersion's possession, custody or control. Immersion further specifically objects to this request as overbroad and unduly burdensome. Immersion further specifically objects to this request to the extent it calls for documents protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges or immunities.

Subject to and without waiving the foregoing and the general objections, Immersion responds that it will produce relevant non-privileged, non-work product protected documents relating to Sony's satisfaction of the judgment, if any, that may be located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 14**:

Produce all documents relating to the dismissal of the appeals of the Sony Lawsuit, including any motion or agreement filed with the appellate court pursuant to Fed. Rule Appellate Proc. 42, and all communications with the Courts and Sony.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14**:

Immersion incorporates its general objections set forth above as if fully set forth herein. Immersion specifically objects to this request on the ground and to the extent that it calls for documents that are not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence. Immersion further specifically objects to this request to the extent that it calls for public documents equally available to Microsoft. Immersion further specifically objects to this request as overbroad and unduly burdensome. Immersion

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  further objects to this request on the grounds that it is vague and ambiguous. Immersion further

2  specifically objects to this request in that it calls for documents not within Immersion's

3  possession, custody or control. Immersion further specifically objects to this request to the

4  extent it calls for documents protected by the attorney-client privilege, the work-product

5  doctrine, or other applicable privileges or immunities.

6        Subject to and without waiving the foregoing and the general objections, Immersion

7  responds that it will produce relevant non-privileged, non-work product protected documents

8  relating to Sony's withdrawal and dismissal of appeals, if any, that may be located after a

9  reasonable search.

10  **REQUEST FOR PRODUCTION NO. 15**:

11        Produce all documents relating to the stipulation and proposed order dissolving the

12  Permanent Injunction, including all versions and drafts of it, and all communications with the

13  Court and Sony relating to it.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 15**:

15        Immersion incorporates its general objections set forth above as if fully set forth herein.

16  Immersion specifically objects to this request on the ground and to the extent that it calls for

17  documents that are not relevant to the subject matter of this action, nor reasonably calculated to

18  lead to the discovery of admissible evidence. Immersion further specifically objects to this

19  request to the extent that it calls for public documents equally available to Microsoft. Immersion

20  further specifically objects to this request as overbroad and unduly burdensome. Immersion

21  further objects to this request on the grounds that it is vague and ambiguous. Immersion further

22  specifically objects to this request in that it calls for documents not within Immersion's

23  possession, custody or control. Immersion further specifically objects to this request to the

24  extent it calls for documents protected by the attorney-client privilege, the work-product

25  doctrine, or other applicable privileges or immunities.

26

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1        Subject to and without waiving the foregoing and the general objections, Immersion

2 responds that it will produce relevant non-privileged, non-work product protected documents

3 responsive to this request, if any, that may be located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 16:**

5        Produce all communications with Sony relating to the Sublicense Agreement or the

6 possibility, risk or contention by Microsoft that Immersion would have to make payments to

7 Microsoft or provide the Immersion/Sony Agreement to Microsoft, pursuant to the

8 Sublicense Agreement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

10        Immersion incorporates its general objections set forth above as if fully set forth herein.

11 Immersion specifically objects to this request on the ground and to the extent that it calls for

12 documents that are not relevant to the subject matter of this action, nor reasonably calculated to

13 lead to the discovery of admissible evidence. Immersion further specifically objects to this

14 request in that it calls for documents not within Immersion's possession, custody or control.

15 Immersion further specifically objects to this request as overbroad and unduly burdensome.

16 Immersion further specifically objects to this request as vague and ambiguous. Specifically, the

17 terms "risk," "possibility," and "contention" are vague and ambiguous as used in this request.

18 Immersion further specifically objects to this request on the ground that the term

19 "Immersion/Sony Agreement" is vague and ambiguous. Immersion further specifically objects

20 to this request to the extent it calls for documents protected by the attorney-client privilege, the

21 work-product doctrine, or other applicable privileges or immunities.

22        Subject to and without waiving the foregoing and the general objections, Immersion

23 responds that it will produce relevant non-privileged, non-work product protected documents

24 responsive to this request, if any, that may be located after a reasonable search.

25

26

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**REQUEST FOR PRODUCTION NO. 17**:

Produce all other documents relating to a possibility, risk, or contention by Microsoft that Immersion would have to make a payment to Microsoft or providing the Immersion/Sony Agreement to Microsoft, pursuant to the Sublicense Agreement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17**:

Immersion incorporates its general objections set forth above as if fully set forth herein. Immersion specifically objects to this request on the ground and to the extent that it calls for documents that are not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence. Immersion further specifically objects to this request in that it calls for documents not within Immersion's possession, custody or control. Immersion further specifically objects to this request as overbroad and unduly burdensome. Immersion further specifically objects to this request as vague and ambiguous. Specifically, the terms "risk," "possibility," and "contention" are vague and ambiguous as used in this request. Immersion further specifically objects to this request on the ground that the term "Immersion/Sony Agreement" is vague and ambiguous. Immersion further specifically objects to this request to the extent it calls for documents protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges or immunities.

Subject to and without waiving the foregoing and the general objections, Immersion responds that it will produce relevant non-privileged, non-work product protected documents responsive to this request, if any, that may be located after a reasonable search.

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 30

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**REQUEST FOR PRODUCTION NO. 18**:

Produce all documents reflecting any payments made by Sony to you as a result of the Amended Judgment, the Immersion/Sony Agreement or any other agreement, including but not limited to cancelled checks, wire transfers or other payment records.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18**:

Immersion incorporates its general objections set forth above as if fully set forth herein. Immersion specifically objects to this request on the ground and to the extent that it calls for documents that are not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence. Immersion further specifically objects to this request as overbroad and unduly burdensome. Immersion further specifically objects to this request to the extent it seeks documents already in Microsoft's possession, custody or control. Immersion further specifically objects to this request on the ground that the terms "Immersion/Sony Agreement" and "payment records" are vague and ambiguous. Immersion further specifically objects to this request to the extent it calls for documents protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges or immunities.

