The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation,<br><br>Plaintiff,<br><br>vs.<br><br>IMMERSION CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No. CV07 936RSM<br><br>**IMMERSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING MICROSOFT'S CLAIM OF BREACH OF THE IMPLIED COVENANT**<br><br>NOTE ON MOTION CALENDAR:<br>August 8, 2008<br><br>ORAL ARGUMENT REQUESTED |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IMMERSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING MICROSOFT'S CLAIM OF BREACH OF THE IMPLIED COVENANT(CV07 936RSM)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

Dockets.Justia.com

## I. INTRODUCTION

One aspect of Microsoft's claim for breach of contract is an allegation that Immersion breached the implied covenant of good faith and fair dealing as a result of "attempting to characterize its agreements with Sony as something other than" how Microsoft would like to characterize them. First Amended Complaint ("FAC") ¶ 34 [Dkt. #2]. At bottom, however, Microsoft is faulting Immersion for winning its case against Sony, insisting that Sony satisfy the District Court's judgment, exercising its discretion not to settle with Sony, and thereby not triggering liability to Microsoft under the Sublicense Agreement. Microsoft's claim for breach of the implied covenant fails, however, because it is based on conduct by Immersion that is entirely within Immersion's rights and in no way actionable.

Microsoft undoubtedly included the implied covenant allegation in its complaint as a purported justification for recasting its contract claim with tort overtones and improperly arguing the evidence. But the problem for Microsoft is that there is nothing wrong with Immersion's decision not to settle with Sony or with the way that Immersion and Sony discussed, drafted and executed their agreement. Years earlier, Microsoft and Immersion specifically agreed in their July 25, 2003 Sublicense Agreement ("SLA") that Immersion would retain ultimate discretion over the decision to settle or to not settle the Sony Lawsuit, stating: "In the event Immersion *elects in its discretion to settle the Sony Lawsuit. . . .*" Immersion would owe certain monies to Microsoft. Ex. 1 ¶ 2(e).[1] Immersion's election to settle the Sony Lawsuit (an election that may or may not occur, in Immersion's discretion) is simply a condition precedent to Immersion's payment obligation. Washington law makes clear that the non-occurrence of a condition precedent is not a breach. There can be no question that Immersion was lawfully entitled to decide not to settle with Sony.

Moreover, Microsoft cannot rest a claim based on the manner in which the Immersion-Sony Agreement is drafted, or how the agreement is characterized. Parties are allowed to attempt to arrange their affairs in a manner that minimizes their payment obligations to others. This is true even where, *unlike* here, the sole purpose of a transaction's structure is to minimize such obligations. By contrast, the evidence here shows that there were many reasons for ensuring that

---

[1] All exhibits are attached to the declaration of David R. Kaplan filed with this motion.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IMMERSION'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING MICROSOFT'S CLAIM OF
BREACH OF THE IMPLIED COVENANT (CV07
936RSM)

- 2 -

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

Sony paid the judgment in full instead of settling, including Immersion's need for the *res judicata* and collateral estoppel effect of the judgment, the precedential value of a final judgment for the other potential Immersion licensees, and a trigger to end the then-ongoing *inter partes* reexamination in the United States Patent and Trademark Office ("PTO"). But even if these reasons were not present, and the sole purpose of Immersion's decision-making were to minimize obligations to Microsoft – as Microsoft contends – there is nothing wrong with attempting to ensure that an agreement with one party does not trigger an obligation to a third party such as Microsoft.

No rule of law or business ethics precludes such behavior. This Court should streamline the case by granting Immersion partial summary judgment on Microsoft's allegations that Immersion breached the implied covenant of good faith and fair dealing.