Subject to and without waiving the foregoing and the general objections, Immersion responds that it will produce relevant non-privileged, non-work product protected documents sufficient to reflect all payments made by Sony to Immersion, if any, that may be located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 19**:

Produce all communications with Sony relating to attempts to settle, resolve or terminate the Sony Lawsuit with Sony, including any mediation, whether successful or not.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19**:

Immersion incorporates its general objections set forth above as if fully set forth herein. Immersion specifically objects to this request on the ground and to the extent that it calls for documents that are not relevant to the subject matter of this action, nor reasonably calculated to

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  lead to the discovery of admissible evidence. Immersion further specifically objects to this

2  request in that it calls for documents not within Immersion's possession, custody or control.

3  Immersion further specifically objects to this request on the grounds that it is unduly

4  burdensome, harassing, oppressive, and overbroad. Immersion further specifically objects to this

5  request to the extent it calls for documents that Immersion is contractually precluded from

6  producing under previously executed confidentiality agreements. Immersion further specifically

7  objects to this request to the extent it calls for documents protected by the attorney-client

8  privilege, the work-product doctrine, or other applicable privileges or immunities. Immersion

9  further specifically objects to this request to the extent that it seeks to invade the mediation

10 privilege.

11 **REQUEST FOR PRODUCTION NO. 20**:

12       Produce all other documents relating to attempts to settle, resolve or terminate the Sony

13 Lawsuit with Sony, including any mediation or settlement communications, whether successful

14 or not.

15 **RESPONSE TO REQUEST FOR PRODUCTION NO. 20**:

16       Immersion incorporates its general objections set forth above as if fully set forth herein.

17 Immersion specifically objects to this request on the ground and to the extent that it calls for

18 documents that are not relevant to the subject matter of this action, nor reasonably calculated to

19 lead to the discovery of admissible evidence. Immersion further specifically objects to this

20 request in that it calls for documents not within Immersion's possession, custody or control.

21 Immersion further specifically objects to this request on the grounds that it is unduly

22 burdensome, harassing, oppressive, and overbroad. Immersion further specifically objects to this

23 request to the extent it calls for documents that Immersion is contractually precluded from

24 producing under previously executed confidentiality agreements. Immersion further specifically

25 objects to this request to the extent it calls for documents protected by the attorney-client

26 privilege, the work-product doctrine, or other applicable privileges or immunities. Immersion

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 32

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  further specifically objects to this request to the extent that it seeks to invade the mediation

2  privilege.

3  **REQUEST FOR PRODUCTION NO. 21**:

4      Produce all communications with Sony relating to the press release attached to the

5  Immersion/Sony Agreement as Exhibit A.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 21**:

7      Immersion incorporates its general objections set forth above as if fully set forth herein.

8  Immersion specifically objects to this request on the ground and to the extent that it calls for

9  documents that are not relevant to the subject matter of this action, nor reasonably calculated to

10  lead to the discovery of admissible evidence.  Immersion further specifically objects to this

11  request as overbroad and unduly burdensome.  Immersion further specifically objects to this

12  request in that it calls for documents not within Immersion's possession, custody or control.

13  Immersion further specifically objects to this request to the extent it seeks documents already in

14  Microsoft's possession, custody or control.  Immersion further specifically objects to this request

15  on the ground that the term "Immersion/Sony Agreement" is vague and ambiguous.  Immersion

16  further specifically objects to this request to the extent it calls for documents protected by the

17  attorney-client privilege, the work-product doctrine, or other applicable privileges or immunities.

18      Subject to and without waiving the foregoing and the general objections, Immersion

19  responds that it will produce relevant non-privileged, non-work product protected documents

20  responsive to this request, if any, that may be located after a reasonable search.

21  **REQUEST FOR PRODUCTION NO. 22**:

22      Produce all other documents relating to the press release attached to the Immersion/Sony

23  Agreement as Exhibit A, including all versions and drafts.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 22**:

25      Immersion incorporates its general objections set forth above as if fully set forth herein.

26  Immersion specifically objects to this request on the ground and to the extent that it calls for

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 33

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1   documents that are not relevant to the subject matter of this action, nor reasonably calculated to

2   lead to the discovery of admissible evidence. Immersion further specifically objects to this

3   request as overbroad and unduly burdensome. Immersion further specifically objects to this

4   request in that it calls for documents not within Immersion's possession, custody or control.

5   Immersion further specifically objects to this request to the extent it seeks documents already in

6   Microsoft's possession, custody or control. Immersion further specifically objects to this request

7   on the ground that the term "Immersion/Sony Agreement" is vague and ambiguous. Immersion

8   further specifically objects to this request to the extent it calls for documents protected by the

9   attorney-client privilege, the work-product doctrine, or other applicable privileges or immunities.

10      Subject to and without waiving the foregoing and the general objections, Immersion

11   responds that it will produce relevant non-privileged, non-work product protected documents

12   responsive to this request, if any, that may be located after a reasonable search.

13   **REQUEST FOR PRODUCTION NO. 23**:

14      Produce all communications between you and the media regarding the conclusion or

15   termination of the Sony Lawsuit with Sony or any subject addressed in the Immersion/

16   Sony Agreement.

17   **RESPONSE TO REQUEST FOR PRODUCTION NO. 23**:

18      Immersion incorporates its general objections set forth above as if fully set forth herein.

19   Immersion specifically objects to this request on the ground and to the extent that it calls for

20   documents that are not relevant to the subject matter of this action, nor reasonably calculated to

21   lead to the discovery of admissible evidence. Immersion further specifically objects to this

22   request on the ground that the request as a whole, including, but not limited to, the terms

23   "media," "conclusion," "termination," and "Immersion/Sony Agreement," is vague and

24   ambiguous. Immersion further specifically objects to this request on the grounds that it is unduly

25   burdensome, harassing, oppressive, and overbroad. Immersion further specifically objects to this

26   request in that it calls for documents not within Immersion's possession, custody or control.

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 34

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  Immersion further specifically objects to this request to the extent it calls for documents

2  protected by the attorney-client privilege, the work-product doctrine, or other applicable

3  privileges or immunities.

4         Subject to and without waiving the foregoing and the general objections, Immersion

5  responds that it will produce relevant non-privileged, non-work product protected documents

6  responsive to this request, if any, that may be located after a reasonable search.