## II. STATEMENT OF UNDISPUTED FACTS

Microsoft's complaint contains two allegations relating to a supposed breach by Immersion of the covenant of good faith and fair dealing with respect to the SLA. First, Microsoft alleges that the SLA "imposes an implied covenant of good faith and fair dealing on Immersion to do all things reasonably contemplated by the SLA's terms to accomplish its goals, and to refrain from doing anything that would destroy or injure another party's right to receive the fruits of the contract." FAC ¶ 11. Next, Microsoft alleges, as part of its claim for breach of contract, that "Immersion breached the SLA by violating the covenant of good faith and fair dealing by actively attempting to characterize its agreements with Sony as something other than what they are – a settlement." *Id*. ¶ 34. When asked in discovery to detail the basis for its breach of the implied covenant claim, Microsoft provided an interrogatory response in which Microsoft asserted that the evidence supporting its breach of covenant claim included: Immersion's omission of the word "settlement" from the final version of the Sony Agreement and from the statements to press and third parties about the agreement; alleged statements by Immersion to Sony about not using the term "settlement" in connection with the Sony Agreement; and what Microsoft refers to as the "odd structure and language" of the Sony Agreement. Ex. 2 (Microsoft Response To Interrogatory No. 6.).

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IMMERSION'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING MICROSOFT'S CLAIM OF
BREACH OF THE IMPLIED COVENANT (CV07
936RSM)

- 3 -

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

There is nothing remarkable, let alone improper, about Immersion's agreement with Sony or how it has been characterized. On or about February 28, 2007 (March 1, 2007 in Japan), Immersion and Sony signed an agreement that established a new business relationship between the companies (the "Sony Agreement"). Ex. 3. At the outset, the Sony Agreement is an integrated contract. *Id.*, ¶ 9.1 ("Entire Agreement"). The Sony Agreement expressly excluded any releases for Sony's past acts of infringement regarding the "Litigated PlayStation Products" – i.e., the PlayStation products found by the jury to infringe Immersion's Litigated Patents. *Id.*, ¶ 2.1(a). Instead, the Sony Agreement granted releases for Sony's past conduct with respect to certain products that were not at issue in the Sony Lawsuit. *Id.* The Sony Agreement also granted Sony a license for certain going forward use of Immersion's patents. *Id.*, ¶ 2.1(c), (d). Sony agreed to make quarterly payments to Immersion totaling $22.5 million in exchange for these releases and licenses. *Id.*, ¶ 5.3.

Microsoft's loose contentions regarding the Sony Agreement also often are without reference to the terms that are actually included in the contract. For example, the Sony Agreement contained no provision settling Immersion's patent infringement lawsuit against Sony. To the contrary, Sony satisfied the judgment entered against it. Ex. 15 (Liu Depo.) 229:7-230:3 ("Q: And what ultimately did Sony do with respect to the amended judgment? A: We obeyed it."). Immersion's former CEO, Victor Viegas, testified at length as to the various reasons why Immersion insisted on Sony satisfying the judgment in the hard-fought case and why Immersion would *not* settle the Sony Lawsuit – reasons Immersion communicated to Sony:

> I made clear [to Sony] that we wanted satisfaction of the judgment
> for the precedent-setting purposes with Sony as well as the
> precedent-setting position relative to other gaming companies that
> we may have disputes with. We needed satisfaction of the judgment
> in order to have dismissal of the inter partes reexamination at the
> PTO. We wanted satisfaction of the judgment to separate out the
> litigated issues with the nonlitigated issues so we could have a
> separate business discussion. And I also wanted – under satisfaction

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IMMERSION'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING MICROSOFT'S CLAIM OF
BREACH OF THE IMPLIED COVENANT (CV07
936RSM)

- 4 -

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

> of judgment, I felt that would be eminently clear, that we would not
> owe Microsoft any monies. So that was one of those reasons.

Ex. 4 (Viegas Depo.) at 186:23-187:11; *see also* Ex. 5 (Peter Depo.) at 150:15-151:2, 203:9-19.