7  **REQUEST FOR PRODUCTION NO. 24**:

8         Produce all media articles in your possession regarding the conclusion or termination of

9  the Sony Lawsuit with Sony or any subject addressed in the Immersion/Sony Agreement.

10 **RESPONSE TO REQUEST FOR PRODUCTION NO. 24**:

11        Immersion incorporates its general objections set forth above as if fully set forth herein.

12 Immersion specifically objects to this request on the ground and to the extent that it calls for

13 documents that are not relevant to the subject matter of this action, nor reasonably calculated to

14 lead to the discovery of admissible evidence.  Immersion further specifically objects to this

15 request on the ground that the request as a whole, including, but not limited to, the terms

16 "media," "conclusion," "termination," and "Immersion/Sony Agreement," is vague and

17 ambiguous.  Immersion further specifically objects to this request on the grounds that it is unduly

18 burdensome, harassing, oppressive, and overbroad.  Immersion further specifically objects to this

19 request to the extent that it calls for public documents equally available to Microsoft.  Immersion

20 further specifically objects to this request to the extent it calls for documents protected by the

21 attorney-client privilege, the work-product doctrine, or other applicable privileges or immunities.

22        Subject to and without waiving the foregoing and the general objections, Immersion

23 responds that it will produce relevant non-privileged, non-work product protected documents

24 responsive to this request, if any, that may be located after a reasonable search.

25

26

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**REQUEST FOR PRODUCTION NO. 25**:

Produce all documents or communications relating to any meeting with Sony (whether in person, over the phone or otherwise), and relating to payment of the Amended Judgment, concluding the Sony Lawsuit with Sony, or to the Immersion/Sony Agreement, including but not limited to personal calendars, conference room schedule books, and phone records.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25**:

Immersion incorporates its general objections set forth above as if fully set forth herein. Immersion specifically objects to this request on the ground and to the extent that it calls for documents that are not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence. Immersion further specifically objects to this request in that it calls for documents not within Immersion's possession, custody or control. Immersion further specifically objects to this request as overbroad and unduly burdensome. Immersion further specifically objects to this request on the ground that the terms "concluding" and "Immersion/Sony Agreement" are vague and ambiguous. Immersion further specifically objects to this request to the extent it calls for documents protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges or immunities.

**REQUEST FOR PRODUCTION NO. 26**:

Produce all documents relating to Sony's option in ¶4.2 of the Immersion/Sony Agreement, including exercise of that option, whether or not that exercise has occurred, and communications between Sony and Immersion regarding Play Station 3 or other products to which the option will or may apply.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26**:

Immersion incorporates its general objections set forth above as if fully set forth herein. Immersion specifically objects to this request on the ground and to the extent that it calls for documents that are not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence. Immersion further specifically objects to this

1  request as overbroad and unduly burdensome. Immersion further specifically objects to this

2  request in that it calls for documents not within Immersion's possession, custody or control.

3  Immersion further specifically objects to this request on the ground that the term

4  "Immersion/Sony Agreement" is vague and ambiguous. Immersion further specifically objects

5  to this request to the extent it calls for documents protected by the attorney-client privilege, the

6  work-product doctrine, or other applicable privileges or immunities.

7        Subject to and without waiving the foregoing and the general objections, Immersion

8  responds that it will produce relevant non-privileged, non-work product protected

9  communications between Sony and Immersion relating to the exercise of the option, if any, that

10  may be located after a reasonable search.

11  **REQUEST FOR PRODUCTION NO. 27**:

12        Produce all bills, invoices, and other statements and documents, including summaries

13  and attorney fee applications, pertaining to legal fees and expenses incurred by you in the

14  Sony Lawsuit.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 27**:

16        Immersion incorporates its general objections set forth above as if fully set forth herein.

17  Immersion specifically objects to this request on the ground and to the extent that it calls for

18  documents that are not relevant to the subject matter of this action, nor reasonably calculated to

19  lead to the discovery of admissible evidence. Immersion further specifically objects to this

20  request on the grounds that it is unduly burdensome, harassing, oppressive, and overbroad.

21  Immersion further specifically objects to this request to the extent it calls for documents

22  protected by the attorney-client privilege, the work-product doctrine, or other applicable

23  privileges or immunities.

24  **REQUEST FOR PRODUCTION NO. 28**:

25        Produce all documents which have been provided to, reviewed by, relied upon or

26  generated by any expert witness you have retained in this litigation.

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 37

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28**:

Immersion incorporates its general objections set forth above as if fully set forth herein. Immersion specifically objects to this request to the extent it calls for documents protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges or immunities. Immersion further specifically objects to this request as overbroad and unduly burdensome. Immersion further specifically objects to this request as premature. Immersion has not yet completed its analysis in this case. Immersion might rely on documents that Microsoft must, but has not yet, produced. Immersion further specifically objects to this request as premature to the extent that it seeks documents concerning expert testimony and expert reports that need not be disclosed at this stage of the litigation.

**REQUEST FOR PRODUCTION NO. 29**:

Produce all documents that you referred to, relied upon, consulted, or used in any way in answering Microsoft's First Set of Interrogatories and Requests for Production.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29**:

Immersion incorporates its general objections set forth above as if fully set forth herein. Immersion specifically objects to this request on the ground and to the extent that it calls for documents that are not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence. Immersion further specifically objects to this request on the grounds that it is unduly burdensome, harassing, oppressive, and overbroad. Immersion specifically objects to this request to the extent it calls for documents protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges or immunities. Immersion further specifically objects to this request as overbroad and unduly burdensome.

**REQUEST FOR PRODUCTION NO. 30**:

Produce all written policies, procedures, guidelines, or records developed by or used by you for (1) your computers, computer systems, electronic data, or electronic media, (2) backup or emergency restoration of electronic data, including backup tape rotation schedules, and (3)

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 38

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  electronic data retention, preservation and destruction, including any schedules relating to those

2  procedures during the period of February 2002 to the present time.