The Sony Agreement also had no provision obligating Sony to withdraw its appeals or satisfy the judgment. While the definition of "Effective Date" referenced Sony's satisfaction of the judgment, there were no contractual provisions requiring that Sony satisfy the judgment. Sony would have been within its rights not to dismiss the appeal had it chosen not to do so. On March 1, 2007, Sony did withdraw the appeals and moved the Federal Circuit to dismiss them, which the Federal Circuit did on March 14, 2007. Ex. 6,7. The Federal Circuit's mandate thereupon issued, rendering the Amended Judgment final and non-appealable. Ex. 7 (3/14/07 Order, 3/23/07 Mandate). On March 16, 2007, in satisfaction of the Amended Judgment, Immersion received approximately $97.3 million from funds Sony had deposited in January 2006 in a previously established litigation escrow account. This amount comprised the court-ordered sums of $82 million in damages, $8,874,888 in prejudgment interest, $325,041 for the court's award of costs, and $6,003,742 in post-judgment interest which accrued by law under 28 U.S.C. § 1961. Immersion also received a check in the amount of $8,730.82 for an additional day of post-judgment interest. Ex. 8. Pursuant to previous court orders, Sony had paid Immersion another $30.6 million in quarterly compulsory license payments between February 2005 and February 2007. *See, e.g.,* Ex. 9 (Immersion's Response to Microsoft's Interrogatory No. 2).

On March 19, 2007, Immersion lodged with the District Court a Notice of Satisfaction of Final Judgment. Ex. 10. This Notice confirmed that Sony had satisfied and discharged the final judgment in full, including all costs and pre-judgment interest that the Court awarded, and all post-judgment interest that accrued by law. *Id*. Also on March 19, Immersion and Sony filed with the District Court a stipulation dissolving a permanent injunction that had been entered but was stayed pending appeal. Ex. 11.

After entering into the Sony Agreement, Immersion straightforwardly disclosed the agreement and its non-confidential terms. For example, on March 1, 2007, Immersion issued a Form 8-K which disclosed the fact of the Sony Agreement and informed the public that, among

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IMMERSION'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING MICROSOFT'S CLAIM OF
BREACH OF THE IMPLIED COVENANT (CV07
936RSM)

- 5 -

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

other things, "Pursuant to the Sony Agreement, which will be effective upon the conclusion of the litigation, Immersion will grant Sony and its affiliates a worldwide, non-transferable, non-exclusive license of Immersion's patents for the use, development, manufacture, sale, lease, importation and distribution of its PlayStation and related products." Ex. 12. In addition, on or about May 14, 2007, at Microsoft's request, Immersion provided Microsoft with a copy of the Sony Agreement, subject to a non-disclosure agreement in which Microsoft agreed to keep the agreement and its content confidential – an agreement that Microsoft subsequently ignored and breached repeatedly. Exs. 3, 13.

### III. ARGUMENT

#### A. Immersion Did Not Violate The Implied Covenant By Entering Into The Sony Agreement

Microsoft's "good faith and fair dealing" claim depends on the misguided notion that there was something wrong with Immersion entering into the Sony Agreement and asserting that the Sony Agreement does not trigger Immersion's obligation to pay Microsoft under the SLA. But none of that conduct is wrongful in any respect.

Under Washington law, the duty of good faith "does not extend to obligate a party to accept a material change in the terms of its contract." *Badgett v. Sec. State Bank*, 807 P.2d 356. 360 (Wash. 1991). "Nor does it 'inject substantive terms into the parties' contract.'" *Id.* (*quoting Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 700 P.2d 338, 342 n.6 (Wash. App. 1985)). "Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement." *Id.*

Washington courts have made very clear that a court should not use the covenant of good faith and fair dealing as a means of imposing additional duties that are not set forth in the contract itself. *See, e.g.*, *Badgett*, 807 P.2d at 360 (no good faith obligation to restructure a loan agreement with a borrower where no express provision required such renegotiation); *Johnson v. Yousoofian,* 930 P.2d 921, 925 (Wash. App. 1996), as amended, (Jan. 9, 1997) (no good faith obligation to consent to assignment of lease where the lease imposed no such duty). As the Washington

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IMMERSION'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING MICROSOFT'S CLAIM OF
BREACH OF THE IMPLIED COVENANT (CV07
936RSM)

- 6 -

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

Supreme Court has explained "[t]here cannot be a breach of the duty of good faith when a party simply stands on its rights" under the agreement. *Badgett*, 807 P.2d at 360.