3  **RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

4      Immersion incorporates its general objections set forth above as if fully set forth herein.

5  Immersion specifically objects to this request on the ground and to the extent that it calls for

6  documents that are not relevant to the subject matter of this action, nor reasonably calculated to

7  lead to the discovery of admissible evidence. Immersion further specifically objects to this

8  request as overbroad and unduly burdensome. Immersion further specifically objects to this

9  request to the extent that it purports to impose obligations beyond those required by the Federal

10  Rules of Civil Procedure or the Local Rules for the Northern District of California. Immersion

11  further specifically objects to this request to the extent it calls for documents protected by the

12  attorney-client privilege, the work-product doctrine, or other applicable privileges or immunities.

13      Subject to and without waiving the foregoing and the general objections, Immersion

14  responds that it will produce its document retention policy.

15  **REQUEST FOR PRODUCTION NO. 31:**

16      Produce all documents in any way supporting or relating to your allegations in your

17  Counterclaim, including documents relating to the alleged disclosure of the confidential

18  information, the identities of persons or entities to whom it was disclosed, how that information

19  was used by those persons, and how it has damaged Immersion.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

21      Immersion incorporates its general objections set forth above as if fully set forth herein.

22  Immersion specifically objects to this request as premature. Immersion has not yet completed its

23  analysis in this case. Immersion might rely on documents that Microsoft must, but has not yet,

24  produced. Immersion further specifically objects to this request to the extent it seeks documents

25  already in Microsoft's possession, custody or control. Immersion further specifically objects to

26

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1    this request to the extent it calls for documents protected by the attorney-client privilege, the

2    work-product doctrine, or other applicable privileges or immunities.

3          Subject to and without waiving the foregoing and the general objections, Immersion

4    responds that it will produce relevant non-privileged, non-work product protected documents

5    responsive to this request, if any, that may be located after a reasonable search.

6    **REQUEST FOR PRODUCTION NO. 32**:

7          Produce all documents in any way supporting or relating to Affirmative Defense # 3

8    contained in your Answer.

9    **RESPONSE TO REQUEST FOR PRODUCTION NO. 32**:

10          Immersion incorporates its general objections set forth above as if fully set forth herein.

11    Immersion specifically objects to this request as premature. Immersion has not yet completed its

12    analysis in this case. Immersion might rely on documents that Microsoft must, but has not yet,

13    produced. Immersion further specifically objects to this request to the extent it seeks documents

14    already in Microsoft's possession, custody or control. Immersion further specifically objects to

15    this request to the extent it calls for documents protected by the attorney-client privilege, the

16    work-product doctrine, or other applicable privileges or immunities.

17          Subject to and without waiving the foregoing and the general objections, Immersion

18    responds that it will produce relevant non-privileged, non-work product protected documents

19    responsive to this request, if any, that may be located after a reasonable search.

20    **REQUEST FOR PRODUCTION NO. 33**:

21          Produce all documents in any way supporting or relating to Affirmative Defense # 4

22    contained in your Answer.

23    **RESPONSE TO REQUEST FOR PRODUCTION NO. 33**:

24          Immersion incorporates its general objections set forth above as if fully set forth herein.

25    Immersion specifically objects to this request as premature. Immersion has not yet completed its

26    analysis in this case. Immersion might rely on documents that Microsoft must, but has not yet,

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  produced. Immersion further specifically objects to this request to the extent it seeks documents
2  already in Microsoft's possession, custody or control. Immersion further specifically objects to
3  this request to the extent it calls for documents protected by the attorney-client privilege, the
4  work-product doctrine, or other applicable privileges or immunities.

5      Subject to and without waiving the foregoing and the general objections, Immersion
6  responds that it will produce relevant non-privileged, non-work product protected documents
7  responsive to this request, if any, that may be located after a reasonable search.

8  **REQUEST FOR PRODUCTION NO. 34**:

9      Produce all documents in any way supporting or relating to Affirmative Defense # 5
10 contained in your Answer.

11 **RESPONSE TO REQUEST FOR PRODUCTION NO. 34**:

12     Immersion incorporates its general objections set forth above as if fully set forth herein.
13 Immersion specifically objects to this request as premature. Immersion has not yet completed its
14 analysis in this case. Immersion might rely on documents that Microsoft must, but has not yet,
15 produced. Immersion further specifically objects to this request to the extent it seeks documents
16 already in Microsoft's possession, custody or control. Immersion further specifically objects to
17 this request to the extent it calls for documents protected by the attorney-client privilege, the
18 work-product doctrine, or other applicable privileges or immunities.

19     Subject to and without waiving the foregoing and the general objections, Immersion
20 responds that it will produce relevant non-privileged, non-work product protected documents
21 responsive to this request, if any, that may be located after a reasonable search.

22 **REQUEST FOR PRODUCTION NO. 35**:

23     Produce all documents in any way supporting or relating to Affirmative Defense # 6
24 contained in your Answer.

25

26

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 41

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1 **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

2       Immersion incorporates its general objections set forth above as if fully set forth herein.

3 Immersion specifically objects to this request as premature. Immersion has not yet completed its

4 analysis in this case. Immersion might rely on documents that Microsoft must, but has not yet,

5 produced. Immersion further specifically objects to this request to the extent it seeks documents

6 already in Microsoft's possession, custody or control. Immersion further specifically objects to

7 this request to the extent it calls for documents protected by the attorney-client privilege, the

8 work-product doctrine, or other applicable privileges or immunities.

9       Subject to and without waiving the foregoing and the general objections, Immersion

10 responds that it will produce relevant non-privileged, non-work product protected documents

11 responsive to this request, if any, that may be located after a reasonable search.

12 **REQUEST FOR PRODUCTION NO. 36:**

13       Produce all documents in any way supporting or relating to Affirmative Defense # 7

14 contained in your Answer.

15 **RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

16       Immersion incorporates its general objections set forth above as if fully set forth herein.

17 Immersion specifically objects to this request as premature. Immersion has not yet completed its

18 analysis in this case. Immersion might rely on documents that Microsoft must, but has not yet,

19 produced. Immersion further specifically objects to this request to the extent it seeks documents

20 already in Microsoft's possession, custody or control. Immersion further specifically objects to

21 this request to the extent it calls for documents protected by the attorney-client privilege, the

22 work-product doctrine, or other applicable privileges or immunities.

23       Subject to and without waiving the foregoing and the general objections, Immersion

24 responds that it will produce relevant non-privileged, non-work product protected documents

25 responsive to this request, if any, that may be located after a reasonable search.