Case law in both the Ninth Circuit and Washington state courts hold that the failure of a contractual condition is not, without an independent promise that a party will fulfill that condition, a breach of contract. *See United States v. Schaeffer*, 319 F.2d 907, 911 (9th Cir. 1963) ("A condition creates no right or duty of and in itself, but is merely a limiting or modifying factor."); *Ross v. Harding*, 391 P.2d 526, 530-31 (Wash. 1964) ("'Conditions precedent' are those facts and events . . . that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available. . . . Nonperformance or nonoccurrence of a 'condition' prevents the promisee from acquiring a right, or deprives him of one."); *Patrick v. Kuske*, 328 P.2d 414, 415 (Wash. 1960) ("Failure of a condition to exist or to occur even though the condition is some performance by a party to the contract, is not a breach of contractual duty by him unless he has made an enforceable promise that the condition exists or shall occur.") (citing 1 Restatement (Contracts) § 257); *see also* 13 Williston on Contracts (4th ed.) at 405, § 38.7; Restatement Second (Contracts) § 225(3) ("Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur.").

The SLA to which Microsoft agreed leaves the decision of whether to enter into settlement with Sony – the trigger, or condition precedent, for Immersion to owe money to Microsoft – to the sound discretion of Immersion. Specifically, the SLA stated: "**Payments to Microsoft *in the Event* Immersion Settles the Sony Lawsuit Prior to Microsoft Granting Sony a Game Console Platform Sublicense**. In the event Immersion *elects in its discretion to settle the Sony Lawsuit* prior to Microsoft's granting Sony the Game Console Platform Sublicense (and regardless of whether such Immersion settlement occurs during or after the twenty-four (24) month period following the Effective Date), then Immersion shall pay Microsoft an amount determined as follows . . . ." Ex. 1, § 2(e) (italics added). The SLA contains no provision requiring Immersion to settle, let alone enter into any particular type of agreement with Sony. *Id*. Indeed, Section 2(e) of the SLA was intended to create a disincentive against settling while Microsoft was attempting to exercise its sublicense rights under Section 2(c) of the SLA.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IMMERSION'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING MICROSOFT'S CLAIM OF
BREACH OF THE IMPLIED COVENANT (CV07
936RSM)

- 7 -

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

There are many reasons, including reasons entirely unrelated to Microsoft, that Immersion stood on its right to collect on the judgment entered in the Sony Lawsuit and not to settle it. These include: years of hard-fought litigation and a hard-won jury verdict that came at great expense and risk to Immersion; the *res judicata* and collateral estoppel effect of the judgment against Sony; the precedential effect this judgment would have with respect to actual and potential Immersion licensees; and as a trigger to end the *inter partes* reexamination, which would come to a close by law only by means of a final decision in a civil action. *See* Ex. 4 (Viegas Depo.) 136:4-137:1, 186:23-187:11.

Indeed, Microsoft's own licensing expert, Charles Laff, recognized that there may be collateral estoppel benefits to Immersion unrelated to Microsoft as a result of what he termed "structuring" the Immersion-Sony Agreement so that it became effective after the judgment was final and satisfied: for example, precluding a challenge by Sony to the validity of the litigated patents in fields of use which are not part of the license. Mr. Laff testified that "there may be some benefits to getting the deal the way it was structured, having the judgment stay in effect." Ex. 14 (Laff Depo.) 142:8-11. Mr. Laff is, in fact, correct that the judgment had "benefits," such as collateral estoppel. For example, the license to Sony is limited to specific products and excludes numerous broad product categories, such as "Consumer Products" and "Mobility Products." Ex. 3, ¶ 2.2. If Immersion should ever assert a claim that any of Sony's excluded, unlicensed products infringe the Immersion patents litigated in the Sony Lawsuit, the doctrine of collateral estoppel would preclude Sony from challenging the validity of those patents in the new action, as a result of the Amended Judgment against Sony on its invalidity defenses and its declaratory judgment counterclaims in the Sony Lawsuit. *See, e.g.*, *Roche Palo Alto LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 994-95 (N.D. Cal. 2007) (defendant was collaterally estopped from re-litigating patent validity issues as a result of previous judgment against defendant); *Zip Dee, Inc. v. Dometic Corp.*, 905 F.Supp. 535, 537-538 (N.D. Ill. 1995) (same).