26

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 42

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1   **REQUEST FOR PRODUCTION NO. 37**:

2        Produce all documents in any way supporting or relating to Affirmative Defense # 8

3 contained in your Answer.

4   **RESPONSE TO REQUEST FOR PRODUCTION NO. 37**:

5        Immersion incorporates its general objections set forth above as if fully set forth herein.

6 Immersion specifically objects to this request as premature. Immersion has not yet completed its

7 analysis in this case. Immersion might rely on documents that Microsoft must, but has not yet,

8 produced. Immersion further specifically objects to this request to the extent it seeks documents

9 already in Microsoft's possession, custody or control. Immersion further specifically objects to

10 this request to the extent it calls for documents protected by the attorney-client privilege, the

11 work-product doctrine, or other applicable privileges or immunities.

12        Subject to and without waiving the foregoing and the general objections, Immersion

13 responds that it will produce relevant non-privileged, non-work product protected documents

14 responsive to this request, if any, that may be located after a reasonable search.

15   **REQUEST FOR PRODUCTION NO. 38**:

16        Produce all documents in any way supporting or relating to Affirmative Defense # 9

17 contained in your Answer.

18   **RESPONSE TO REQUEST FOR PRODUCTION NO. 38**:

19        Immersion incorporates its general objections set forth above as if fully set forth herein.

20 Immersion specifically objects to this request as premature. Immersion has not yet completed its

21 analysis in this case. Immersion might rely on documents that Microsoft must, but has not yet,

22 produced. Immersion further specifically objects to this request to the extent it seeks documents

23 already in Microsoft's possession, custody or control. Immersion further specifically objects to

24 this request to the extent it calls for documents protected by the attorney-client privilege, the

25 work-product doctrine, or other applicable privileges or immunities.

26

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE. WASHINGTON 98104
(206) 622-2000

1  Subject to and without waiving the foregoing and the general objections, Immersion

2  responds that it will produce relevant non-privileged, non-work product protected documents

3  responsive to this request, if any, that may be located after a reasonable search.

4  **REQUEST FOR PRODUCTION NO. 39**:

5  Produce all additional documents relating to the factual allegations and legal claims in the

6  Amended Complaint filed in this lawsuit and all subsequent amended complaints, and all other

7  documents relating to your responses to those allegations and your defenses to those claims.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 39**:

9  Immersion incorporates its general objections set forth above as if fully set forth herein.

10  Immersion specifically objects to this request on the grounds that it is overbroad and vague and

11  ambiguous. Immersion further specifically objects to this request on the ground and to the extent

12  that it calls for documents that are not relevant to the subject matter of this action, nor reasonably

13  calculated to lead to the discovery of admissible evidence. Immersion further specifically

14  objects to this request as overbroad and unduly burdensome. Immersion further specifically

15  objects to this request to the extent that it purports to impose obligations beyond those required

16  by the Federal Rules of Civil Procedure or the Local Rules for the Northern District of

17  California. Immersion further specifically objects to this request to the extent it calls for

18  documents protected by the attorney-client privilege, the work-product doctrine, or other

19  applicable privileges or immunities.

20

21

22

23

24

25

26

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1    DATED this 11th day of October, 2007.

2                                    BYRNES & KELLER LLP

3                                    By /s/ Bradley S. Keller
4                                       Bradley S. Keller, WSBA #10665
                                        Jofrey M. McWilliam, WSBA #28441
5                                       1000 Second Avenue, Suite 3800
                                        Seattle, WA  98104-4082
6                                       Telephone: (206) 622-2000
                                        Facsimile: (206) 622-2522
7                                       bkeller@byrneskeller.com
                                        jmcwilliam@byrneskeller.com
8                                    *Attorneys for Defendant Immersion Corporation*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

IMMERSION'S RESPONSES TO MICROSOFT'S FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION OF
DOCUMENTS (CV07 936RSM) - 45

                                    BYRNES & KELLER LLP
                                       38TH FLOOR
                                    1000 SECOND AVENUE
                                    SEATTLE, WASHINGTON 98104
                                       (206) 622-2000

CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 11th day of October, 2007, a true copy of the foregoing pleading was served on each and every attorney of record herein by hand delivery:

Paul J. Kundtz
Blake Marks-Dias
Wendy E. Lyon
Riddell Williams P.S.
1001 Fourth Avenue Plaza, Suite 4500
Seattle, WA 98154-3600
Attorneys for Plaintiff

BYRNES & KELLER LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000



# RIDDELL WILLIAMS P.S.

1001 FOURTH AVENUE, SUITE 4500 | SEATTLE, WASHINGTON 98154-1192
206.624.3600 TELEPHONE | 206.389.1708 FACSIMILE
WWW.RIDDELLWILLIAMS.COM

PAUL J. KUNDTZ
206.389.1784
PKUNDTZ@RIDDELLWILLIAMS.COM

October 16, 2007

**VIA EMAIL**

Richard M. Birnholz
Irell & Manella
1800 Avenue of the Stars, Suite 900
Los Angeles CA 90067

**Re:    Immersion's Responses to Microsoft's Discovery Requests**

Dear Richard:

Thank you for providing us with Immersion Corporation's responses to Microsoft Corporation's First Set of Interrogatories and Requests for Production of Documents. I am writing to address the adequacy of these responses.

Immersion's responses begin with a long list of boilerplate general objections, which have little or no application to the submitted interrogatories or requests for production. For example, Immersion objects to the extent that Microsoft has exceeded the permissible number of interrogatories. Microsoft asked eight interrogatories and has not exceed the permissible limit, so the objection is meaningless. Immersion then repeats many of the same boilerplate objections throughout its responses to the interrogatories and requests for production. These are equally meritless. Microsoft is not asking Immersion to produce attorney-client privileged documents, as is suggested in many of the individual objections. That is the purpose of the privilege log that has been requested. Nor is Microsoft requesting Immersion to produce documents that are not in Immersion's possession, custody or control, as those terms are defined by the case law regarding a parties' obligations to obtain such documents.

It appears that some of the individual responses are inadequate.