The judgment also resulted in the PTO's termination of Sony's *inter partes* reexamination of the patents in suit. On June 5, 2007, the PTO terminated the *inter partes* reexamination proceedings under 35 U.S.C. § 317(b), which provides for the termination of such proceedings

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IMMERSION'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING MICROSOFT'S CLAIM OF
BREACH OF THE IMPLIED COVENANT (CV07
936RSM)

- 8 -

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

once a "final decision has been entered against [the requester] in a civil action" on the issue of patent validity. Ex. 17 (IMRMS00003808-3812). The PTO ruled that, "since Sony's appeal has been dismissed, the judgment of the District court stands . . . . Accordingly, based upon 35 U.S.C. § 317(b), the prosecution of the [] *inter partes* reexamination proceedings is hereby <u>terminated.</u>" *Id.*

But even assuming for the sake of argument that the *only* reason for entering into an agreement with Sony that did not settle the case was to ensure that the agreement did not trigger a payment to Microsoft under the SLA – as Microsoft apparently contends – such conduct is not actionable and does not constitute a breach of the implied covenant. Microsoft's argument that such conduct breaches the implied covenant attempts to turn a discretionary condition precedent – the SLA's recognition that Immersion *might* settle the Sony lawsuit if Immersion so chooses – into an obligation that Immersion *must* seek to end the Sony Lawsuit via a settlement agreement within the meaning of the SLA. Microsoft's argument flies in the face of Washington law holding that the covenant of good faith and fair dealing does not impose addition substantive contract terms on the parties and does not prevent a party from standing on its rights. *Badgett*, 807 P.2d at 360-61. It also conflicts with the principle that a failure of a condition to occur is not a breach. *Patrick v. Kuske*, 328 P.2d at 415.

Furthermore, courts have repeatedly held that there is nothing problematic about an individual or entity conducting or structuring its affairs in order to take advantage of favorable law or to minimize its liabilities. *See, e.g.*, *Sherman v. Securities and Exchange Comm'n*, 491 F.3d 948, 971 (9th Cir. 2007) (stating that it is not improper for "an individual [to file] a legitimate bankruptcy petition with the intention of taking advantage of the automatic stay provisions [of the Bankruptcy Code]"); *Vons Companies, Inc. v. Seabest Foods, Inc.*, 926 P.2d 1085, 1104 (Cal. 1996) ("The due process clause recognizes the individual's liberty interest in structuring his or her business relations so as to avoid jurisdiction in another forum."). As the Supreme Court has stated, there is nothing wrong with structuring a transaction in order to minimize tax liability. *Gregory v. Helvering*, 293 U.S. 465, 469 (1935); *see also United States v. Carlton*, 512 U.S. 26, 36 (1994) (O'Connor, J., concurring) ("Any one may so arrange his affairs that his taxes shall be

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IMMERSION'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING MICROSOFT'S CLAIM OF
BREACH OF THE IMPLIED COVENANT (CV07
936RSM)

- 9 -

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes."). Similarly, even accepting Microsoft's contentions for purposes of this motion only, there is nothing wrong with a party such as Immersion insisting that Sony satisfy the judgment or otherwise entering into an agreement with Sony to avoid or minimize potential payments that might have otherwise been made to Microsoft.