Interrogatory No. 3 asks Immersion to identify meetings with Sony regarding the Immersion/Sony Agreement, which is at the center of this dispute. This is a simple, straightforward interrogatory. However, your response does not provide specific dates of any meetings or the manner in which those meetings were conducted. It merely



provides a date range. Please provide us the dates on which in-person or telephone meetings occurred between parties relevant to this interrogatory.

Interrogatory No. 6 asks Immersion to identify the factual basis of Immersion's claim that it has been harmed by the disclosure of the allegedly confidential terms in the Immersion/Sony Agreement, and to identify the third persons who have allegedly read the confidential information, what they did with it, and how it harmed Immersion. In response, Immersion states that "on information and belief that Microsoft's disclosure of confidential information in the Agreement with Sony has harmed Immersion's negotiations with one or more prospective licensees." This response is inadequate. The interrogatory requires that Immersion identify these prospective licensees, describe what, if anything, they have done with the allegedly confidential information, and describe how it has harmed Immersion. The phrase "on information and belief" suggests that Immersion has no evidence to support this allegation. If that is so, please state so clearly.

In response to Request for Production No. 3, Immersion appears not to be producing any documents. We understand that Sony and Immersion participated in at least one formal mediation. At a minimum, Immersion and Sony would have submitted letters and other documents to the mediator before that mediation. Those letters and documents may have also been exchanged between Sony and Immersion. This request encompasses those documents. Please confirm either that no such documents exist, or that you are refusing to produce them.

Microsoft disagrees with Immersion's assertion of a so-called "mediation privilege." Although settlement communications between parties and with a mediator are not admissible in a lawsuit which is the subject of the mediation, they are discoverable in other lawsuits where that information is relevant. *Tower Ridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997); *Broadcort Capital Co. v. Summa Medical Co.*, 972 F.2d 1183, 1194 (10th Cir. 1992). All settlement negotiations between Sony and Immersion are relevant to Microsoft's claim that Immersion settled the dispute with Sony. They are also relevant to Immersion's affirmative defenses, including its claim that Immersion and Sony could not "settle" the lawsuit because of the payback provisions in the sublicense agreement. To conduct discovery into these claims and defenses, we must inquire into the settlement negotiations and mediation.

Immersion's response to Request for Production No. 7 indicates that Immersion is not producing any documents in response to this request, which seeks documents relating to how the money received from Microsoft was deposited, accounted, allocated, budgeted, and spent by Immersion. This is a simple, straightforward request, and the objections regarding its clarity are disingenuous. Immersion is obviously very familiar with the $26 million paid by Microsoft to Immersion as part of the various agreements executed between them on or about July 25, 2003. This was a major transaction in Immersion's corporate history and at the heart of this lawsuit. It is not burdensome to ask Immersion to produce documents that show where those monies were deposited,

how they were accounted, how the money was allocated to pay for either legal or nonlegal expenses of Immersion to the extent any such allocation was made. Please produce these documents or confirm that Immersion is not producing documents in response to this request.

Request for Production No. 8 asks Immersion to produce all communications with Sony relating to settlement of the Sony lawsuit with Microsoft. This request is relevant to Microsoft's claim that Immersion acted in bad faith by negotiating its agreement with Sony in a manner to avoid its obligations to Microsoft pursuant to the Sublicense and other settlement-related agreements. It is also relevant to Immersion's affirmative defenses, including its claim that the payback provision of the Sublicense Agreement, which was one of the documents related to the settlement between Microsoft and Immersion, prevented Immersion and Sony from settling the lawsuit. Microsoft is not asking for Immersion to produce documents which are not in its possession, custody, or control, as those terms are defined by the discovery rules. Because the request asks for communications between Sony and Immersion, by definition it seeks documents that *are* within Immersion's possession, custody, and control.

We disagree with Immersion's objection that the phrase "settlement of the Sony lawsuit with Microsoft" is incomprehensible. You and your client are more than sufficiently knowledgeable about this lawsuit and the transactions to understand this question. Nevertheless, we will make it clearer. Microsoft and Immersion settled the Sony Lawsuit, and executed several agreements on or about July 25, 2003, including the Sublicense Agreement. This Request for Production refers to communications between Sony and Immersion about those documents, the terms in them, and the fact of Microsoft's settlement. It encompasses communications regarding the following documents executed by Microsoft and Immersion on or about July 25, 2003 or the terms contained in them: Sublicense Agreement; Settlement Agreement and Mutual Release; Series A redeemable, convertible preferred stock purchase agreement; Senior Redeemable, convertible debenture purchase agreement; and the Settlement Agreement Mutual Release. For example, we are seeking all letters, emails, memoranda, or other documents or forms of communication discussing the payback provisions in Section 2(e) of the Sublicense Agreement. For another example, Immersion produced the Sublicense Agreement to Sony during the course of the Sony Lawsuit and it became a trial exhibit. We want all communications and documents related to that production. These are just a few of the many examples of the documents that may exist and that would be relevant and responsive to this request.

Request for Production No. 9 asks Immersion to produce all of its communications with any person or entity other than Microsoft or Sony relating to the Sony Lawsuit after June of 2003. Immersion's response indicates that it is refusing to produce any such documents. Immersion's objections are without merit. Microsoft is not asking Immersion to produce documents that are not within Immersion's possession, custody, or control. By the very terms of the request, Microsoft is asking Immersion to produce its communications with third parties. Microsoft is requesting communications with

parties outside this attorney-client privilege, such as those with the SEC, investors (actual and potential), lenders, business partners, actual and potential customers and suppliers and the general public. These documents are relevant to Microsoft's claims and Immersions affirmative defenses. Among many other things, these communications contain statements by Immersion regarding its settlement with Microsoft, its funding of the litigation, its termination of the Sony lawsuit, and the Sony/Immersion Agreement.

In response to <u>Request for Production No. 10</u>, Immersion states that it has "already produced the Agreement between Immersion and Sony Computer Entertainment." However, the request for production requests "all versions and drafts." Please produce these.