For example, in *Velos Group v. Centocor, Inc.,* 1996 U.S. Dist. LEXIS 19743 at *34 n.11 (D. Md. 1996), the Court noted that: "Centocor has pointed out that just as there would be nothing wrong with its structuring its deal with Lilly to minimize taxes . . . , so too there would have been nothing wrong with it having structured its deal with Lilly to minimize the payments that it had to make to Velos." The court went on to point out all the reasons that the Centocor/Lilly deal did not treat third-party Velos unfairly. *Id*. The same is true here: where Immersion spent years pursuing a verdict and judgment and prevailing and insisted that Sony pay the judgment, there is nothing unfair with an agreement that ensures that it not be confused with a settlement that might trigger payment obligations under the SLA. Simply put, Immersion was within its rights *not* to settle the Sony lawsuit – no matter what reason Microsoft claims motivated Immersion.

### B. Immersion Did Not Violate The Covenant In The Way It Has "Characterized" The Sony Agreement

Microsoft also alleges that Immersion's "characterization" of the Sony Agreement as something "other than" a settlement violates the covenant of good faith and fair dealing. This argument fails for a number of reasons.

First, Immersion's alleged "characterization" of the Sony Agreement has no legal effect for these purposes – it is the agreement, not what Immersion says about the agreement, that governs. *See Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005) (en banc) (the parties' intent is determined based on objective manifestations of the agreement). The Sony Agreement either constitutes an Immersion election to settle the Sony Lawsuit under the SLA or does not – a hotly disputed issue that will be decided in this litigation. Statements by Immersion or anyone else "characterizing" the agreement or referring to it as a settlement or something else are not separately actionable under the implied covenant. In effect, Microsoft improperly is

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IMMERSION'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING MICROSOFT'S CLAIM OF
BREACH OF THE IMPLIED COVENANT (CV07
936RSM)

- 10 -

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

attempting to concoct an implied covenant claim based on Immersion's defense against Microsoft's claims and its assertion of positions in this legal proceeding that nothing is due Microsoft under the SLA.

For these same reasons, Microsoft's argument that there was something inappropriate about not including the word "settlement" on the final agreement or in statements to the press and third parties (which would be inaccurate in any event) cannot be the basis for a breach of covenant claims. *See* Ex. 2 (Microsoft's Response To Interrogatory No. 6). Moreover, Microsoft's claim that there was something untoward or even significant about the legends of "Confidential: For Settlement Purposes Only" on drafts of the agreement (*id.*) makes little sense: the negotiations between Sony and Immersion involved efforts to compromise disputes between the two parties *other* than those presented in the Sony Lawsuit – such as with respect to other products not at issue in the Sony Lawsuit, including other PlayStation games that were not litigated in the Sony Lawsuit. *See, e.g.*, Ex. 3 (Sony Agreement) § 2.1.

Microsoft's contention that "Immersion's executives and counsel told Sony executives not to refer to the Sony/Immersion agreement as a settlement agreement" not only is factually unsupported, it cannot give rise to a claim for breach of the covenant. The Sony Agreement, an integrated contract, stands on its own regardless of what the parties say. But Microsoft is also mischaracterizing the evidence on this point, which simply shows that Immersion wanted Sony to be accurate in its internal documentation. Ex. 15 (Liu Depo.) 146:6-14. This was a perfectly reasonable request, particularly given Immersion's concern that Microsoft would attempt to distort the record, take matters out of context and pursue aggressive litigation, a concern that the current case proves true.

Finally, Microsoft also contends the Sony Agreement has a supposed "odd structure and language" as an attempt to "hide" the fact that it is a settlement. Microsoft asserts that this drafting violates the covenant of good faith and fair dealing. Ex. 2 (Microsoft's Response To Interrogatory No. 6); FAC ¶¶ 11, 34. This argument implicitly assumes that there is some general obligation on Immersion's part to enter into an agreement with Sony that yields a monetary payment to Microsoft, no matter the subject matter and without regard to the actual disposition of

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IMMERSION'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING MICROSOFT'S CLAIM OF
BREACH OF THE IMPLIED COVENANT (CV07
936RSM)

- 11 -

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1 the Sony Lawsuit.  But, as demonstrated above, that is not true at all.  *See* Section III.A.  As
2 previously discussed, there were many reasons unrelated to Microsoft which made it important for
3 Immersion to ensure it received a final judgment in the Sony lawsuit – such as the collateral
4 estoppel effect that even Microsoft's own expert recognized Ex. 14 (Laff Depo.) 142:8-11, the end
5 to the *inter partes* reexamination, and the precedential effect of the judgment for other licensees.
6 Moreover, even if the agreement were drafted to avoid incurring a liability to Microsoft, that
7 would not violate any legal obligation.  *See* Section III.A.