<u>Request for Production No. 19</u> asks Immersion to produce all communications with Sony relating to attempts to settle, resolve, or terminate the lawsuit with Sony, including any mediation, whether successful or not. In its response, Immersion does not appear to be producing any documents. The objections are without merit. As stated previously, all settlement negotiations between Sony and Immersion are relevant to Microsoft's claim that Immersion settled the dispute with Sony. They are also relevant to Immersion's affirmative defenses, including its claim that Immersion and Sony could not "settle" the lawsuit because of the payback provisions in the Sublicense Agreement. To conduct discovery into this affirmative defense, we must inquire into the settlement negotiations and mediation. Your response indicates that there may be responsive documents, but that Immersion is not producing them because of a confidentiality agreement. Please identify those documents, and produce that agreement. If you are referring to a confidentiality agreement between Sony and Immersion in connection with the Sony Lawsuit, the objection is without merit. Immersion cannot shield relevant documents from discovery by asserting a confidentiality agreement in another case. Confidentiality of these documents can be preserved under the confidentiality order in this case.

<u>Request for Production No. 25</u> asks Immersion to produce all documents and communications relating to any meetings with Sony relating to payment of the amended judgment, concluding the lawsuit with Sony, or the Immersion/Sony agreement, including but not limited to personal calendars, conference room schedule books, and phone records. Immersion's objections are without merit. These documents are relevant to Microsoft's claim that Immersion negotiated and structured the Immersion/Sony agreement so as to avoid Immersion's obligations to Microsoft. Documents and communications regarding meetings addressing the Immersion/Sony Agreement are relevant to that contention. Documents pertaining to these communications and meetings are also relevant to Immersion's argument that Sony's payment of the amended judgment was not part of the settlement. Please produce these and all other responsive documents, or confirm that Immersion is refusing to do so.

<u>Request for Production No. 27</u> asks Immersion to produce documents pertaining to legal fees and expenses incurred in the Sony lawsuit. These documents are relevant to one or more of Immersion's affirmative defenses, including champerty and maintenance, violation of public policy, and illegality. Producing these documents is not unduly burdensome. It is highly likely that copies of those bills and invoices are stored together in one place at Immersion. Your firm, as Immersion's litigation counsel in the Sony Lawsuit, could also easily produce a set of its invoices and billing statements.

Please provide me with a written response to this letter within seven days. Please also provide me with dates on which we can conduct a CR 37 conference to discuss these discovery disputes.

Sincerely,

Paul J. Kundtz
of
RIDDELL WILLIAMS P.S.

PJK:ip
cc:    Client
       Brad Keller

Our File: 20363.411

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900

**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

**WRITER'S DIRECT**
TELEPHONE (310) 203-7958
oheinrich@irell.com

November 5, 2007

**VIA E-MAIL**

Paul J. Kundtz, Esq.
Riddell Williams, P.S.
1001 Fourth Avenue, Suite 4500
Seattle, WA 98154

     Re:   <u>Microsoft v. Immersion</u>

Dear Paul:

     I write in response to your October 16 letter to Richard Birnholz regarding purported inadequacies in Immersion Corporation's responses to Microsoft Corporation's First Set of Interrogatories and Requests for Production of Documents. I will address each of the issues raised in your letter in turn.

     First, you take issue with Immersion's general objections, which you characterize as "boilerplate" and of "little or no application" to Microsoft's interrogatories or requests for production. Immersion disagrees. General objections such as these are customary in responding to discovery requests. Immersion has properly asserted these general objections to preserve its rights.

     Second, with respect to <u>interrogatory no. 3,</u> which generally asks Immersion to identify meetings with Sony regarding the Immersion-Sony agreement "or payment of the Amended Judgment, dissolution of the Permanent Injunction, or dismissal of the appeals of the Sony Lawsuit," you state that Immersion's response "does not provide specific dates of any meetings" or "the manner in which those meetings were conducted." However, Immersion expressly stated that there were "in-person meetings" between Immersion and Sony and that those meetings took place "between February 20-28." Thus, Immersion did, in fact, identify both "specific dates" and the "manner" in which the meetings were conducted. We do not understand why you would be confused by Immersion's response, which is clear on its face.

     Third, with respect to <u>interrogatory no. 6,</u> which is a contention interrogatory that asks Immersion to identify the factual basis of its claim that it has been harmed by Microsoft's breach of the confidentiality agreement, Immersion has properly responded to this interrogatory based "on information and belief." While parties are obviously free to serve contention interrogatories at any stage during the discovery period, courts have recognized that it is usually appropriate for a party to defer answering contention

1775911



IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Paul J. Kundtz, Esq.
November 5, 2007
Page 2

interrogatories until discovery has sufficiently progressed in the case. *See, e.g., McCarthy v. Paine Webber Group, Inc.*, 168 F.R.D. 448 (D. Conn. 1996) ("While a contention interrogatory is not necessarily objectionable merely because the answer involves an opinion or contention that relates to fact or application of law to fact, due to their nature such interrogatories are more appropriate after a substantial amount of discovery has been conducted."); Fed. R. Civ. P. 33(c) (recognizing that "the court may order that [contention] interrogatory need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time"). Similarly here, Immersion has properly objected that it would be premature for Immersion to provide a complete response to Microsoft's contention interrogatory at this stage of the proceedings. This should be obvious from the face of Microsoft's interrogatory no. 6 itself, which asks Immersion for information about third parties who have no connection to Immersion and whom Microsoft has not yet even identified. For example, interrogatory no. 6 asks Immersion to identify "all persons or entities who read or otherwise learned of" the confidential information Microsoft publicly disclosed in breach of its contractual obligations to Immersion, as well as what such persons and entities "did with that ... information." Among other things, a complete response to this interrogatory would require, as a threshold matter, discovery from Microsoft concerning the full scope of the wrongful disclosure by Microsoft and its representatives. Of course, Immersion will supplement its response to interrogatory no. 6, as appropriate, in accordance with the Federal Rules of Civil Procedure, the local rules of the Western District of Washington and any applicable scheduling orders in this case, after it has received the applicable discovery from Microsoft and/or third parties.

Fourth, with respect to <u>request for production no. 3</u>, which seeks "all documents and communications related to the mediation of the Sony Lawsuit with Microsoft," Immersion has properly objected to this request on relevance, attorney-client privilege and mediation privilege grounds. As an initial matter, your understanding of the documents called for by request for production no. 3 is not consistent with the plain language of the request. It appears from your letter that you intended to seek documents and communications related to a mediation between Immersion *and Sony*. However, as written, request for production no. 3 seeks documents related to a mediation between Immersion and *Microsoft*. In any event, your disagreement with Immersion's objections is not well taken. Mediation between Immersion and Microsoft *or* Sony is not discoverable. You seem to recognize that Immersion's mediation with Microsoft is not relevant. The same is true for Immersion's mediation with Sony. Mediation with Sony is not relevant to "Microsoft's claim that Immersion settled the dispute with Sony," as you allege, for a number of reasons, including, for example, because the Sony mediation occurred long before the Immersion-Sony agreement. In addition, request for production no. 3 clearly invades the mediation privilege. Under Washington's Uniform Mediation Act, codified at RCW 7.07 et seq., with limited exceptions not present here, mediation communications are privileged against disclosure and not subject to discovery or admissible in evidence. RCW 7.07.030(1). Your citation to two

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Paul J. Kundtz, Esq.
November 5, 2007
Page 3

Tenth Circuit cases for the proposition that the mediation privilege does not apply is inapposite, as Tenth Circuit law does not apply in this case. Those cases do not concern the mediation privilege in any event.

Fifth, you take issue with Immersion's objections on relevance and burden grounds to request for production no. 7, which seeks all documents related to how money received from Microsoft was "deposited, accounted, allocated, budgeted, and spent" by Immersion. Please explain why it is relevant to this case how, for example, Immersion happened to deposit and spend the proceeds it received from Microsoft. Your statements that "Immersion is obviously very familiar with the $26 million paid by Microsoft to Immersion" and that that payment "was a major transaction in Immersion's corporate history" do nothing to indicate why this is a relevant subject of discovery in this case. Further, Immersion strongly disagrees with your claim that it is not burdensome for Immersion to respond to this request. This request is overbroad on its face. Indeed, given that money is fungible, parts of this request do not even make sense.

Sixth, in light of your clarifications concerning request for production no. 8, Immersion agrees to produce communications between Immersion and Sony, if any, concerning Immersion's 2003 settlement with Microsoft.

Seventh, with respect to request for production no. 9, which seeks "all communications with any person or entity other than Microsoft or Sony relating to the Sony Lawsuit after June 2003," Immersion has properly objected on relevance and burden grounds. On its face, the subject matter of this request—communications concerning any aspect of the entire, actively litigated and highly contentious "Sony Lawsuit"—is grossly overbroad. Microsoft's demand that Immersion produce nearly four years of communications that relate in any way to Immersion's lawsuit against Sony, regardless of any purported relevance to the claims and defenses at issue in *this* action, is unreasonable on its face. Immersion does, however, stand ready to meet and confer with Microsoft and would consider a more properly tailored request.

Eighth, with respect to request for production no. 10, which seeks all versions and drafts of the Immersion-Sony agreement, in a spirit of compromise, Immersion agrees to produce, if not already produced, all versions and drafts of the Immersion-Sony agreement actually exchanged between Immersion and Sony. Of course, Immersion otherwise maintains its objections, including its privilege and work product objections, to this request.

Ninth, with respect to request for production no. 19, which seeks "all communications with Sony relating to attempts to settle, resolve or terminate the Sony Lawsuit with Sony, including any mediation, whether successful or not," Immersion has properly objected on relevance and privilege grounds. Microsoft's bald assertion that "all

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Paul J. Kundtz, Esq.
November 5, 2007
Page 4

settlement negotiations between Sony and Immersion are relevant to Microsoft's claim that Immersion settled the dispute with Sony" is simply false. For the reasons discussed above with respect to request for production no. 3, Immersion's earlier failed mediation with Sony is not relevant to, and not discoverable in, this action. In any event, any properly discoverable documents responsive to this request for production no. 19 would already be covered by request for production 10, pursuant to which Immersion has agreed to produce documents as discussed above. We further note that Immersion is not withholding any documents responsive to this request on the basis of any contractual obligations of confidentiality.

Tenth, with respect to <u>request for production no. 25</u>, which seeks "all documents or communications relating to any meeting with Sony [], and relating to payment of the Amended Judgment, concluding the Sony Lawsuit with Sony, or to the Immersion/Sony Agreement, including but not limited to personal calendars, conference room schedule books, and phone records," Immersion has properly objected on relevance, overbreadth and burden grounds. Indeed, this request is overbroad on its face. Documents such as personal calendars, conference room schedule books, and phone records appear to be of no relevance to the claims and defenses in this lawsuit, and you have failed to offer any argument to the contrary. Your letter suggests that you believe that conference room schedule books, for example, are "relevant to Microsoft's claim that Immersion negotiated and structured the Immersion/Sony agreement so as to avoid Immersion's obligations to Microsoft." This seems to us to be a non sequitur. Please explain how a conference room schedule book could possibly be relevant to such a claim. In the absence of any reasonable explanation from Microsoft to the contrary, we believe that Immersion's agreement to produce documents pursuant to requests for production nos. 8 and 10 covers whatever possibly discoverable documents may be encompassed by request for production no. 25.

Eleventh, with respect to <u>request for production no. 27</u>, which seeks "all bills, invoices, and other statements and documents, including summaries and attorney fee applications, pertaining to legal fees and expenses incurred by [Immersion] in the Sony Lawsuit," Immersion has properly objected on the grounds of privilege, burden, relevance, and harassment. As an initial matter, most responsive documents, including "bills, ledgers, statements, time records and the like which also reveal the nature of the services provided, such as researching particular areas of law," are privileged. *See In re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982) (holding that the attorney-client privilege embraces attorney time, records and statements to the extent that they reveal litigation strategy and the nature of the services provided). Microsoft has offered no basis for how it could possibly be entitled to Immersion's outside litigation counsel's statement of fees and billing records, which contain itemizations of all work performed on Immersion's behalf, and hence, obviously, attorney-client privileged and work product information. Nor has Microsoft offered any cogent argument as to how such documents could be relevant.

1775911

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Paul J. Kundtz, Esq.
November 5, 2007
Page 5

\*   \*   \*

If you have any questions regarding the foregoing, I would be happy to schedule a telephonic meet and confer conference for a mutually convenient time.

Sincerely,

/s/

Alan J. Heinrich