In addition, Microsoft's claim of an "odd structure and language" makes little sense on its own merit.  It relies primarily on the fact that the "Effective Date" of the agreement took place (and the recitals became timely) after the satisfaction of the judgment.  Ex. 2 (Microsoft's Response To Interrogatory No. 6).  But this is nothing more than a restatement of the fact that Immersion insisted on a satisfaction of the judgment and that the business deal with Sony became effective after the judgment was satisfied – something that Sony had no contractual obligation to do in any event.  Microsoft's own expert testified that there is nothing nefarious about negotiating an agreement that has an effective date which is different from the execution date, and that he had negotiated such agreements himself.  Ex. 14 (Laff Depo.) 74:16-22, 75:6-9.  The language and drafting of the Sony Agreement does not violate the covenant of good faith and fair dealing.

Microsoft's attempt to base the breach of covenant claim on Immersion's "characterization" of the Sony Agreement is doubly odd because the agreement itself – which is what ultimately controls its legal effect and the issues presented in this lawsuit – was never "hidden." Quite the opposite.  Immersion made the Sony Agreement available for inspection, analysis and adjudication.  Its non-confidential terms, including those at issue in this lawsuit, were made available to the general public and were described by Immersion in public filings.  *See, e.g.*, Exs. 12, 17.  Immersion voluntarily provided an unredacted copy of the agreement to Microsoft after Microsoft executed a confidentiality agreement to preserve the confidentiality of non-public terms.  Exs. 3, 13.  The Sony Agreement, which stands on its own in any event, is now being examined in this litigation.  How Immersion is alleged to have "characterized" this Agreement is not, and cannot possibly be, actionable.  *See* Section III.A.

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IMMERSION'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING MICROSOFT'S CLAIM OF
BREACH OF THE IMPLIED COVENANT (CV07
936RSM)

- 12 -

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

## IV. CONCLUSION

Microsoft has attempted to include in its contract claim a claim for breach of the covenant of good faith and fair dealing but cannot prove any conduct that actually constitutes a breach. Immersion was entitled to conduct its affairs to obtain and let stand a final judgment of the Sony lawsuit (which Sony satisfied) and not incur any obligation to Microsoft. As a matter of law, Microsoft's breach of the implied covenant claim fails. This Court should grant Immersion's motion for partial summary judgment on this claim.

DATED this 16th day of July, 2008.

IRELL & MANELLA LLP
Morgan Chu
Richard M. Birnholz
Alan J. Heinrich
David R. Kaplan

By /s/ *Alan J. Heinrich*
Alan J. Heinrich
(Admitted *pro hac vice*)
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Byrnes & Keller LLP
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Telephone: (206) 622-2000
Facsimile: (206) 622-2522

*Attorneys for Defendant Immersion Corporation*

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IMMERSION'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING MICROSOFT'S CLAIM OF
BREACH OF THE IMPLIED COVENANT (CV07
936RSM)

- 13 -

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 16th day of July, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Paul J. Kundtz (pkundtz@riddellwilliams.com)
Blake Marks-Dias (bmarksdias@riddellwilliams.com)
Wendy E. Lyon (wlyon@riddellwilliams.com)
Riddell Williams P.S.
1001 Fourth Avenue Plaza, Suite 4500
Seattle, WA 98154-3600
*Attorneys for Plaintiff*

/s/ David R. Kaplan
David R. Kaplan
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

*Attorneys for Defendant Immersion Corporation*

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IMMERSION'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING MICROSOFT'S CLAIM OF
BREACH OF THE IMPLIED COVENANT (CV07
936RSM)

- 14 -

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations